# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JEWELL WEEKES, individually, and on behalf of all others similarly situated, | ) | **Case No. 1:23-cv-10817-NMG** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COHEN CLEARY, P.C., | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

I.    INTRODUCTION…………………………………………………………….....1

II.    SUMMARY OF RELEVANT FACTUAL BACKGROUND……………………..…3

    A.    Summary of Investigation and Information Exchanged .............................. 3

    B.    Summary of Class Counsel's Experience and Prior Cases.......................... 3

    C.    Summary of Risks, Expenses, Complexity of Further Litigation................ 3

    D.    Consideration Received in Exchange for Released Claims.......................... 4

III.    ARGUMENT**Error! Bookmark not defined.**5

    A.    The Settlement Agreement is Procedurally Fair ...........Error! Bookmark not defined.

        *1.    Plaintiff and Class Counsel Adequately Represent Class Interests* .............Error! Bookmark not defined.

        *2.    The Settlement Agreement is the Product of Arm's Length Negotiations* ....Error! Bookmark not defined.

    B.    The Settlement Agreement is Substantively Fair...........Error! Bookmark not defined.

        *1.    The Grinnell Factors and FRCP Rule 23 Support Approval of the Settlement Agreement* .........................................................Error! Bookmark not defined.

            i.    The Costs, Risks and Delay of Trial and Appeal Favor Settlement.......Error! Bookmark not defined.

            ii.    The Remaining *Grinnell* Factors Support Approval of Settlement    …......10

        *2.    The Settlement Provides an Effective Method for Distributing Relief and Treats Class Members Equitably* ....................................Error! Bookmark not defined.

        *3.    Class Counsel Strongly Supports this Settlement*....Error! Bookmark not defined.

    C.    The Court Should Condtionally Certify the Proposed Settlement Class    …......13

        *1.    The Requirements of FRCP Rule 23(a) are Satisfied*............Error! Bookmark not defined.

            i.    The Settlement Class is so Numbers the Joinder of Individual Members is Impracticable.......................................................Error! Bookmark not defined.

            ii.    There are Questions of Law and Fact Common to the Settlement Class..14

            iii.    Representative Plaintiff's Claims are Typical of the Claims of the Settlement Class..................................................Error! Bookmark not defined.

            iv.    The Interest of Plaintiff and Class Counsel are Aligned with the Interests of the Settlement Class....................................**Error! Bookmark not defined.**

        *2.    The Requirements of Rule 23(b)(3) are Satisfied* .**Error! Bookmark not defined.**

            i.    Questions Common to All Settlement Class Members Predominate Over any Potential Individual Questions ......................Error! Bookmark not defined.

            ii.    A Class Action is the Superior method to Fairly and Efficiently Adjudicate  the Matter…..……………………………..……………………..Error! Bookmark not defined.

D.    The Notice Plan and Class Notice Should Be Approved………………..………....17

IV.    PROPOSED SCHEDULE……………………………………………………..…**Error! Bookmark not defined.**

V. CONCLUSION………………………………………………………………………...**Error! Bookmark not defined.**

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Amchem Prod., Inc. v. Windsor.,*
    521 U.S. 591 (1997). ................................................................................................ 17

*Bezdek v. Vibram USA Inc.*,
    79 F. Supp. 3d 325 (D. Mass. 2015) ...................................................................... 6, 8

*Connor B. ex rel. Vigurs v. Patrick,*
    272 F.R.D. 288 (D. Mass. 2011)................................................................................. 6

*Detroit v. Grinnell Corp.,*
    495 F.2d 448, 463 (2d Cir. 1974)............................................................................... 8

*Giroux v. Essex Property Trust,*
    No. 16-cv-01722, 2019 WL 1207301 (N.D. Cal. Mar. 14, 2018). ...................... 12

*Gulbankian v. MW Mfrs., Inc.*,
    No. 10-10392, 2014 WL 7384075, at *3 (D. Mass. Dec. 29, 2014)................... 13

*Hochstadt v. Boston Sci Corp.,*
    708 F. Supp. 2d 95 (D. Mass. 2010). ................................................................. 11, 14

*In re Compact Disc Minimum Advertised Price Antitrust Litig,*
    216 F.R.D. 197 (D. Me. 2003)................................................................................ 9, 12

*In re Anthem, Inc. Data Breach Litig.,*
    327 F.R.D. 299 (N.D. Cal. 2018)............................................................................. 16

*In re: Equifax Inc. Customer Data Sec. Breach Litig.,*
    No. 1:17-md-2800-TWT, 2020 WL 256132, at *13 (N.D. Ga. Mar. 17, 2020).................. 16

*In re Lupron Mktg. and Sales Practices Litig,*
    228 F.R.D. 75 (D. Mass. 2005)........................................................................... 11, 15

*In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.,*
    270 F.R.D. 45 (D. Mass. 2010)........................................................................... 10, 16

*In re Namenda Direct Purchaser Antitrust Litig,*
    462 F. Supp. 3d 307 (S.D.N.Y. 2020)...................................................................... 10

*In re Pharm. Indus. Average Wholesale Price Litig.,*
    588 F.3d 24, 36 n.12 (1st Cir. 2009)..........................................................................6

*In re Relafen Antitrust Litig.,,,*
    231 F.R.D. 52, 69 (D. Mass. 2005)..........................................................15, 16, 17

*In re Sonic Corp. Customer Data Sec. Breach Litig,*
    No. 1:17-md2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019).........................9

*In re Tyco Int'l, Ltd. Multidistrict Litig.,*
    535 F. Supp. 2d 249 (D.N.H. 2007).........................................................................9

*In re Yahoo! Inc. Customer Data Security Breach Litig.,*
    No. 16-MD02752, 2020 WL 4212811 (N.D. Cal. July 22, 2020).....................9, 16

*Mullane v. Cent. Hanover Bank & Tr. Co.,*
    339 U.S. 306, 314 (1950).......................................................................................17

*Nat'l Ass'n of the Deaf v. Mass. Inst. of Tech.,*
    No. 3:15-cv-30024-KAR, 2020 WL 1495903 (D. Mass. Mar. 27, 2020) .......5, 6, 14, 17, 18

*Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*
    582 F.3d 30 (1st Cir. 2009).......................................................................................7

*Reid v. Donelan,*
    297 F.R.D. 185 (D. Mass. 2014)..............................................................................6

*Roberts v. TJX Companies, Inc.,*
    No. 13-cv13142, 2016 WL 8677312 (D. Mass. Sept. 30, 2016). .......................7, 9

*Wal-Mart Stores, Inc. v. Dukes.,*
    564 U.S. 338, 359 (2011)........................................................................................14

*Walsh v. Popular, Inc.,*
    839 F. Supp. 2d 476 (D.P.R. 2012). ………………………………………………...10

**STATUTES/RULES**

Fed. R. Civ. P. 23 .............................................................5, 8, 10, 13, 14, 15, 17

**SECONDARY AUTHORITIES**

*William B. Rubenstein*, 4 Newberg On Class Actions § 13:50 (5th ed. 2020) .....................7, 11

## I.    INTRODUCTION

This Class Action arises out of a cyberattack and data breach (the "Data Incident") perpetrated against Defendant Cohen Cleary, P.C. ("Defendant"), a Massachusetts professional corporation that provides legal services in various areas of law including criminal law, family law, estate law, labor and employment law, consumer protection, debt collection and civil litigation. The Data Incident occurred on September 30, 2022, and on November 30, 2022 Defendant disclosed to Plaintiff and about 12,478 Class Members that their highly sensitive personally identifiable information ("PII") and protected health information ("PHI") including, without limitation: names, addresses, dates of birth, Social Security numbers, medical information and health insurance information was compromised. As a result of the Data Breach, Plaintiff filed a Class Action Complaint on April 17, 2023, which asserts negligence against Defendant. Defendant maintains that it is not liable for the claims asserted.

Plaintiff and Defendant (collectively, the "Parties") agreed to attend an Alternative Dispute Resolution before Magistrate Judge Jennifer C. Boal on December 6, 2024. See the Declaration of Laura Van Note, Esq. in Support of Plaintiff's Motion for Preliminary Approval ("Van Note Decl.") ¶ 8. Following the Alternative Dispute Resolution, the Parties were able to come to an agreement in principle. *Id.* In the weeks that followed, the Parties worked diligently to finalize this agreement in principle, which was finally executed on January 30, 2025.[1] Van Note Decl. ¶ 9.

The Settlement Agreement provides timely and significant benefits to Settlement Class Members whose information was exposed as a result of the Data Incident and was achieved after hard-fought extensive negotiations mediated in part by Magistrate Judge Jennifer C. Boal. Notice

---

[1] Please find a true and accurate copy the fully executed Settlement Agreement attached to the Van Note Decl. as **Exhibit A.**

of this Settlement may be issued as the Court should find that the Settlement is procedurally and substantively fair under Rule 23(e) of the Federal Rules of Civil Procedure and that the proposed class may be certified for settlement purposes.

Accordingly, pursuant to Rule 23, Plaintiff asks that the Court enter an Order that:

(a)     Preliminarily approves the Settlement, subject to final approval;

(b)     Conditionally certifies the Settlement Class with respect to the claims against Defendant;

(c)     Appoints Plaintiff as a Class Representative for the Settlement Class;

(d)     Appoints Plaintiff's Counsel in the Action, Laura Van Note from Cole & Van Note ("CVN"), as Class Counsel for the Settlement Class;

(e)     Appoints CPT Group, Inc. ("CPT") as the Settlement Administrator;

(f)     Approves the proposed Claims Form, Notice Plan and proposed forms of Class Notice (attached as **Exhibits 1-3** to the Settlement Agreement);

(g)     Sets a schedule leading to the Court's evaluation of final approval the Settlement, including: (i) the date, time and place for a hearing to consider the fairness, reasonableness and adequacy of the Settlement (the "Fairness Hearing"); (ii) the deadline for Settlement Class Members to exclude themselves (i.e., opt out) from the Settlement; (iii) the deadline for Class Counsel to submit a Motion for Final Approval, petition for attorneys' fees and expenses and application for an Incentive Award; and (iv) the deadline for Settlement Class Members to object to the Settlement and any of the related petitions; and

(h)     Stays all proceedings in the Action except those relating to approval of the Settlement.

See the [Proposed] Preliminary Approval Order, filed herewith.

## II.    SUMMARY OF RELEVANT FACTUAL BACKGROUND

### A.    Summary of Investigation and Information Exchanged

Prior to filing suit, proposed Class Counsel conducted an extensive investigation into the Data Incident. First, Class Counsel had to understand Defendant's business and the way in which individuals may have been impacted by exfiltration of their information *vis-à-vis* the Data Incident. Van Note Decl. ¶ 6. Further, Class Counsel investigated Defendant's response to the Data Incident and whether it was sufficient, understand Plaintiff's claims, research the duties applicable to a company like Defendant's company, etc. *Id.*

Following a ruling on Defendant's Motion to Dismiss on March 15, 2024, the Court found that Plaintiff's negligence cause of action was properly pled, and the litigation could move forward toward discovery. *Id.* at ¶ 8. The Parties collectively agreed on August 13, 2024 to attend Alternative Dispute Resolution after determining litigation of this matter was expected to be protracted, expensive and draining of both sides' resources. *Id.* at ¶¶ 7-8. The Parties reached an agreement in principle at the Alternative Dispute Resolution held on December 6, 2024. *Id.* at ¶ 8.

### B.    Summary of Class Counsel's Experience and Prior Cases

Class Counsel has extensive experience prosecuting class actions, including those involving data breaches. Van Note Decl. ¶¶ 15-20. Counsel for Defendant is also experienced in defending class actions. This enabled the Parties to negotiate a fair, reasonable and adequate settlement.

### C.    Summary of Risks, Expenses and Complexity of Further Litigation

The risk, expense and complexity of further litigation is significant. Defendant would likely move for summary judgment. Even if Plaintiff defeated Defendant's Motion, Defendant would certainly oppose class certification and, if it prevailed, Class Members would receive nothing, not

to mention that a standard might be formed that could hurt countless future victims of cybercrime. If the case were to proceed without settlement, there would be considerable expenses such as those for retention of experts to develop numerous factual and legal arguments regarding liability, damages and injunctive relief, without any guarantee of relief for the Class.

D.    **Consideration Received in Exchange for Released Claims**

The consideration received in exchange for the release of Settlement Class Member claims is appropriate given the strength and weaknesses of Plaintiff's claims and the risks of continued litigation. The release applies only to claims related to the Data Incident.  Moreover, the relief made available is significant given the risks Plaintiff and the Class faces.

Under the terms of the Settlement Agreement, Defendant has agreed to pay $150,000.00 to a non-reversionary fund (the "Settlement Fund") to resolve all claims brought in this Action. Settlement Agreement ("S.A.") § II, ¶ 60. The Settlement Fund shall be used to pay for (i) all Administrative Costs; (ii) any Taxes; (iii) any court-approved Incentive Payment and (iv) any court-approved Class Counsel Fees and Costs. S.A. § III, ¶¶ 63-65. Class Members will be able to submit for a Settlement payment of up to $5,000 reimbursement in the form of a Documented Loss Payment. S.A. § V, ¶ 69(a). Further, Class Members, who make a valid claim, will receive a *pro rata* share of the remaining Settlement Fund, up to $300, once the above payments are distributed. S.A. § V, ¶ 69(b).

There will be no reversion of any kind to Defendant, and any left-over money in the Settlement Fund, if there is any, will be sent to a *cy pres* beneficiary that will be agreed to by the Parties and approved by the Court. S.A. § XII, ¶ 106. Finally, Defendant has agreed to equitable relief by undertaking substantial remedial measures regarding its data security process and procedures. S.A. § V, ¶ 71.

## III.    ARGUMENT

This S.A. satisfies all of the relevant considerations for approval. At the preliminary approval stage, courts evaluate whether a proposed settlement is likely to be approved as fair, reasonable and adequate, and whether the Settlement Class is likely to be certified for settlement purposes at the final approval stage. Federal Rules of Civil Procedure ("FRCP"), Rule 23(e)(1). A settlement may be approved where the court finds "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." FRCP, Rule 23(e)(2). FRCP Rules 23(e)(2)(A) and (B) focus on procedural fairness, i.e., the "conduct of the litigation and of the negotiations leading up to the proposed settlement." FRCP Rule 23, Advisory Committee's Note, 2018 Amendment. FRCP Rules 23(e)(2)(C) and (D) focus on the substantive fairness of the settlement, the "relief that the settlement is expected to provide to class members" compared with "the cost and risk involved in pursuing a litigated outcome." *Id.*

### A.    **The Settlement Agreement is Procedurally Fair**

#### *1.    Plaintiff and Class Counsel Adequately Represent Class Interests*

Procedural fairness is satisfied, in part, because Plaintiff and Class Counsel's interests are aligned with the interest of the Class. *See Nat'l Ass'n of the Deaf v. Mass. Inst. of Tech*., No. 3:15-cv-30024-KAR, 2020 WL 1495903, at *3 (D. Mass. Mar. 27, 2020).[2] Plaintiff was a consumer whose personal information was compromised as a result of the Data Incident. Defendant's alleged failure to implement reasonable data security measures impacted not just Plaintiff's privacy, but

---

[2] Courts analyze the adequacy of representation requirement of FRCP Rule 23(e)(2)(A) using the same considerations for representative adequacy under FRCP Rule 23(a)(4). *See Nat'l Ass'n of the Deaf,* 2020 WL 1495903, at *2-3.

the privacy of all Class Members. Van Note Decl. ¶ 4. As a result, Plaintiff and the Class seek the same relief from the same injury. *Id. See also Reid v. Donelan*, 297 F.R.D. 185, 191 (D. Mass. 2014) (holding plaintiff was an adequate class representative despite certain factual differences between plaintiff and class members because each sought the same relief).

"The duty of adequate representation [also] requires counsel to represent the class competently and vigorously and without conflicts of interest with the class." *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 36 n.12 (1st Cir. 2009). Plaintiff satisfies this requirement when their attorneys demonstrate that they can "fairly and adequately protect the interests of the class." *Connor B. ex rel. Vigurs v. Patrick*, 272 F.R.D. 288, 297 (D. Mass. 2011). Class Counsel prosecuted this Action from its inception and negotiated the proposed Settlement. Van Note Decl. ¶¶ 3-8. As reflected in Class Counsel's Firm Resume[3], CVN has decades of experience leading some of the most complex class actions, including data breach class actions on behalf of consumers. *Id.* at ¶¶ 15-20.

To approve a settlement, "[t]he court must be satisfied . . . that Plaintiffs' counsel are qualified and experienced." *Nat'l Ass'n of the Deaf*, 2020 WL 1495903, at *3. Thus, Class Counsel's extensive class action experience, combined with her extensive efforts in this litigation, provide direct evidence of Class Counsel's adequacy.

### 2.    The Settlement Agreement is the Product of Arm's Length Negotiations

Courts may presume that a proposed settlement is procedurally fair when it is the result of arm's length negotiations. *See Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 325, 343 (D. Mass. 2015), aff'd, 809 F.3d 78 (1st Cir. 2015). This S.A. bears all of the qualities of arm's length negotiations. First, Magistrate Judge Jennifer C. Boal's participation in the settlement process is

---

[3] See Class Counsel's Firm Resume attached to Van Note Decl. as **Exhibit C**.

among the indicators of the Settlement's fairness. *See William B. Rubenstein*, 4 NEWBERG ON CLASS ACTIONS § 13:50 (5th ed. 2020) ("Evidence of a truly adversarial bargaining process helps assuage this concern [of collusive settlements] and there appears to be no better evidence of such a process than the presence of a neutral third-party mediator"); accord *Roberts v. TJX Companies, Inc.,* No. 13-cv13142, 2016 WL 8677312, at *5 (D. Mass. Sept. 30, 2016).

Second, prior to negotiating the Settlement, Plaintiff and Class Counsel were well-informed about the strengths and weaknesses of claims made against Defendant. Van Note Decl. ¶ 6. Further, skilled and experienced counsel engaged in adversarial negotiations for each of the Parties. *Id.* Defendant is represented by counsel with extensive experience in litigating technology-related actions. *Id.* at ¶ 3. Settlement negotiations took several weeks and included a full-day mediation on December 6, 2024 that resulted in a settlement in principle that was finalized in the attached S.A. on January 30, 2025. *Id.* at ¶¶ 6-8. When viewed in their totality, the circumstances fully support the conclusion that the Settlement Agreement is procedurally fair.

### B.    The Settlement Agreement is Substantively Fair

In the First Circuit, the substantive fairness of a settlement is determined by "balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009). Among the factors the Court may use to apply this balancing test include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Roberts*, 2016 WL 8677312, at *6  (*quoting Detroit v. Grinnell Corp*, 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell*")). The *Grinnell* factors overlap with guidance provided by amended FRCP Rule 23(e)(2)(C), which focuses on whether, "the relief provided for the class is adequate." FRCP Rule 23(e)(2)(C). The Court is also required to confirm that the Settlement "treats class members equitably relative to each other." FRCP Rule 23(e)(2)(D). These factors are likely to weigh in favor of the Settlement's approval.

### 1.    The Grinnell Factors and FRCP Rule 23 Support Approval of the Settlement Agreement

#### i.    The Costs, Risks and Delay of Trial and Appeal Favor Settlement

To determine whether a settlement provides adequate relief to the class, the Court must evaluate "the costs, risks, and delay of trial and appeal," FRCP Rule 23(e)(2)(C)(i), which involves "consider[ing] the likely complexity, expense, and duration of the litigation, were this case to proceed to trial, as well as the plaintiffs' likelihood of success on the merits." *Bezdek*, 79 F. Supp. 3d at 344. The likelihood of success on the merits necessarily implicates other *Grinnell* factors as well, including the risks of establishing liability, the risks of establishing damages and the risks of maintaining the class through the trial. Therefore, it is appropriate to address Rule 23(e)(2)(C)(i) in conjunction with these *Grinnell* factors.

There are several risks in this case that could pose obstacles to achieving a favorable outcome for Plaintiff and the Settlement Class. *See Bezdek*, 79 F. Supp. 3d at 345 (holding that this factor weighs in favor of approval when there is a "palpable uncertainty that a more favorable result could be obtained through litigation"). If not for the Settlement, Plaintiff would immediately be faced with the potential for an adverse ruling on Defendant's motion for Summary Judgement or Defendant's opposition to Class Certification.

While Plaintiff believes she would prevail, there are risks involved in data breach litigation—a relatively new area of law—including proving standing and causation. *See In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 260 (D.N.H. 2007) (noting that, because the case "involved a greater risk of non-recovery" due to "still-developing law," this factor weighed in favor of approval); *see also In re Sonic Corp. Customer Data Sec. Breach Litig*., No. 1:17-md2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts."). These are just a few of the substantive hurdles to prevailing on the merits.

Plaintiff likely would incur significant costs to prove her case through fact and expert discovery. *In re Yahoo! Inc. Customer Data Security Breach Litig*., No. 16-MD02752, 2020 WL 4212811, at *9 (N.D. Cal. July 22, 2020) (listing "more discovery" as one of the significant expenses for continuing a data breach litigation); *see also In re Compact Disc Minimum Advertised Price Antitrust Litig.,* 216 F.R.D. 197, 212 (D. Me. 2003) (explaining that, absent settlement, "[m]ore experts will have to be hired at great expense"). Given the alleged misconduct, this Action would necessarily involve a battle of experts with respect to damages and other issues, likely escalating the litigation costs. The costs and risks would only further increase as the Parties contest class certification and motions in limine and proceed through to trial and any related appeals. In this Action, achieving total success on the merits and obtaining the full measure of Plaintiff's asserted damages is by no means guaranteed. The proposed Settlement, if approved, exchanges the extensive costs and a lengthy litigation timeline with prompt financial recovery and certainty for the Class, injunctive relief, finality as to the Parties and the preservation of Court's time and resources that can be redirected elsewhere. The Settlement—valued at $150,000— is an appropriate balance against the strength of Plaintiff's case. *See Roberts*, 2016 WL 8677312, at *8

(finding settlement more favorable where "claimants would be able to receive funds more immediately than if the case went to trial"). Because of the substantial costs, risks and delay in recovery associated with continued litigation, the first, fourth, fifth and sixth *Grinnell* factors and Rule 23(e)(2)(C)(i) support approval of the Settlement.

        ii.    <u>The Remaining *Grinnell* Factors Support Approval of Settlement</u>

Given the present posture of the Action, it is too early to evaluate the second *Grinnell* factor concerning the reaction of the proposed Settlement Class. If the Court grants preliminary approval of this Settlement, Class Notice will be issued to Settlement Class Members, advising them of their opportunities to voice their reaction to the Settlement. Notably, Plaintiff whose interests are aligned with the Settlement Class, supports the Settlement.

The third Grinnell factor asks whether Plaintiff has completed sufficient discovery "to provide the parties with adequate information about their respective litigation positions." *In re M3 Power Razor Sys. Mktg. & Sales Practice Litig*., 270 F.R.D. 45, 63 (D. Mass. 2010). This does not require the parties to complete formal discovery; it is sufficient that they "conduct[ ] discovery in tandem with their settlement efforts" and are able to make an informed decision as to settlement. *Walsh v. Popular, Inc.,* 839 F. Supp. 2d 476, 481 (D.P.R. 2012). Class Counsel's investigation with the information developed prior to filing the case, throughout litigation and during the mediation process gave Class Counsel a firm basis to evaluate the conduct at issue and the possible settlement value. Van Note Decl. ¶¶ 5-8.

The seventh *Grinnell* factor, the ability to withstand a greater judgment, is only relevant if "the settlement is less than what it might otherwise be but for the fact that the defendant's financial circumstances do not permit a greater settlement." *In re Namenda Direct Purchaser Antitrust Litig.,* 462 F. Supp. 3d 307, 314 (S.D.N.Y. 2020). Where, as here, those circumstances are not

present, courts give this factor little weight. *Id.*; accord *In re Lupron Mktg. and Sales Practices Litig.,* 228 F.R.D. 75, 97 (D. Mass. 2005) (the seventh Grinnell factor is a "defendant-oriented factor" that is "neutral" when dealing with defendants with "classic deep pockets").

Finally, the Settlement should also be approved because it is reasonable "in light of the best possible recovery" and the "in light of all the attendant risks of litigation." *Grinnell*, 495 F.2d at 463. The reasonableness inquiry compares "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, [against] the amount of the proposed settlement." *In re Lupron*, 228 F.R.D. at 97.  In the First Circuit, specifically, there is scant case law regarding key issues in data breach litigation, including whether an imminent risk of future harm is sufficient to establish Article III standing and what is required to establish causation. As discussed above, Plaintiff faces numerous risks to prevailing, resulting in a steep discount of the present value of the case.  In light of these risks, the Settlement is within the bounds of what is reasonable.

### 2.    *The Settlement Provides an Effective Method for Distributing Relief and Treats Class Members Equitably*

Approval of the Settlement also requires the Court to assess whether the allocation of funds among class members is "fair, reasonable and adequate." *Hochstadt v. Boston Sci Corp.*, 708 F. Supp. 2d 95, 109 (D. Mass. 2010). In this case, the Settlement provides a simple, straight-forward method for Class Members to file a claim and receive a payment, thus incentivizing participation. *See William B. Rubenstein*, 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed. 2020) ("the goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible"). Class Members will be required to submit a Claim Form providing their name and a unique claimant ID code (designed

to deter fraudulent claims). S.A. §VII, ¶¶ 74-77. This information is typical of what courts have permitted in other cases.[4]

Substantively, Class Members are able to make a Documented Cash Payment up to $5,000, and the remaining funds, after payment of Claims Administration, Fees and Incentive Awards, will be distributed equally to Authorized Claimants. S.A. § V, ¶ 69(a)-(b). Each Authorized Claimant will receive an individual cash payment of up to $300, an amount which may be increased or decreased pro rata depending on the total volume of Approved Claims. *Id.* In similar consumer class actions, courts routinely accept allocation plans that grant pro rata relief to class members. *See, e.g., In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 292 F. Supp. 2d 184, 186 (D. Me. 2003) (approving a settlement granting relief in the form of equally distributed cash and retail discounts); *Giroux v. Essex Property Trust*, No. 16-cv-01722, 2019 WL 1207301, at *1 (N.D. Cal. Mar. 14, 2018) (approving a settlement granting class members a pro rata share of a settlement fund). Furthermore, Settlement Class Members are not required to submit documentary proof of losses to recover under the Settlement.

Any potential inequity in the Settlement is avoided through the use of a notice program that advises Class Members of their rights, including the impact of the releases. Should a Class Member wish not to be bound by the release, that Class Member may opt out of the Settlement. Because the distribution of the Settlement Fund and the Settlement's release wholly avoid any improper preferences, these factors weigh in favor of preliminary approval of the Settlement.

---

[4] See Claim Form, *In re TJX Companies, Inc.*, No. 1:07-cv-10162, (D. Mass. Dec. 20, 2007) (ECF No. 293-4) (claim form requiring submission of name, mailing address, and supporting documentation).

### 3. Class Counsel Strongly Supports this Settlement

Courts in this Circuit also "g[i]ve significant weight" to the opinion of "attorneys with extensive experience" when evaluating a settlement. *Gulbankian v. MW Mfrs., Inc.,* No. 10-10392, 2014 WL 7384075, at *3 (D. Mass. Dec. 29, 2014). In determining the weight of counsel's opinion, a court will consider counsel's experience litigating similar claims, their efforts and their depth of knowledge and observations about the claims and issues in the action at bar. *Id.* at *3. As described above and in CVN's accompanying resume, Proposed Class Counsel has extensive experience litigating cases of this type, and strongly support the approval of this Settlement. Van Note Decl. ¶¶ 17-22.

### C. The Court Should Conditionally Certify the Proposed Settlement Class

For a settlement class to be certified, it must satisfy each requirement delineated in FRCP Rule 23(a), as well as at least one of the separate divisions of Rule 23(b). As explained below, the Settlement Class meets the requirements of FRCP Rule 23(a) and FRCP Rule 23(b)(3) for preliminary and final approval. Accordingly, the Court should conditionally certify the Settlement Class.

### 1. The Requirements of FRCP Rule 23(a) are Satisfied

Class certification under FRCP Rule 23(a) requires: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a). The Settlement Class satisfies each of these requirements.

13

i.    The Settlement Class is so Numerous the Joinder of Individual Members is Impracticable

FRCP Rule 23(a)(1) requires that the class be so numerous to make joinder of its members "impracticable." FED. R. CIV. P. 23(a)(1). No minimum number of plaintiffs are required to maintain a suit as a class action and "[t]he threshold for numerosity is not high." *Nat'l Ass'n of the Deaf*, 2020 WL 1495903, at *1 (internal citation omitted). There are approximately 12,478 dispersed individuals within the Settlement Class. Because joinder would be impracticable, Rule 23(a)(1) is satisfied. *See Hochstadt*, 708 F. Supp. 2d at 102 (finding proposed settlement class of 12,000 "easily met" numerosity requirement).

ii.    There are Questions of Law and Fact Common to the Settlement Class

FRCP Rule 23(a)(2) requires that there be "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). Plaintiff must show that resolution of an issue of fact or law "is central to the validity of each" class member's claim and "[e]ven a single [common] question will" satisfy the commonality requirement. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). "The threshold of commonality is not a difficult one to meet." *Hochstadt*, 708 F. Supp. 2d at 102. Several questions of law and fact are common to all Settlement Class Members, including (i) whether Defendant violated common law duties, consumer protection laws or other legal obligations and industry standards; (ii) whether Defendant failed to properly secure and safeguard Settlement Class Members' personal information; (iii) whether Settlement Class Members are entitled to damages and (iv) the appropriate measure of such damages and relief. The proof required to establish Defendant's alleged unlawful conduct is common to all members of the Settlement Class and therefore satisfies Rule 23(a)(2).

iii.    Representative Plaintiff's Claims are Typical of the Claims of the Settlement Class

FRCP Rule 23(a)(3) requires that class representatives' claims be "typical" of Settlement Class Members' claims. FED. R. CIV. P. 23(a)(3). "Typicality is not a demanding test" and does not require that Plaintiff's claims be identical to those of absent class members. *In re Lupron*, 228 F.R.D. at 89. It is enough that "the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 69 (D. Mass. 2005). Plaintiff's claims and injuries arise from the same conduct, Defendant's alleged failure to adopt and maintain reasonable security measures to protect customer personal information and, as a result, rely on the same legal theories as the Settlement Class. This is sufficient to satisfy Rule 23(a)(3).

iv.    The Interest of Plaintiff and Class Counsel are Aligned with the Interests of the Settlement Class

Under FRCP Rule 23(a)(4), the court must find that "the representative parties will fairly and adequately protect the interest of the class." FED. R. CIV. P. 23(a)(4). As described above, Plaintiff and Class Counsel satisfy the adequacy requirement. Under Rule 23(g), the Court should appoint Plaintiff's Counsel as Class Counsel for the Settlement Class.

### 2.    The Requirements of Rule 23(b)(3) are Satisfied

Under FRCP Rule 23(b)(3), Plaintiff must establish: (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). These requirements are satisfied here.

i.    Questions Common to All Settlement Class Members Predominate Over Any Potential Individual Questions

The predominance requirement "tests whether proposed classes are sufficiently cohesive

15

to warrant adjudication by representation." *In re M3*, 270 F.R.D. at 56. "The First Circuit has held that this requirement is satisfied where, notwithstanding individualized concerns, a sufficient constellation of common issues binds class members together." *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 275 (D. Mass. 2004). Several courts have found that common issues, such as whether a defendant maintained reasonable security measures, predominate over individualized issues in data breach cases. *See, e.g., In re Yahoo!*, 2020 WL 4212811, at *7; *In re: Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT, 2020 WL 256132, at *13 (N.D. Ga. Mar. 17, 2020); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312 (N.D. Cal. 2018) ("[T]he focus would remain on the extent and sufficiency of the specific security measures that [defendant] employed. This is the precise type of predominant question that makes class-wide adjudication worthwhile."). At the heart of Plaintiff's claims is whether Defendant failed to adopt and maintain reasonable security measures to protect personal information, promptly detect the Data Incident, remedy and mitigate the effects of the Data Incident and provide timely notification to affected persons. These questions are common and predominate over individualized issues.

      ii.      <u>A Class Action is the Superior Method to Fairly and Efficiently Adjudicate the Matter</u>

Plaintiff must show that a class action is superior to individual actions, which is evaluated by considering:

> (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of the class action.

*In re Relafen Antitrust Litig.*, 231 F.R.D. at 70. In the context of a proposed settlement-only class, courts need not inquire about the case manageability for trial purposes. *See Amchem Prod., Inc. v.*

*Windsor*, 521 U.S. 591, 620 (1997).

Here, the interest of any one class member in controlling the prosecution of a separate action is likely low, considering that the costs of litigating a claim would most likely exceed any individual recovery. *See In re Relafen Antitrust Litig.*, 231 F.R.D. at 71 (class action method was superior "[e]specially for the individual consumer, where the individual losses are low [and] the transaction costs in bringing suit are likely prohibitive"). Further, there are no other litigations pending against Defendant arising out of the Data Incident that would require the Court's consideration. Thus, the superiority requirement is satisfied.

### D.    The Notice Plan and Class Notice Should Be Approved

Upon preliminarily approving the Settlement, the Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." FED. R. CIV. P. 23(e)(1). Notice need not reach every class member but must be "the best notice practicable" under the circumstances. *Nat'l Ass'n of the Deaf*, 2020 WL 1495903, at *4. The Class Notice will inform Settlement Class Members of the substantive terms of the settlement as well as: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The proposed Notice Plan and related forms of notice[5] are "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present

---

[5] The Postcard Notice, Long Form Notice and Claim Form are attached to the Settlement Agreement as **Exhibits 1-3**.

their objections." *Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314* (1950). The Notice Plan means the Postcard Notice, Long Form Notice, Settlement Website and settlement telephone line that Plaintiff and Class Counsel will ask the Court to approve in connection with this Motion for Preliminary Approval.

The Notice Plan includes sending postcard notice to Settlement Class Members for which Defendant has mailing addresses for. Declaration of Julie Green Claims Administrator Regarding the Notice Plan and Administration[6] ("Green Decl.") ¶ 11. The postcard notice will contain a link to the long form notice, the Proof of Claim and Release form and the Settlement Website. Green Decl.¶ 13. Defendant will also direct Class Members to the Class Notice directly from its website and a Settlement Website will be created, providing additional means to notify Class Members. *Nat'l Ass'n of the Deaf*, 2020 WL 1495903, at *4 ("Online publication of the notice is particularly appropriate here because the class . . . consists of individuals who access online content and have at least some familiaries with the Internet."). Further, Defendant indicated they only have mailing addresses for 8,246 individuals, meaning there is no additional information readily available for the additional 2,797 individuals. Thus, CPT will provide a supplemental notice via a nationwide press release to reach the remaining Class Members. Green Decl. ¶ 12.

On the Settlement Website, Class Members can review and obtain: (i) a blank Proof of Claim and Release form for the Settlement; (ii) the Class Notice; (iii) the Settlement Agreement; and (iv) key pleadings and Court orders. The Settlement Administrator will also operate a toll-free telephone number with automated answers to Settlement Class Members' questions. Class Counsel recommends that CPT Group Inc. ("CPT") be appointed as Settlement Administrator. CPT developed the Class Notice plan and has significant experience in administering class action

---

[6] A true and accurate copy of the Green Decl. is attached to the Van Note Decl. as **Exhibit B**.

settlements.  Green Decl. ¶¶ 5-8.

## IV.    PROPOSED SCHEDULE

Plaintiff proposes the following schedule leading to Final Approval of the Settlement:

| Event | Date |
|-------|------|
| Settlement Administrator sends Notice to the Settlement Class (the "Notice Date") | Within 30 after Entry of Preliminary Approval Order |
| Last day for Settlement Class Members to opt out or object to the proposed Settlement | Within 90 after the Notice Date |
| Last day for Settlement Class Members to submit Claim Forms | 120 days after the Notice Date |
| The Notice Program shall be completed | No later than 45 days before the Final Approval Hearing |
| Date by which Class Counsel is to file Motion for Final Approval of Settlement and Petition for Award of Attorneys' Fees, Expenses and Service Awards | No later than 30 days prior to the Final Approval Hearing |
| Final Approval Hearing | TBD |

## V.    CONCLUSION

For the foregoing reasons, the proposed Settlement warrants the Court's preliminary approval. Plaintiff respectfully requests that the Court enter the accompanying proposed Order that: (a) preliminarily approves the Settlement, subject to later, final approval; (b) conditionally certifies a Settlement Class on the claims against Defendant; (c) appoints Plaintiff as representative of the Settlement Class; (d) appoints Plaintiff's Counsel as Class Counsel for the Settlement Class; (e) appoints CPT as the Settlement Administrator for the Settlement; (f) approves the proposed forms of Class Notice to the Settlement Class of the Settlement and the proposed Class Notice plan and (g) sets a schedule leading to the Court's consideration of Final Approval of the Settlement.

Date: January 30, 2025

By: */s/ Laura Grace Van Note*
Laura Van Note, Esq. (CA S.B. # 310160)*
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, CA 94607
Telephone: (510) 891-9800
Email: lvn@colevannote.com

Steven A. Schwartz, Esq. (BBO #560066)
**JOEL D. SCHWARTZ, P.C.**
1 Washington Mall, 16
Boston, MA 02108
Phone: (617) 600-0439
Email: sas@joelhschwartz.com

Daniel Srourian, Esq. (C.A. S.B. #285678)*
**SROURIAN LAW FIRM, P.C.**
3435 Wilshire Boulevard, Suite 1710
Los Angeles, CA 90010
Telephone: (213) 474-3800
Email: daniel@slfla.com

*Admitted Pro Hac Vice*

*Attorneys for Plaintiff and the Plaintiff Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on January 30, 2025, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF. I also certify the foregoing document

is being served today on all counsel of record in this case via transmission of Notice of

Electronic Filing generated by CM/ECF and on counsel in the related cases to their respective

emails per the below service list.

<u>/s/Laura Grace Van Note</u>
Laura Grace Van Note, Esq.