## UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JEWELL WEEKES, individually, and on behalf of all others similarly situated, | ) | **Case No. 1:23-cv-10817-NMG** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COHEN CLEARY, P.C., | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF LAURA VAN NOTE, ESQ. IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

I, Laura Van Note, Esq. declare as follows:

1.       I am an attorney duly licensed to practice before all courts of the State of California as well as various federal courts across the country. I am a Partner of the law firm Cole & Van Note ("CVN").

2.       CVN is proposed Class Counsel in these proceedings against Defendant Cohen Cleary, P.C. ("Cohen Cleary" or "Defendant"). I have personal knowledge of the matters stated herein and, if called upon, we could and would competently testify regarding those matters. Thus, I submit this Declaration in support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement.

### PROCEDURAL POSTURE AND HISTORY OF NEGOTIATIONS

3.       I am counsel for Plaintiff Jewell Weekes ("Plaintiff") and have zealously represented the interests of the Settlement Class from the inception of this litigation until the present. As Class Counsel, CVN has worked on a fully contingent basis and assumed the risk of challenging Defendant. In this litigation, Defendant was represented by a very well-respected,

1

well-funded and large national law firm who vigorously defended against Plaintiff's claims throughout the course of this litigation.

4.    This case arises from a cyber security incident occurring on September 30, 2022 (the "Data Incident") that Plaintiff alleges compromised her highly sensitive personally identifiable information ("PII") and protected health information ("PHI") including, without limitation, names, addresses, dates of birth, Social Security numbers, medical information and health insurance information. Plaintiff seeks to represent a class of individuals who seek the same relief from the same injury. Defendant discovered this intrusion and sent notice of the Data Incident to approximately 12,478 individuals.

5.    Plaintiff filed her Complaint on April 17, 2023, seeking to recover damages on behalf of herself and a class of other similarly situated ("Class Members"). Plaintiff was a consumer whose personal information was compromised as a result of the Data Incident. Defendant's alleged failure to implement reasonable data security measures impacted not just Plaintiff's privacy, but the privacy of all Class Members.

6.    Prior to filing suit, CVN conducted an extensive investigation into the Data Incident, which included understanding Defendant's business and the way in which individuals may have been impacted by exfiltration of their information *vis-à-vis* the Data Incident. Further, CVN investigated Defendant's response to the Data Incident and whether it was sufficient to understand Plaintiff's claims, researched the duties applicable to a company like Defendant, etc.

7.    After this extensive investigation and through many discussions with Defendant's Counsel, I determined that litigation of this matter was expected to be protracted, expensive and draining of both sides' resources.

8.      Following a ruling on Defendant's Motion to Dismiss on March 15, 2024, the Court found that Plaintiff's negligence cause of action was properly pled, and the litigation could move forward toward discovery. Plaintiff and Defendant (collectively, the "Parties") agreed to attend an Alternative Dispute Resolution before Magistrate Judge Jennifer C. Boal on December 6, 2024. Following the Alternative Dispute Resolution, the Parties were able to come to an agreement in principle.

## THE CLASS ACTION SETTLEMENT AGREEMENT

9.      The Class Action Settlement Agreement and Release, attached hereto as **Exhibit A,** was entered into between the Parties to this litigation and was fully executed as of January 30, 2025.

10.      The Settlement Agreement provides for the creation of a $150,000.00 non-reversionary Settlement Fund which will also be used by the Settlement Administrator to pay: (i) Costs of Settlement Administration; (ii) Taxes and Tax-Related Expenses; (iii) a Service Award; (iv) Fee Award and Costs and (v) the Settlement Benefits elected by Settlement Class Members who submit valid and timely Settlement Claim pursuant to the terms of this Settlement.

11.      Settlement Payments will be made through the Documented Loss Fund and the Non-Documented Pour-Over Fund. For the Documented Loss Fund, Class Members can make a claim, relying on either an attestation or reasonable documentation demonstrating their loss for a settlement payment of up to $5,000. Following the distribution of Administrative Expenses, Service Awards, Out-of-Pocket Expense Claims, Attorneys' Fees and Class Counsel's Litigation Expenses, the Settlement Administrator will make a pro rata cash payment from the remaining Settlement fund, of up to $300, to each Class Member who submits a valid claim. Defendant has

provided assurances that they have implemented or will implement reasonable steps to adequately secure its data systems.

12.    Plaintiff has been personally involved in the case and supports the Settlement, and proposed Class Counsel strongly believe the settlement is favorable to the Settlement Class.

13.    Further litigation would subject Plaintiff to numerous risks, including the risk that she and the other Class Members obtain no recovery at all.

14.    The Settlement provides significant relief to Members of the Class, and we believe that it is favorable for the Settlement Class. Thus, proposed Class Counsel believe the Court should find the Agreement is fair, reasonable, adequate and worthy of preliminary approval.

15.    In preparation of creating a Notice Program to inform Class Members of the Settlement, CVN requested bids from four competing Claims Administration companies. After reviewing the bids, CVN selected CPT Group, Inc. ("CPT").

16.    As detailed in the Declaration of Julie N Green Claims' Administrator Regarding the Notice Plan and Administration ("Green Decl."), attached hereto as **Exhibit B**, Class Counsel worked with CPT to create a Notice Program that is consistent with other court-approved notice programs, will provide Class Members with notice of their legal rights and comports with due process requirements.

## COUNSEL QUALIFICATIONS

17.    I have practiced law in Missouri and California since 2013 and have a Bachelor of Arts Degree in History from the University of Missouri, Kansas City and graduated from the University of Missouri, Kansas City School of Law. I have also been admitted to practice before all United States District Courts in California and this Court. I am also admitted to practice in and have been admitted *pro hac vice* before the courts in at least another half dozen states.

18.    My firm, which was founded in 1992, is a very specialized practice, devoted almost exclusively to the prosecution of class action matters such as this. Ours was one of the first California firms to devote itself so heavily to this area of practice; indeed, in its nearly 30-year history, CVN has prosecuted well in excess of 300 class actions, some of which are identified in the firm's professional resume attached hereto as **Exhibit "C".** Even when most of the day-to-day work in these cases was being handled by my partner, Scott E. Cole, Esq. or one of our firm's associate attorneys, I closely supervised and established the strategies in every one of those matters. Most of these cases involved some or all of the same legal issues as are presented in the current action.

19.    CVN has successfully achieved class certification, settlements and judgments in varied factual scenarios, just some of the more unique, difficult or groundbreaking situations being set forth in the firm's resume. Some better-known and/or "game changing" cases include *Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116 (Case No. A119697) (setting the standard for settlement approval in California state courts); *Augustus (Davis) vs. ABM Security Services*., Supreme Court of California Case No. S224853 (establishing a new Supreme Court standard for workplace rest periods; $110 million settlement); *Despres v. United Parcel Service, Inc*., Case Nos. 3:03-CV-02987 (TEH) and 3:03-CV-02001 (TEH) (N.D. Cal.) (historic $87 million settlement in meal break-only case); *Kurihara v. Best Buy Co., Inc.*, 2007 U.S. Dist. LEXIS 64224 (N.D. Cal. Aug. 29, 2007) (class cert. granted and clarifying distinction between class composition and entitlement to a recovery); *Tierno v. Rite Aid Corp.,* 2006 U.S. Dist. LEXIS 71794 (N.D. Cal. Aug. 31, 2006) (oft-cited ruling certifying a class of retail Store Managers alleging overtime misclassification; $6.9 million settlement); *Fulton v. Sports and Fitness Clubs of America, dba 24 Hour Fitness, USA, Inc.,* Case No. GIC881669 (Super. Ct. Cal. San Diego Cnty.), (consolidated with Case No. GIC873193) (industry changing case that helped define "piece rate" standard under the law; class certification and then summary judgment granted; $19 million resolution); *In Re Westley Tire Fire Litigation*, Case No. CV 801282 (Super. Ct. Cal. Santa Clara Cnty.) (lead counsel

in toxic 7 million automobile tire fire that impacted up to one third of the State of California); *In Re: Apple Inc. Device Performance Litigation*, Case No. 5:18-md-02827-EJD (N.D. Cal.) (Steering Committee in consumer fraud case); *In Re Tosco SFR Litigation* (C97-01637 (Super. Ct. Cal. Contra Costa Cnty.) (Lead Counsel in massive 1997 toxic airborne release over multiple towns).

20.    Currently, CVN is devoted almost entirely to the prosecution of data breach class actions, with the vast bulk of its caseload being cases involving almost identical legal and factual issues to those presented in the instant case. In these matters, CVN serves in a variety of roles, oftentimes in various leadership positions. For example, CVN has served as court-appointed lead or co-lead counsel in various data breach matters, including, but not necessarily limited to: *Henderson, et al. v. Reventics, LLC*, Case No. 1:23-cv-00586-MEH (D. Colo.) (court appointed co-lead counsel); *Hinds, et al. v. Community Medical Centers, Inc.*, Case No. STK-CV-UNPI-2021-10404 (Super. Ct. Cal. San Joaquin Cnty.) (court appointed co-lead counsel); *Tsvetanova, et al. v. UCSD Health*, Case No. 37-2021-00039888-CU-PO-CTL (Super. Ct. Cal. San Diego Cnty.) (court appointed co-lead counsel); *In Re: Rackspace Data Security Litigation*, No.: SA-22-cv-01296-XR (W.D. Tex.) (court appointed lead counsel); *Fedorys, et al. v. Ethos Group Inc.*, Case No. 3:22-cv-2573-M (N.D. Tex.) (court appointed co-lead counsel); *Moreland, et al. v. 1st Franklin Financial Corporation*, Case No. 2:23-cv-00038-SCJ (N.D. Ga.) (court appointed co-lead counsel); *Domitrovich, et al. v. MC Dean, Inc.*, Case No. 1:23-cv-00210-CMH-JFA (E.D. Va) (court appointed co-lead counsel); *Deevers, et al. v. Wing Financial Services, LLC.*, Case No. 4:22-cv-00550-CVE-MTS (N.D. Okla.) (court appointed co-lead counsel); *Darrin v. Huntington Ingalls Industries, Inc.*, Case No. 4:23-cv-00053-JKW-DEM (E.D. Va.) (court appointed co-lead counsel); *Guerrero v. Merritt Healthcare Holdings, LLC*, Case No. 3:23-cv-00389-MPS (D. Conn.) (court appointed co-lead counsel); *Prutsman v. Nonstop Administration and Insurance Services, Inc*., Case No. 3:23-Cv-01131-VC (N.D. Cal.) (court appointed co-lead counsel); *In re DISH Network Data Security Incident Litigation,* Case No. 1:23-cv-01168-RMR-SBP (D. Colo.) (court appointed co-lead counsel); *Byers v. Orthoalaska, LLC,* Case No. 3:23-cv-00243-SLG (D. Alaska) (court appointed co-lead counsel); *Tambroni v. Wellnow Urgent Care, P.C.*, Case No.

6

1:24-cv-01595 (N.D. Ill.) (court appointed co-lead counsel); *Dryden v. Tri Counties Bank*, Case No. 23CV03115 (Super. Ct. Cal. Butte Cnty.) (court appointed co-lead counsel); *Brett v. Valley Mountain Regional Center*, Case No. STK-CV-UPl-2024-0005025 (Super. Ct. Cal. San Joaquin Cnty.) (court appointed co-lead counsel); *Cordell v. Patelco Credit Union*, Case No. 24CV082095 (Super. Ct. Cal. Alameda Cnty.) (court appointed co-lead counsel); *Skillings, et al., v. Access Sports Medicine and Orthopedics*, Case No. 218-2024-CV-01086 (Super. Ct. New Hampshire Rockingham Cnty.) (court appointed co-lead counsel); *Bujok v. MC2 Data, LLC*, Case No. 0:24-cv-61864-LEIBOWITZ (S.D. Fla.) (court appointed co-lead counsel); *Francisco v. Diligent Acquisitions LLC*, Case No. 4:24-cv-04468 (S.D. Tex.) (court appointed co-lead counsel); *Oliver v. Jewish Home Lifecare* (N.Y. Sup. Ct., N.Y. County, Index No. 157811/2024) (court appointed co-lead counsel).

21.    CVN also serves in more informal (e.g., Executive Committee) leadership positions in numerous other data breach cases and in sole counsel roles in even dozens more—actions currently venued across well over 30 states. CVN, thus, possesses the experience and ample resources to lead the current case and will continue to do so throughout this litigation. The combination experience with class action procedure in general, and with data breach cases in particular, makes me and my firm well-qualified to serve in a leadership position in this case.

22.    As proposed Class Counsel, my firm has committed and will continue to fully commit the resources necessary to represent the Settlement Class and see this Settlement through to the end.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct, and that this declaration was executed in Oakland, CA on this 30th day of January, 2025.

/s/ *Laura Van Note, Esq.*
Laura Van Note, Esq.

# EXHIBIT A

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEWELL WEEKES, individually, and on behalf of all others similarly situated, | ) Case No. 1:23-cv-10817-NMG<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| COHEN CLEARY, P.C., | )<br>) |
| Defendant. | ) |

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Class Action Settlement Agreement and Release ("Settlement" or "Agreement"),[1] dated as of January 29, 2025, is entered into between Plaintiff Jewell Weekes ("Plaintiff"), on behalf of herself and the Settlement Class and Defendant Cohen Cleary, P.C. ("Defendant") (collectively the "Parties"). The Parties hereby agree to the following terms in full settlement of the Action, subject to a Final Approval Order entered by the Court.

## I.    Background

1.    Defendant is a Massachusetts professional corporation that provides legal services in various areas of law including criminal law, family law, estate law, labor and employment law, consumer protection, debt collection, and civil litigation.

2.    In the course of operating its business, Defendant maintains a limited amount of personally identifiable information and personal health information pertaining to the affected individuals.

3.    On or about September 30, 2022, Defendant discovered that certain Private Information had been made accessible to unauthorized parties.

---

[1] All capitalized terms herein shall have the same meanings as those ascribed to them in Section II below.

4.      The affected information varied by individual, but included names, address, dates of birth, Social Security numbers, medical information, and health insurance information.

5.      On November 30, 2022, Defendant began sending out notice letters to affected persons, informing them that their Private Information had been compromised in the Incident.

6.      As a result of the Incident, commencing on April 17, 2023, Defendant was named in a putative Class Action Complaint filed by Plaintiff.

7.      Thereafter, Class Counsel prepared for discovery, researched to understand how the breach occurred, the type of information involved, and whether the information was published on the Dark Web.

8.      The Parties began discussing settlement and the Court set an Alternative Dispute Resolution Hearing ("Settlement Conference") before Magistrate Judge Jennifer C. Boal on December 6, 2024.

9.      Before the December 6, 2024 Settlement Conference, and after completing arms-length negotiations, the Parties agreed upon the material terms of a settlement.

10.      The Parties now agree to settle the Action entirely, without any admission of liability or wrongdoing, with respect to all Released Claims of the Releasing Parties. Defendant has entered into this Agreement to resolve all controversies and disputes arising out of or relating to the allegations made in the Complaint, and to avoid the litigation costs and expenses, distractions, burden, expense, and disruption to its business operations associated with further litigation. Defendant does not in any way acknowledge, admit to, or concede any of the allegations made in the Complaint, and expressly disclaims and denies any fault or liability, or any charges of wrongdoing that have been or could have been asserted in the Complaint. Nothing contained in this Agreement shall be used or construed as an admission of liability, and this Agreement shall

not be offered or received in evidence in any action or proceeding in any court or other forum as an admission or concession of liability or wrongdoing of any nature or for any other purpose other than to enforce the terms of this Agreement. Plaintiff has entered into this Agreement to recover on the claims in the Complaint, and to avoid the risk, delay, and uncertainty of continued litigation. Plaintiff does not in any way concede that the claims alleged in the Complaint lack merit or are subject to any defenses. The Parties intend this Agreement to bind Plaintiff, Defendant, and all Settlement Class Members.

     **NOW, THEREFORE,** in light of the foregoing, for good and valuable consideration, the receipt and sufficient of which is hereby mutually acknowledged, the Parties agree, subject to approval by the Court, as follows.

## II.   <u>Definitions</u>

11.    "Action" means the lawsuit entitled: *Weekes v. Cohen Cleary, P.C.*, Case No. 1:23-cv-10817-NMG, filed in the United States District Court, in the State of Massachusetts (Boston).

12.    "Application for Attorneys' Fees, Costs, and Service Awards" means the application made with the Motion for Final Approval seeking Service Awards for Class Representatives and Class Counsel's attorneys' fees and reimbursement for costs.

13.    "CAFA Notice" means the notice required by the Class Action Fairness Act of 2008, 28 U.S.C. § 1715 ("CAFA").

14.    "Claim" means the submission of a Claim Form by a Claimant.

15.    "Claim Form" means the proof of claim, substantially in the form attached hereto as ***Exhibit 3***, which may be modified, subject to the Parties' approval, to meet the requirements of the Settlement Administrator.

16.    "Claim Form Deadline" shall be 15 days before the initial scheduled Final Approval

Hearing and is the last day by which a Claim Form may be submitted to the Settlement Administrator for a Settlement Class member to be eligible for a Cash Payment.

17.     "Claimant" means a Settlement Class member who submits a Claim Form.

18.     "Class Counsel" means: Laura Van Note of Cole & Van Note, Steven A Schwartz, Esq. of Joel D. Schwartz, P.C. and Daniel Srourian, Esq. of Srourian Law Firm, P.C.

19.     "Class List" means a list of all individuals in the Settlement Class. Defendant shall prepare and provide the Class List to the Settlement Administrator for Notice using information in its records. Class List shall include the Settlement Class's names and postal address (if available).

20.     "Class Representative" means the Plaintiff.

21.     "Complaint" means the Consolidated Class Action Complaint filed in the Action on April 17, 2023.

22.     "Court" means the United States District Court for the District of Massachusetts (Boston), and the Judge(s) assigned to the Action.

23.     "Incident" means the alleged incident that occurred on or around September 30, 2022, in which unauthorized third parties purportedly gained access to Settlement Class Members' Private Information from Defendant's systems.

24.     "Defendant" means Cohen Cleary, P.C.

25.     "Defendant's Counsel" means Jennifer E. Burke and Lindsey A. Gil of Peabody & Arnold LLP and Timothy J. Lowe of McDonald Hopkins PLC.

26.     "Effective Date" of this Agreement means the last date by which all of the following have occurred: (a) The Parties have executed this Agreement; (b) The Parties have submitted to the Court and the Court has entered the Final Approval Order without material changes to the Parties' proposed Final Approval Order; and (c) The time for seeking rehearing,

Docusign Envelope ID: A946A493-AEBE-4F42-90A7-CF9268FA25EC

appellate or other review of the Final Approval Order has expired, or the Settlement is affirmed on appeal or review without material change, no other appeal or petition for rehearing or review is pending, and the time period during which further petition for hearing review, appeal, or certiorari could be taken has finally expired.

27.    "Escrow Account" means the interest-bearing account to be established by the Settlement Administrator consistent with the terms and conditions described herein.

28.    "Final Approval" means the final approval of the Settlement, which occurs when the Court enters the Final Approval Order agreed to by the Parties, substantially in the form attached to the Motion for Final Approval.

29.    "Final Approval Hearing" means the hearing held before the Court during which the Court will consider granting Final Approval of the Settlement and the Application for Attorneys' Fees, Costs, and Service Awards.

30.    "Final Approval Order" means the Final Order that the Court enters granting Final Approval of the Settlement. The proposed Final Approval Order shall be agreed to by the Parties and will be attached as an exhibit to the Motion for Final Approval. The Final Approval Order also includes the orders, which may be entered separately, determining the amount of attorneys' fees and costs awarded to Class Counsel.

31.    "Long Form Notice" means the long form notice of the Settlement, substantially in the form attached hereto as *Exhibit 2*, that shall be posted on the Settlement Website and shall be available to Settlement Class Members by mail on request made to the Settlement Administrator.

32.    "Motion for Final Approval" means the motion that Plaintiff and Class Counsel shall file with the Court seeking Final Approval of the Settlement.

33.    "Motion for Preliminary Approval" means the motion that Plaintiff shall file with

the Court seeking Preliminary Approval of the Settlement.

34.    "Notice" means the Postcard Notice, Long Form Notice, Settlement Website, and settlement telephone line that Plaintiff and Class Counsel will ask the Court to approve in connection with the Motion for Preliminary Approval.

35.    "Notice Program" means the methods provided for in this Agreement for giving Notice and consists of the Postcard Notice, Long Form Notice, Settlement Website, and Settlement telephone line.

36.    "Notice of Deficiency" means the notice sent by the Settlement Administrator to a Settlement Class member who has submitted an invalid Claim.

37.    "Objection Period" means the period that begins the day after the earliest day on which the Notice is first distributed, and that ends no later than 30 days before the Final Approval Hearing.

38.    "Opt-Out Period" means the period that begins the day after the earliest day on which the Notice is first distributed, and that ends no later than 30 days before the Final Approval Hearing.

39.    "Party" means the Plaintiff and the Defendant individually, and "Parties" means Plaintiff and Defendant collectively.

40.    "Plaintiff" means Jewell Weekes.

41.    "Postcard Notice" means the postcard notice of the Settlement, substantially in the form attached hereto as *Exhibit 1*, that the Settlement Administrator shall disseminate to the Settlement Class by mail.

42.    "Preliminary Approval" means the preliminary approval of the Settlement, which occurs when the Court enters the Preliminary Approval Order, substantially in the form attached

35597529.1

as an exhibit to the Motion for Preliminary Approval.

43.    "Preliminary Approval Order" means the order preliminarily approving the Settlement and proposed Notice Program.

44.    "Private Information" means Settlement Class Members' information that may have been exposed in the Data Security Incident, which may include names, address, dates of birth, Social Security numbers, medical information, and health insurance information.

45.    "Releases" means the releases and waiver set forth in Section XIII of this Agreement.

46.    "Released Claims" means the claims described in Section XIII of this Agreement.

47.    "Released Parties" means Defendant, and its past, present, and future parents, subsidiaries, divisions, departments, affiliates, predecessors, successors and assigns, and any and all of their past, present, and future directors, officers, executives, officials, principals, stockholders, heirs, agents, insurers, reinsurers, members, attorneys, accountants, actuaries, fiduciaries, advisors, consultants, representatives, partners, joint venturers, licensees, licensors, independent contractors, subrogees, trustees, executors, administrators, predecessors, successors and assigns, and any other person acting on Defendant's behalf, in their capacity as such. It is expressly understood that to the extent a Released Party is not a party to the Agreement, all such Released Parties are intended third-party beneficiaries of the Agreement.

48.    "Releasing Parties" means (i) Plaintiff and all Settlement Class Members, (ii) each of their respective executors, representatives, heirs, predecessors, assigns, beneficiaries, affiliates, successors, bankruptcy trustees, guardians, joint tenants, tenants in common, tenants by the entireties, agents, attorneys, (iii) any entities in which a Plaintiff and/or other participating Settlement Class Member has or had a controlling interest or that has or had a controlling interest

in him, her, or it, (iv) any other person or entity (including any governmental entity) claiming by or through, on behalf of, for the benefit of, derivatively for, or as representative of a Plaintiff and/or any other Settlement Class Member, and all those who claim through them or on their behalf, and (v) the respective past and present directors, governors, executive-committee members, officers, officials, employees, members, partners, principals, agents, attorneys, advisors, trustees, administrators, fiduciaries, consultants, service providers, representatives, successors in interest, assigns, beneficiaries, heirs, executors, accountants, accounting advisors, and auditors of any or all of the above persons or entities identified in (i)-(iv).

49.     "Service Awards" shall mean the payment the Court may award the Plaintiff for serving as Class Representative.

50.     "Settlement Administrator" means CPT Group.

51.     "Settlement Administration Costs" means all costs and fees of the Settlement Administrator regarding Notice and settlement administration.

52.     "Settlement Class" means all persons in the United States whose Private Information was potentially compromised as a result of the Data Security Incident. Excluded from the Settlement Class are (a) all persons who are governing board members of Defendant; (b) governmental entities; (c) the Court, the Court's immediate family, and Court staff; and (d) any individual who timely and validly opts-out of the Settlement.

53.     "Settlement Class Member" means any member of the Settlement Class..

54.     "Settlement Fund" means the non-reversionary $150,000.00 common fund that Defendant has agreed to pay under the terms of the Settlement.

55.     "Settlement Website" means the website the Settlement Administrator will establish as a means for the Settlement Class Members to submit Claim Forms and obtain notice

Docusign Envelope ID: A946A493-AEBE-4E42-90A7-CE9268FA25FC

and information about the Settlement, including hyperlinked access to this Agreement, the Preliminary Approval Order, Long Form Notice, Claim Form, Motion for Final Approval, Application for Attorneys' Fees, Costs, and Service Awards, and Final Approval Order, as well as other documents as the Parties agree to post or the Court orders posted. The Settlement Website shall remain online and operable for six months after Final Approval.

56.     "Valid Claim" means a Claim Form submitted by a Settlement Class Member that is: (a) submitted in accordance with the provisions of the Settlement; (b) accurately, fully, and truthfully completed and executed, with all of the information requested in the Claim Form, by a Settlement Class Member; (c) signed physically or by e-signature by a Settlement Class Member personally, subject to the penalty of perjury; (d) returned via mail and postmarked by the Claim Form Deadline, or, if submitted online, submitted by 11:59 p.m. Eastern time on the Claim Form Deadline; and (e) determined to be valid by the Settlement Administrator. The Settlement Administrator may require additional information from the Claimant to validate the Claim, including, but not limited to, answers related to questions regarding the validity or legitimacy of the physical or e-signature. Failure to respond to the Settlement Administrator's Notice of Deficiency may result in a determination that the Claim is not a Valid Claim.

## III.    **Settlement Fund**

57.     Within 30 days after Preliminary Approval and receipt of all necessary information required to make payment (e.g., wiring instructions and a W-9 form), Defendant shall deposit or cause to be deposited an amount not to exceed $31,625.00, the cost of claims administration, into the Escrow Account to allow the Settlement Administrator to pay Settlement Administration Costs. Within 30 days after the Effective Date, Defendant shall deposit the remaining balance into the Escrow Account.

58.    Under no circumstances shall Defendant be obligated to pay or cause to be paid more than $150,000.00. No funds shall revert back to Defendant, except in the event this Agreement is voided, cancelled, or terminated, as described in Paragraphs 107-113 in this Agreement.

59.    The Settlement Fund shall be used to pay: (1) Settlement Class Member Benefits to those Settlement Class Members who submit a Valid Claim; (2) any Service Awards awarded to Class Representatives; (3) any attorneys' fees and costs awarded to Class Counsel; and (4) all Settlement Administration Costs.

60.    The funds in the Escrow Account shall be deemed a "qualified settlement fund" within the meaning of United States Treasury Reg. § 1.468B-l at all times since creation of the Escrow Account. All taxes (including any estimated taxes, and any interest or penalties relating to them) arising with respect to the income earned by the Escrow Account or otherwise shall be paid from the Escrow Account, including any taxes or tax detriments that may be imposed on Defendant, Defendant's Counsel, Plaintiff, and/or Class Counsel with respect to income earned by the Escrow Account, for any period during which the Escrow Account does not qualify as a "qualified settlement fund" for the purpose of federal or state income taxes or otherwise, shall be paid out of the Escrow Account. Defendant, Defendant's Counsel, Plaintiff, and Class Counsel shall have no liability or responsibility for any of the taxes. The Escrow Account shall indemnify and hold Defendant, Defendant's Counsel, Plaintiff, and Class Counsel harmless for all taxes (including, without limitation, taxes payable by reason of any such indemnification).

61.    Other than the payment of the Settlement Fund monies as described in this Agreement, Defendant shall have no responsibility, financial obligation, or liability whatsoever with respect to the Settlement Fund or Escrow Account, investment of the Settlement Fund or

Escrow Account, payment of federal, state, and local income, employment, unemployment, excise and any other taxes, penalties, interest or other charges related to taxes imposed on the Settlement Fund or Escrow Account or its disbursement, payment of administrative, legal, accounting, or other cost occasioned by the use or administration of the Settlement Fund or the Escrow Account.

## IV.    Certification of the Settlement Class

62.    Plaintiff shall propose and recommend to the Court that the Settlement Class be certified for Settlement purposes. Defendant agrees solely for purposes of the Settlement provided for in this Agreement, and the implementation of such Settlement, that this Action shall proceed as a class action; provided however, that if a Final Approval Order is not issued, then any certification shall be null and void and, for the avoidance of doubt, Defendant shall retain all rights to object to any future requests to certify a class. Plaintiff and Class Counsel shall not reference this Agreement in support of any subsequent motion for class certification of any class in the Action.

## V.    Settlement Consideration

63.    Each Settlement Class Member who submits a valid and timely Claim Form may qualify for the following:

a.    **Documented Loss Fund**

The Settlement Class Member may submit a claim for a Settlement Payment of up to a $5,000 reimbursement in the form of a Documented Loss Payment. To receive a Documented Loss Payment, a Settlement Class Member must choose to do so on their given Claim Form and submit to the Settlement Administrator the following: (i) a valid Claim Form electing to receive the Documented Loss Payment benefit; (ii) an attestation regarding any actual and unreimbursed Documented Loss, including lost time at $25 per hour for up to four hours; and (iii) reasonable

documentation that demonstrates the Documented Loss to be reimbursed pursuant to the terms of the Settlement.

**b.      Non-Documented Pour-Over Fund**

Following the distribution of Administrative Expenses, Service Awards, Documented Loss Claims, Attorneys' Fees and Class Counsel's Litigation Expenses, the Settlement Administrator will make a pro rata cash payment of up to $300 from the remaining Settlement fund to each Class Member who submits a valid claim, as determined by the Settlement Administrator in accordance with the Settlement Agreement or, if applicable, the dispute resolution process therein, so long as the funds are available.

64.    **Distribution of Settlement Payments**

a.      The Settlement Administrator will first apply the Net Settlement Fund to pay all Documented Loss Payments. The amount of the Net Settlement Fund remaining after all Documented Loss Payments are applied shall be referred to as the "Non-Documented Pour-Over Fund."

b.      The Settlement Administrator shall utilize the Non-Documented Pour-Over Fund to make all Cash Award payments pursuant to Paragraph 69(a). The amount of each payment shall be calculated by dividing the Non-Documented Pour-Over Fund by the total number of valid and timely Claim Forms submitted by Settlement Class Members.

65.    **Business Practice Changes** – Plaintiff have received assurances that Defendant either has undertaken or will undertake reasonable steps to further secure its systems and environments.

**VI.    Settlement Approval**

66.    Upon execution of this Agreement by all Parties and Class Counsel, Class Counsel

shall file a Motion for Preliminary Approval. The proposed Preliminary Approval Order shall be attached to the motion as an exhibit and shall be in a form agreed to by Class Counsel and Defendant.

67.    The Motion for Preliminary Approval shall, among other things, request the Court: (1) preliminarily approve the terms of the Settlement as being within the range of fair, adequate, and reasonable; (2) provisionally certify the Settlement Class for settlement purposes only; (3) approve the Notice Program set forth herein and approve the form and content of the Notices of the Settlement; (4) approve the Claim Form and Claim process; (5) approve the procedures for individuals in the Settlement Class to opt-out of or object to the Settlement; (6) stay the Action pending Final Approval of the Settlement; and (7) schedule a Final Approval Hearing for a time and date mutually convenient for the Court, Class Counsel, and Defendant's Counsel.

## VII.    Settlement Administrator

68.    The Parties agree that, subject to Court approval, CPT Group shall be the Settlement Administrator. The Parties shall jointly oversee the Settlement Administrator. The Settlement Administrator shall fulfill the requirements set forth in the Preliminary Approval Order and the Agreement and comply with all applicable laws, including, but not limited to, the Due Process Clause of the United States Constitution.

69.    The Settlement Administrator shall administer various aspects of the Settlement as described in the next paragraph and perform such other functions as are specified for the Settlement Administrator elsewhere in this Agreement, including, but not limited to, effectuating the Notice Program, handling the Claims process, administering the Settlement Fund, and distributing the Cash Payments to Settlement Class Members who submit Valid Claims.

70.    The Settlement Administrator's duties include to:

13

a.    Complete the Court-approved Notice Program by noticing the Settlement Class by Postcard Notice, sending Long Form Notices and paper Claim Forms on request from individuals in the Settlement Class, reviewing Claim Forms, notifying Claimants of deficient Claim Forms using the Notice of Deficiency, and sending Settlement Class Member Benefits to Settlement Class Members who submit a Valid Claim;

b.    Establish and maintain the Settlement Fund in the Escrow Account approved by the Parties;

c.    Establish and maintain a post office box to receive opt-out requests from the Settlement Class, objections from Settlement Class Members, and Claim Forms;

d.    Establish and maintain the Settlement Website to provide important information about the Settlement and to receive electronic Claim Forms;

e.    Establish and maintain an automated toll-free telephone line for the Settlement Class to call with Settlement-related inquiries, and answer frequently asked questions of individuals in the Settlement Class who call with or otherwise communicate such inquiries;

f.    Respond to any mailed Settlement Class member inquiries;

g.    Process all opt-out requests from the Settlement Class;

h.    Provide weekly reports to Class Counsel and Defendant's Counsel that summarize the number of Claims submitted, Claims approved and rejected, Notices of Deficiency sent, opt-out requests and objections received that week, the total number of opt-out requests and objections received to date, and other pertinent information;

i.    In advance of the Final Approval Hearing, prepare a declaration confirming the Notice Program was completed in accordance with the terms of this Agreement and the Preliminary Approval Order, describing how the Notice Program was completed, indicating the

number of Claim Forms received, providing the names of each individual in the Settlement Class who timely and properly requested to opt-out from the Settlement Class, indicating the number of objections received, and other information as may be necessary to allow the Parties to seek and obtain Final Approval;

       j.     Distribute, out of the Settlement Fund, Cash Payments by electronic means or by paper check;

       k.     Pay Court-approved attorneys' fees and costs, and Service Awards out of the Settlement Fund;

       l.     Pay Settlement Administration Costs out of the Settlement Fund following approval by Class Counsel;

       m.     Pay any required taxes out of the Settlement Fund; and

       n.     Any other Settlement Administration function at the instruction of Class Counsel and Defendant's Counsel, including, but not limited to, verifying that the Settlement Fund has been properly administered and that the Cash Payments have been properly distributed.

71.     The Notice Program and Notices will be reviewed and approved by the Settlement Administrator but may be revised as agreed upon by the Parties prior to submission to the Court for approval. Immaterial revisions to the Notices may also be made prior to dissemination.

## VIII.    <u>Notice to the Settlement Class</u>

72.     Defendant will serve or cause to be served the CAFA Notice no later than 10 days after this Agreement is filed with the Court.

73.     Defendant will make available to the Settlement Administrator the Class List no later than 15 days after entry of the Preliminary Approval Order.

74.     Within 15 days following receipt of the Class List, the Settlement Administrator

shall commence the Notice Program provided herein, using the forms of Notice approved by the Court. Postcard Notice shall be disseminated via U.S. Mail to the Settlement Class's mailing addresses, to the extent known, for all other Settlement Class Members. Notice shall also be published on the Settlement Website.

75.    The Notice shall include, among other information: a description of the material terms of the Settlement; how to submit a Claim Form; the Claim Form Deadline; the last day of the Opt-Out Period for individuals in the Settlement Class to opt-out of the Settlement Class; the last day of the Objection Period for Settlement Class Members to object to the Settlement and/or Application for Attorneys' Fees, Costs and Service Awards; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class members may access this Agreement and other related documents and information. Class Counsel and Defendant's Counsel shall insert the correct dates and deadlines in the Notice before the Notice Program commences, based upon those dates and deadlines set by the Court in the Preliminary Approval Order. If the date or time for the Final Approval Hearing changes, the Settlement Administrator shall update the Settlement Website to reflect the new date. No additional notice to the Settlement Class is required if the date or time for the Final Approval Hearing changes.

76.    The Settlement Administrator shall establish the Settlement Website no later than the day before Notice is first initiated. The Settlement Administrator shall ensure the Settlement Website makes available the Court-approved online Claims Form that can be submitted directly on the Settlement Website or in printable version that can be sent by U.S. Mail to the Settlement Administrator.

77.    **Opt-Outs** – The Long Form Notice also shall include a procedure for individuals in the Settlement Class to opt-out of the Settlement; and the Postcard Notice shall direct individuals

in the Settlement Class to review the Long Form Notice to obtain the opt-out instructions. Individuals in the Settlement Class may opt-out of the Settlement Class at any time during the Opt-Out Period by mailing a request to opt-out to the Settlement Administrator postmarked no later than the last day of the Opt-Out Period. The opt-out request must be personally signed by the Settlement Class member and contain the name, address, telephone number, and email address (if any), and include a statement indicating a request to be excluded from the Settlement Class. Any individual in the Settlement Class who does not timely and validly request to opt out shall be bound by the terms of this Agreement even if he or she does not submit a Valid Claim.

78.    If the Settlement Administrator receives more than 50 Opt-Outs from the Settlement, Defendant shall have the right to terminate the Settlement Agreement in its entirety.

79.    **Objections** – The Long Form Notice also shall include a procedure for the Settlement Class to object to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards, and the Postcard Notice shall direct the Settlement Class to review the Long Form Notice to obtain the objection instructions. Objections must be mailed to the Clerk of the Court, Class Counsel, Defendant's Counsel, and the Settlement Administrator. For an objection to be considered by the Court, the objection must be submitted no later than the last day of the Objection Period, as specified in the Notice. If submitted by mail, an objection shall be deemed to have been submitted when posted if received with a postmark date indicated on the envelope if mailed first-class postage prepaid and addressed in accordance with the instructions. If submitted by private courier (e.g., Federal Express), an objection shall be deemed to have been submitted on the shipping date reflected on the shipping label.

80.    For an objection to be considered by the Court, the objection must also set forth:

   a.    the name of this Litigation (*Weekes v. Cohen Cleary, P.C.*, Case No. 1:23-cv-10817-NMG);

b.    the objector's full name, mailing address, telephone number, and email address (if any);

c.    the specific reasons for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel;

d.    the number of times the objector has objected to a class action settlement within the 5 years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case;

e.    the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards;

f.    the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the 5 years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years;

g.    any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other person or entity;

h.    the identity of all counsel (if any) representing the objector and whether they will appear and address the Court at the Final Approval Hearing;

i.    a list of all persons who will be called to testify at the Final Approval

18

Hearing in support of the objection (if any);

        j.    a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

        k.    the objector's signature (an attorney's signature is not sufficient).

81.    Class Counsel and/or Defendant's Counsel may conduct limited discovery on any objector or objector's counsel.

82.    The Settlement Administrator shall perform reasonable address traces for those Postcard Notices that are returned as undeliverable. By way of example, a reasonable tracing procedure would be to run addresses of returned postcards through the Lexis/Nexis database that can be utilized for such purpose. No later than 45 days before the original date set for the Final Approval Hearing, the Settlement Administrator shall complete the re-mailing of Postcard Notice to those Settlement Class Members whose new addresses were identified as of that time through address traces.

83.    The Notice Program shall be completed no later than 45 days before the original date set for the Final Approval Hearing.

## IX.   Claim Form Process and Disbursement of Cash Payments

84.    The Notice will explain to the Settlement Class that they may be entitled to a Settlement Class Member Benefit and how to submit a Claim Form.

85.    Claim Forms may be submitted online through the Settlement Website or through U.S. Mail by sending them to the Settlement Administrator at the address designated on the Claim Form.

86.    The Settlement Administrator shall collect, review, and address each Claim Form received to determine whether the Claim Form meets the requirements set forth in this Settlement

35597529.1

and is thus a Valid Claim. The Settlement Administrator shall examine the Claim Form before designating the Claim as a Valid Claim to determine that the information on the Claim Form is reasonably complete. The Settlement Administrator shall have the sole authority to determine whether a Claim by any Claimant is a Valid Claim.

87.    The Settlement Administrator shall use all reasonable efforts and means to identify and reject duplicate claims. No Settlement Class Member may submit more than one Claim Form. The Settlement Administrator shall identify any Claim Forms that appear to seek relief on behalf of the same Settlement Class Member. The Settlement Administrator shall use its best efforts to determine whether there is any duplication of claims, and if there is, contact the Settlement Class Member in an effort to determine which Claim Form is the appropriate one for consideration.

88.    The Settlement Administrator shall exercise, in its discretion, all usual and customary steps to prevent fraud and abuse and take any reasonable steps to prevent fraud and abuse in the Claim process. The Settlement Administrator may, in its discretion, deny in whole or in part any Claim Form to prevent actual or possible fraud or abuse. By agreement, the Parties can instruct the Settlement Administrator to take whatever steps it deems appropriate if the Settlement Administrator identifies actual or possible fraud or abuse relating to the submission of claims, including, but not limited to, denying in whole or in part any Claim to prevent actual or possible fraud or abuse. If any fraud is detected or reasonably suspected, the Settlement Administrator and Parties may require information from Claimants or deny Claims, subject to the supervision of the Parties and ultimate oversight by the Court.

89.    Claim Forms that do not meet the terms and conditions of this Settlement, shall be promptly rejected by the Settlement Administrator and the Settlement Administrator shall advise the Claimant or Settlement Class Member of the reason(s) why the Claim Form was rejected.

However, if the Claim Form is rejected for containing incomplete or inaccurate information, and/or omitting required information, the Settlement Administrator may send a Notice of Deficiency explaining what information is missing or inaccurate and needed to validate the Claim and have it submitted for consideration. The Settlement Administrator shall notify the Claimant using the contact information provided in the Claim Form. The additional information and/or documentation can include, for example, answers to questions regarding the validity of the Claimant's physical or e-signature. A Claimant shall have until the Claim Form Deadline, or 15 days from the date the Notice of Deficiency is sent to the Claimant via mail and postmarked or via email, whichever is later, to reply to the Notice of Deficiency and provide the required information. If the Claimant timely and adequately provides the requested information and/or documentation, the Claim shall be deemed a Valid Claim and processed by the Settlement Administrator. If the Claimant does not timely and completely provide the requested information and/or documentation, the Settlement Administrator shall reduce or deny the Claim unless Defendant and Class Counsel otherwise agree.

90.     Where a good faith basis exists, the Settlement Administrator may reduce or reject a Claim for, among other reasons, the following:

      a.      Failure to fully complete and/or sign the Claim Form;

      b.      Illegible Claim Form;

      c.      The Claim Form is fraudulent;

      d.      The Claim Form is duplicative of another Claim Form;

      e.      The Claimant is not a Settlement Class Member;

      f.      The Claimant submitted a timely and valid request to opt out of the Settlement Class;

      g.      The person submitting the Claim Form requests that payment be made to a

person or entity other than the Claimant for whom the Claim Form is submitted;

      h.    Failure to submit a Claim Form by the Claim Form Deadline; and/or

      i.    The Claim Form otherwise does not comply with the requirements of this Settlement.

91.    The Settlement Administrator's reduction or denial of a Claim is final, subject to the following dispute resolution procedures:

      a.    The Settlement Administrator shall have 30 days from the Claim Form Deadline to approve or reject Claims based on findings of fraud or duplication.

      b.    A request for additional information by sending a Notice of Deficiency shall not be considered a denial for purposes of this Paragraph.

      c.    If a Claim is rejected for fraud or duplication, the Settlement Administrator shall notify the Claimant using the contact information provided in the Claim Form. Class Counsel and Defendant's Counsel shall be provided with copies of all such notifications to Claimants.

      d.    The Settlement Administrator's determination as to whether to approve, deny, or reduce a Claim shall be final and binding.

92.    The Settlement Administrator shall provide all information gathered in investigating Claims, including, but not limited to, copies of all correspondence and email and all notes of the Settlement Administrator, the decision reached, and all reasons supporting the decision, if requested by Class Counsel or Defendant's Counsel. Additionally, Class Counsel and Defendant's Counsel shall have the right to inspect the Claim Forms and supporting documentation received by the Settlement Administrator at any time upon reasonable notice.

93.    No person or entity shall have any claim against Defendant, Defendant's Counsel, Plaintiff, the Settlement Class, Class Counsel, and/or the Settlement Administrator based on any

35597529.1

eligibility determinations, distributions, or awards made in accordance with this Settlement.

94.    No later than 30 days after Final Approval or 75 days after the Effective Date, whichever is later, the Settlement Administrator shall distribute the Settlement Class Member Benefits.

95.    Cash Payments to Settlement Class Members will be made electronically or by paper check. Settlement Class Members with Valid Claims shall receive an email instructing them to select the type of payment they wish to receive. Upon issuance of the email, Settlement Class Members shall have 30 days to select their method of payment. Settlement Class Members who do not open their email or provide incorrect or incomplete electronic payment information shall receive a paper check in the mail. Settlement Class Members receiving payment by check shall have 90 days to negotiate the check.

X.    **Final Approval Order and Final Judgment**

96.    Plaintiff shall file their Motion for Final Approval of the Settlement, inclusive of the Application for Attorneys' Fees, Costs, and Service Awards, no later than 45 days before the original date set for the Final Approval Hearing. At the Final Approval Hearing, the Court may choose to hear argument on Plaintiff's Motion for Final Approval of the Settlement and Application for Attorneys' Fees, Costs, and Service Awards. In the Court's discretion, the Court also may hear argument at the Final Approval Hearing from any Settlement Class Members (or their counsel) who object to the Settlement and/or to the Application for Attorneys' Fees, Costs, and Service Awards, provided the objectors submitted timely objections that meet all of the requirements listed in the Agreement.

97.    At or following the Final Approval Hearing, the Court will determine whether to enter the Final Approval Order and final judgment thereon, and whether to grant the Application

for Attorneys' Fees, Costs, and Service Awards. Such proposed Final Approval Order shall, among other things:

a.   Determine that the Settlement is fair, adequate and reasonable;

b.   Finally certify the Settlement Class for settlement purposes only;

c.   Determine that the Notice Program satisfies Due Process requirements;

d.   Bar and enjoin all Releasing Parties from asserting any of the Released Claims at any time and in any jurisdiction, including during any appeal from the Final Approval Order; bar and enjoin all Releasing Parties from pursuing any Released Claims against Released Parties at any time and in any jurisdiction, including during any appeal from the Final Approval Order; and retain jurisdiction over the enforcement of the Court's injunctions;

e.   Release Defendant and the Released Parties from the Released Claims; and

f.   Reserve the Court's continuing and exclusive jurisdiction over the Parties to this Agreement, including Defendant, Plaintiff, all Settlement Class Members, and all objectors, to administer, supervise, construe, and enforce this Agreement in accordance with its terms.

## XI.   Service Awards, Attorneys' Fees and Costs

98.   **Service Awards** – In recognition of the time and effort the Class Representative expended in pursuing this Action and in fulfilling their obligations and responsibilities as Class Representative, and of the relief conferred on all Settlement Class Members by the Settlement, Class Counsel shall request a Service Award for the Class Representative in the amount not to exceed $5,000. If approved, the Service Awards shall be paid by the Settlement Administrator out of the Settlement Fund within 30 days of the Effective Date. The Service Award payments to the Class Representative shall be separate and apart from their entitlement to benefits from the Settlement Fund.

99.    *Attorneys' Fees and Costs* – Class Counsel shall apply to the Court for an award of attorneys' fees of up to 33.33% of the Settlement Fund, plus reimbursement of costs. The attorneys' fees and cost awards approved by the Court shall be paid by the Settlement Administrator out of the Settlement Fund by wire transfer to an account designated by Class Counsel, within 30 days of the Effective Date.

100.    This Settlement is not contingent on approval of the request for attorneys' fees and costs or Service Awards, and if the Court denies the request or grants amounts other than what was requested, the remaining provisions of the Agreement shall remain in force. The provisions for attorneys' fees and costs and the Service Awards were not negotiated until after all material terms of the Settlement.

**XII.    Disposition of Residual Funds**

101.    The Settlement is designed to exhaust the Settlement Fund. In the event there are funds remaining from uncashed checks in the Settlement Fund 20 days following the 90-day check negotiation period, all remaining funds shall be distributed to an appropriate mutually agreeable *cy pres* recipient to be approved by the Court.

**XIII.    Releases**

102.    As of the Effective Date, the Releasing Parties shall automatically be deemed to have fully, finally, and irrevocably released and forever discharged the Released Parties of, and shall be forever barred from instituting, maintaining, or prosecuting, any and all liabilities, rights, claims, actions, causes of action, demands, damages, costs, attorneys' fees, losses and remedies, whether known or unknown, asserted or unasserted, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, based on contract, tort or any other theory, whether on behalf of themselves or others, that result from, arise out of, are based

25

upon, or relate to (a) the Incident; or (b) any of the alleged violations of laws or regulations cited in the Complaint or the Action.

103.   Plaintiff and Settlement Class Members covenant and agree they will not take any step whatsoever to assert, sue on, continue, pursue, maintain, prosecute, or enforce any Released Claim, directly or indirectly, whether on behalf of themselves or others, against any of the Released Parties in any jurisdiction.

104.   Individuals in the Settlement Class who opt-out of the Settlement prior to the Opt-Out Deadline do not release their claims and will not obtain any benefits under the Settlement. With respect to the Released Claims, Plaintiff and Settlement Class Members, expressly understand and acknowledge it is possible that unknown economic losses or claims exist or that present losses may have been underestimated in amount or severity. Plaintiff and Settlement Class Members explicitly took that into account in entering into this Agreement, and a portion of the consideration and the mutual covenants contained herein, having been bargained for between Plaintiff and Defendant with the knowledge of the possibility of such unknown claims for economic loss, were given in exchange for a full accord, satisfaction, and discharge of all such claims.

105.   Plaintiff or Settlement Class Members may hereafter discover facts other than or different from those that he or she knows or believes to be true with respect to the subject matter of the claims released herein, or the law applicable to such claims may change. Nonetheless, each of those individuals expressly agrees that, as of the Effective Date, he or she shall have automatically and irrevocably waived and fully, finally, and forever settled and released any known or unknown, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, contingent or non-contingent claims with respect to all of the matters described in or subsumed by

35597529.1

this Agreement. Further, each of those individuals agrees and acknowledges that he or she shall be bound by this Agreement, including by the release herein and that all of their claims in the Action shall be dismissed with prejudice and released, whether or not such claims are concealed or hidden; without regard to subsequent discovery of different or additional facts and subsequent changes in the law; and even if he or she never receives actual notice of the Settlement and/or never receives a Cash Payment from the Settlement.

106.    Upon the Effective Date: (a) this Settlement shall be the exclusive remedy for any and all Released Claims of Plaintiff and Settlement Class Members; and (b) Plaintiff and Settlement Class Members stipulate to be and shall be permanently barred and enjoined by Court order from initiating, asserting, or prosecuting any Released Claim against the Released Parties, whether on behalf of Plaintiff, any Settlement Class Member or others, in any jurisdiction, including in any federal, state, or local court or tribunal.

## XIV.  Termination of Settlement

107.    This Agreement shall be subject to and is expressly conditioned on the occurrence of all of the following events:

    a.    Court approval of the Settlement consideration set forth in Section V and the Releases set forth in Section XIII of this Agreement;

    b.    The Court has entered the Preliminary Approval Order substantially in the form attached to the Motion for Preliminary Approval;

    c.    The Court has entered the Final Approval Order substantially in the form agreed to by the Parties and attached to the Motion for Final Approval, and all objections, if any, are overruled, and all appeals taken from the Final Approval Order are resolved in favor of Final Approval; and

d.      The Effective Date has occurred.

108.    If any of the conditions specified in the preceding paragraph are not met, then this Agreement shall be cancelled and terminated.

109.    Defendant shall have the option to terminate this Agreement if more than 25 members of the Settlement Class opt-out of the Settlement. Defendant shall notify Class Counsel and the Court of its intent to terminate this Agreement pursuant to this paragraph within 10 days after the end of the Opt-Out Period, or the option to terminate shall be considered waived.

110.    In the event this Agreement is terminated or fails to become effective, then the Parties shall return to the *status quo ante* in the Action as if the Parties had not entered into this Agreement, and the parties shall jointly file a status report in the Court seeking to reopen the Action. In such event, the terms and provisions of this Agreement shall have no further force and effect with respect to the Parties and shall not be used in this case or in any other action or proceeding for any other purpose, and any order entered by this Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*.

111.    In the event this Agreement is terminated or fails to become effective, all funds in the Settlement Fund shall be promptly returned to Defendant. However, Defendant shall have no right to seek from Plaintiff, Class Counsel, or the Settlement Administrator the Settlement Administration Costs paid by Defendant. The Settlement Administrator all remaining amounts in the Settlement Fund to Defendant within 21 days of termination.

## XV.    **Effect of Termination**

112.    The grounds upon which this Agreement may be terminated are set forth in Section XIV. In the event of a termination, this Agreement shall be considered null and void; all of Plaintiff, Class Counsel's, Defendant, and Defendant's Counsel's obligations under the Settlement

shall cease to be of any force and effect; and the Parties shall return to the status quo ante in the Action as if the Parties had not entered into this Agreement. In addition, in the event of such a termination, all of the Parties' respective pre-Settlement rights, claims, and defenses will be retained and preserved.

113.    In the event the Settlement is terminated in accordance with the provisions of this Agreement, any discussions, offers, or negotiations associated with this Settlement shall not be discoverable or offered into evidence or used in the Action or any other action or proceeding for any purpose. In such event, all Parties to the Action shall stand in the same position as if this Agreement had not been negotiated, made, or filed with the Court.

## XVI.    No Admission of Liability

114.    This Agreement reflects the Parties' compromise and settlement of disputed claims. This Agreement shall not be construed as or deemed to be evidence of an admission or concession of any point of fact or law. Defendant has denied and continues to deny each of the claims and contentions alleged in the Complaint. Defendant specifically denies that a class could or should be certified in the Action for litigation purposes. Defendant does not admit any liability or wrongdoing of any kind, by this Agreement or otherwise. Defendant has agreed to enter into this Agreement to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could possibly have been asserted in the Action.

115.    Class Counsel believe the claims asserted in the Action have merit, and they have examined and considered the benefits to be obtained under the proposed Settlement set forth in this Agreement, the risks associated with the continued prosecution of this complex, costly, and time-consuming litigation, and the likelihood of success on the merits of the Action. Class Counsel

fully investigated the facts and law relevant to the merits of the claims, conducted discovery, and conducted independent investigation of the alleged claims. Class Counsel concluded that the proposed Settlement set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class.

116.    This Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties in connection with the negotiations of this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

117.    Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by the Plaintiff or the Settlement Class, or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the Released Parties, in the Action or in any proceeding in any court, administrative agency, or other tribunal.

118.    In addition to any other defenses Defendant may have at law, in equity, or otherwise, to the extent permitted by law, this Agreement may be pleaded as a full and complete defense to and may be used as the basis for an injunction against any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of this Agreement or the Releases contained herein.

## XVII.  **Miscellaneous Provisions**

119.    <u>Gender and Plurals</u>. As used in this Agreement, the masculine, feminine or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever

the context so indicates.

120.  <u>Binding Effect</u>. This Agreement shall be binding upon, and inure to and for the benefit of, the successors and assigns of the Releasing Parties and the Released Parties.

121.  <u>Cooperation of Parties</u>. The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, seek Court approval, uphold Court approval, and do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.

122.  <u>Obligation to Meet and Confer</u>. Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have met and conferred in an attempt to resolve the dispute.

123.  <u>Integration and No Reliance</u>. This Agreement constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof. This Agreement is executed without reliance on any covenant, agreement, representation, or warranty by any Party or any Party's representative other than those expressly set forth in this Agreement. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.

124.  <u>No Conflict Intended</u>. Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

125.  <u>Governing Law</u>. Except as otherwise provided herein, the Agreement shall be construed in accordance with, and be governed by, the laws of the Commonwealth of Massachusetts , without regard to the principles thereof regarding choice of law.

126.  <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the

35597529.1

same instrument, even though all Parties do not sign the same counterparts. Original signatures are not required.

127. <u>Jurisdiction</u>. The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice Program and the Settlement Administrator. As part of the agreement to render services in connection with this Settlement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose. The Court shall retain jurisdiction over the enforcement of the Court's injunction barring and enjoining all Releasing Parties from asserting any of the Released Claims and from pursuing any Released Claims against the Released Parties at any time and in any jurisdiction, including during any appeal from the Final Approval Order.

128. <u>Notices</u>. All notices provided for herein, shall be sent by email with a hard copy sent by first class mail to:

If to Plaintiff's or Class Counsel:

Laura Van Note
**COLE & VAN NOTE**
555 12th Street, Ste. 2100
Oakland, CA 94607
lvn@colevannote.com

Daniel Srourian
**SROURIAN LAW FIRM, P.C.**
3435 Wilshire Boulevard, Suite 1710
Los Angeles, CA 90010
Telephone: (213) 474-3800
daniel@slfla.com

If to Defendant or Defendant's Counsel:

> Jennifer Ellis Burke
> Lindsey A. Gil
> **PEABODY & ARNOLD LLP**
> Federal Reserve Plaza
> 600 Atlantic Avenue
> Boston, MA 02210-2261
> jburke@peabodyarnold.com
> lgil@peabodyarnold.com
>
> Timothy J. Lowe
> **MCDONALD HOPKINS PLC**
> 39533 Woodward Avenue, Suite 318
> Bloomfield Hills, MI 48304
> tlowe@mcdonaldhopkins.com

The notice recipients and addresses designated above may be changed by written notice. Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of objections, requests for exclusion, or other filings received as a result of the Notice Program.

129. <u>Modification and Amendment</u>. This Agreement may not be amended or modified, except by a written instrument signed by Class Counsel and Defendant's Counsel and, if the Settlement has been approved preliminarily by the Court, approved by the Court.

130. <u>No Waiver</u>. The waiver by any Party of any breach of this Agreement by another Party shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

131. <u>Authority</u>. Class Counsel (for Plaintiff and the Settlement Class), and Defendant's Counsel (for Defendant), represent and warrant that the persons signing this Agreement on their behalf have full power and authority to bind every person, partnership, corporation, or entity included within the definitions of Plaintiff and Defendant to all terms of this Agreement. Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement

to all of the terms and provisions of this Agreement.

132.    <u>Agreement Mutually Prepared</u>. Neither Plaintiff nor Defendant shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

133.    <u>Independent Investigation and Decision to Settle</u>. The Parties understand and acknowledge they: (a) have performed an independent investigation of the allegations of fact and law made in connection with this Action; and (b) that even if they may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Action as reflected in this Agreement, that will not affect or in any respect limit the binding nature of this Agreement. All Parties recognize and acknowledge they reviewed and analyzed data that they and their experts used to make certain determinations, arguments, and settlement positions. The Parties agree this Settlement is fair, reasonable, and adequate, and will not attempt to renegotiate or otherwise void or invalidate or terminate the Settlement irrespective of what any unexamined data later shows. It is the Parties' intention to resolve their disputes in connection with this Action pursuant to the terms of this Agreement now and thus, in furtherance of their intentions, the Agreement shall remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in law, and this Agreement shall not be subject to rescission or modification by reason of any changes or differences in facts or law, subsequently occurring or otherwise.

134.    <u>Receipt of Advice of Counsel</u>. Each Party acknowledges, agrees, and specifically warrants that he, she, or it has fully read this Agreement and the Releases contained herein, received independent legal advice with respect to the advisability of entering into this Agreement

and the Releases, and the legal effects of this Agreement and the Releases, and fully understands the effect of this Agreement and the Releases.

135.    <u>Exhibits</u>. The exhibits to this Agreement are expressly incorporated by reference and made part of the terms and conditions set forth herein.

136.    <u>Representations/Warranties Regarding Other Potential Plaintiff or Legal Claims</u>. Class Counsel represent and warrant that they do not represent any clients, or have knowledge of any potential clients, with claims or potential claims against the Released Parties aside from the Released Claims. Plaintiff and Class Counsel each represent and warrant that neither of them is aware of any potential plaintiff, or any attorney other than Class Counsel, who intends to make demands or bring litigation against the Released Parties. Plaintiff and Class Counsel each further represent and warrant that neither of them has been notified or otherwise informed of any such intention or consideration thereof. Plaintiff and Class Counsel each further represent and warrant that neither of them has been referred to any other attorney or any other individual alleging to have, asserting, pursuing, or seeking to pursue any claims against the Released Parties. Class Counsel represent and warrant that they have removed all advertisements, including social media posts, soliciting potential clients to pursue claims against Defendant or any of the Released Parties. Class Counsel further represent and warrant that they have removed any other publications, including social media posts, announcing, publicizing, or describing the Released Claims, to the extent published by Class Counsel.

137.    <u>Bar to Future Suits</u>. Upon entry of the Final Approval Order, the Releasing Parties shall be enjoined from prosecuting any Released Claim in any proceeding against the Released Parties or based on any actions taken by any of the Released Parties that are authorized or required by this Agreement or by the Final Approval Order. It is further agreed that the Settlement may be

pleaded as a complete defense to any proceeding subject to this paragraph.

**PLAINTIFF**

1/29/2025

**Jewell Weekes**

**CLASS COUNSEL**

*Laura Van Note*
ID rmdLGRvLj6ju5uxjoK1nGGn3

1/29/2025

**Laura Van Note, Esq.**
COLE & VAN NOTE

**Daniel Srourian, Esq.**
SROURIAN LAW FIRM, P.C.

**DEFENDANT**

Amber Cohen

1/29/2025

By: _____ Amber Cohen
Its _____ President

**DEFENDANT'S COUNSEL**

Timothy J. Lowe
70DAC1B6602F495...

1/29/2025

**Timothy J. Lowe, Esq.**
MCDONALD HOPKINS

EXHIBIT 1

Claims Administrator
Street Address
City, State, Zip Code

Unique ID: <<UniqueID>>

**If you were notified of a Data Incident involving Cohen Cleary, P.C., you may be entitled to benefits from a settlement.**

<<MAIL ID>>
<<NAME 1>>
<<NAME 2>>
<<ADDRESS LINE 1>>
<<ADDRESS LINE 2>>
<<ADDRESS LINE 3>>
<<ADDRESS LINE 4>>
<<ADDRESS LINE 5>>
<<CITY, STATE ZIP>>
<<COUNTRY>>

A proposed settlement has been reached in class action lawsuit against Cohen Cleary, P.C. ("Cohen Cleary" or "Defendant") related to a Data Incident that was discovered on or about September 30, 2022 and about which Defendants notified potentially impacted individuals on November 30, 2022.

**You are receiving this notice because you may be a Settlement Class Member.** The Settlement Class is defined by the Court as all persons in the United States whose Private Information was potentially compromised as a result of the Data Incident. Under the terms of the settlement, Cohen Cleary has agreed to establish a Settlement Fund of $150,000. Settlement Class Members who submit a valid claim will be reimbursed for any valid Documented Losses fairly traceable to the Data Incident, up to $5,000. Following the distribution of Administrative Expenses, Service Awards, Documented Loss Claims, Attorneys' Fees and Class Counsel's Litigation Expenses, as approved by the Court, the Settlement Administrator will make a *pro rata* cash payment of up to $300 from the remaining Settlement fund to each Class Member who submits a valid claim. All attorneys' fees and costs will also be paid from the Settlement Fund.

The easiest way to submit a claim is online at **www.XXXXXXXXXX.com** using your Unique ID found on the front of this postcard. To be eligible, you must complete and submit a valid Claim Form, postmarked and returned to the Claims Administrator or submitted online on or before **MONTH DAY, 20XX**. You can also exclude yourself or object to the Settlement on or before **MONDAY DAY, 20XX**. If you do not exclude yourself from the Settlement, you will remain in the Class and will give up the right to sue Cohen Cleary over the claims resolved in the Settlement. **A summary of your rights under the Settlement and instructions regarding how to submit a claim, exclude yourself, or object are available at www.XXXXXXXXXX.com.**

The Court will hold a Final Approval Hearing on **MONTH DAY, 20XX, at X:XX X.m.** At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. The Court will listen to people who have asked to speak at the hearing. You may attend the Hearing at your own expense, or you may also pay your own lawyer to attend, but it is not necessary. It is possible the Court could reschedule the hearing to a different date or time without notice, so it is a good idea before the hearing to check **www.XXXXXXXXXX.com.**

This notice is a summary. The Settlement Agreement and more information about the lawsuits and Settlement are available at **www.XXXXXXXXXX.com** or by calling toll-free **1-XXX-XXX-XXXX.**

EXHIBIT 2

**EXHIBIT 2**

**Long Form Notice**

**NOTICE OF PROPOSED CLASS ACTION SETTLEMENT**

*Jewell Weekes,* **individually, and on behalf of all others similarly situated, v.**
*Cohen Cleary, P.C.*, **Case No. 1:23-cv-10817-NMG (U.S.D.C. MA)**

> **You may be eligible for a cash payment from a class action settlement involving Cohen Cleary, P.C., but you need to act.**

This is a court-authorized Notice of a proposed settlement in a class action lawsuit, *Jewell Weekes, individually, and on behalf of all others similarly situated, v. Cohen Cleary, P.C.,* Case No. 1:23-cv-10817-NMG, currently pending in the United States District Court of Massachusetts related to a Data Incident discovered by Cohen Cleary, P.C. ("Cohen Cleary") on or before September 30, 2022. This Notice explains the nature of the class action lawsuit, the terms of the settlement and your legal rights and obligations.

You have legal rights and options that you may act on before the Court decides whether to approve the proposed settlement. Because your rights will be affected by this settlement, it is extremely important that you read this Notice carefully. To read the precise terms and conditions of the settlement, you can access a copy of the Settlement Agreement here [**link to document on website**]. You may also contact the Settlement Administrator at 1-XXX-XXX-XXXX.

| Summary of Your Legal Rights and Options in This Settlement | | Deadline |
|---|---|---|
| **Submit a Claim** | The only way to be eligible to receive a Claimant Award from this Settlement is by submitting a timely and valid Claim Form. The Claim Form must be submitted no later than _____, **2025**. | _____, **2025** |
| **Opt Out of the Settlement** | You can choose to opt out of the Settlement and receive no payment. This option allows you to sue, continue to sue, or be part of another lawsuit against the Defendant related to the legal claims resolved by this Settlement. You can elect your own legal counsel at your own expense. | _____, **2025** |

**QUESTIONS? VISIT WWW._____.COM OR CALL TOLL-FREE 1-XXX-XXX-XXXX**

| Object to the Settlement and/or Attend a Hearing | If you do not opt out of the Settlement, you may object to it by writing to the Court explaining why you don't like the Settlement. You may also ask the Court for permission to speak about your objection at the Final Approval Hearing. If you object, you may also file a claim for a Claimant Award. You must remain in the Settlement Class to object to the Settlement. | _____, 2025 |
| :--- | :--- | :--- |
| Do Nothing | Unless you opt out of the settlement, you are automatically part of the Settlement. If you do nothing, you will not receive a payment from this Settlement and you will give up the right to sue, continue to sue, or be part of another lawsuit against the Defendant related to the legal claims resolved by this Settlement. | No Deadline |

## What Is This Lawsuit About?

In a class action, one representative sued on behalf of people who have similar claims. All of the people with similar claims are class members. One court resolves the issues for all class members, except those who exclude themselves from the class.

This lawsuit began when Plaintiff Gary Ortega filed a putative class action complaint against Cohen Cleary. In the lawsuit, Plaintiff alleges that Cohen Cleary was negligent and violated contractual and statutory damages when a third party obtained unauthorized access to information such as names, addresses, dates of birth, Social Security numbers, medical information and health insurance information. Cohen Cleary denies any liability or wrongdoing of any kind associated with the claims in this lawsuit.

This is just a summary of the allegations. The complaint in the lawsuit is posted at www.XXXXXXXXXX.com and contains all of the allegations.

## Why Is There a Settlement?

To resolve this matter without the expense, delay, and uncertainties of litigation, the parties reached a settlement. The proposed settlement would require Cohen Cleary to pay money to the Settlement Class, and pay settlement administration costs, attorneys' fees and costs of Class Counsel, and a Service Payment to the Class Representative, as may be approved by the Court. The settlement is not an admission of wrongdoing by Cohen Cleary and does not imply that there has been, or would be, any finding that Cohen Cleary violated the law.

## Am I a Class Member?

You are a member of the Settlement Class if you are a resident within the United States of America whose Private Information was exposed to unauthorized third parties as a result of the data breach allegedly discovered by Defendant on or before September 30, 2022.

**QUESTIONS? VISIT WWW._____.COM OR CALL TOLL-FREE 1-XXX-XXX-XXXX**

## Who Represents Me?

The Court has appointed Laura Van Note of Cole & Van Note ("CVN") as Class Counsel. CVN is located at 555 12th Street, Suite 2100, Oakland, CA 94607.

Class Counsel will petition to be paid legal fees and to be reimbursed for their reasonable expenses from the Settlement Fund. You do not need to hire your own lawyer, but you may choose to do so at your own expense.

## What Are the Settlement Benefits?

Cohen Cleary has agreed to establish a Settlement Fund, by depositing with the Settlement Administrator US $150,000.00 in cash.

The Settlement Fund will be used to pay attorneys' fees and costs, a Service Payment for the Class Representative and Settlement administration costs. After deducting amounts for attorneys' fees and costs, a Service Payment for the Class Representative, and Settlement administration costs, the remaining amount (**"Net Settlement Amount"**) will be used to pay timely valid claims.

A Settlement Class Member who timely submits a valid and approved Claim Form shall be entitled to a Claimant Award:

### (1)    Documented Loss Fund

The Settlement Class Member may submit a claim for a Settlement Payment of up to $5,000 reimbursement in the form of a Documented Loss Payment. To receive a Documented Loss Payment, a Settlement Class Member must choose to do so on their given Claim Form and submit to the Settlement Administrator the following: (i) a valid Claim Form electing to receive the Documented Loss Payment benefit; (ii) an attestation regarding any actual and unreimbursed Documented Loss; and (iii) reasonable documentation that demonstrates the Documented Loss to be reimbursed pursuant to the terms of the Settlement.

### (2)    Non-Documented Pour-Over Fund

Following the distribution of Administrative Expenses, Service Awards, Documented Loss Claims, Attorneys' Fees and Class Counsel's Litigation Expenses, the Settlement Administrator will make a *pro rata* cash payment from the remaining Settlement fund, up to $300, to each Class Member who submits a valid claim, as determined by the Settlement Administrator in accordance with the Settlement Agreement or, if applicable, the dispute resolution process therein, so long as the funds are available. If too little money remains to make such a payment, the money will be donated to an appropriate charity.

Cohen Cleary has undertaken or will undertake reasonable steps to further secure its systems and environments.

**QUESTIONS? VISIT WWW._____.COM OR CALL TOLL-FREE 1-XXX-XXX-XXXX**

## How Do I Get a Payment?

You must submit a completed Claim Form no later than **[Day/Month, 2025]**. You may submit a Claim Form online at www.XXXXXXXXXX.com or postmarked and returned to the Claims Administrator.

## How Do I Exclude Myself from the Settlement?

If you want to exclude yourself from the Settlement Class, sometimes referred to as "opting out," you will not be eligible to recover any benefits as a result of this settlement and you will not receive a payment or have any rights under the Settlement Agreement. However, you would keep the right to sue Cohen Cleary at your own expense about the legal issues raised in this lawsuit. You may exclude yourself from the settlement by mailing a written notice to the Settlement Administrator, postmarked on or before **[Day/Month, 2025]**. Your exclusion request letter must:

- Be in writing;
- State your current address;
- Contain the statement "I request that I be excluded from the Settlement Class in the case of *Weekes v. Cohen Cleary, P.C.*";
- Be signed by you; and
- Be mailed to the Settlement Administrator, **[Street Address]**, **[City, State, Zip]**, postmarked on or before **[Day/Month, 2025]**.

## How Do I Object to the Settlement?

You can ask the Court to deny approval by filing an objection. You cannot ask the Court to order a different settlement; the Court can only approve or reject the settlement. If the Court denies approval, no settlement payments will be sent out, and the lawsuit will continue. If that is what you want to happen, you should object.

If you are a member of the Settlement Class and you do not exclude yourself from the Settlement, you can object to the Settlement. To do so, you must file your written objection with the Court no later than **[Day/Month, 2025]**, and mail a copy to Class Counsel and Cohen Cleary's Counsel at the addresses listed below. Your written objection may include any supporting documentation you wish the Court to consider.

If your objection is submitted and overruled by the Court at the Final Approval hearing, you will remain fully bound by the terms of the Settlement Agreement and the Final Approval Order.

Mailing addresses for Class Counsel and Cohen Cleary's Counsel are as follows:

| CLASS COUNSEL: | COHEN CLEARY'S COUNSEL: |
|---|---|
| Laura Van Note, Esq.<br>COLE & VAN NOTE<br>555 12th Street, Suite 2100,<br>Oakland, CA 94607 | Jennifer Ellis Burke<br>Lindsey A. Gil<br>PEABODY & ARNOLD LLP<br>Federal Reserve Plaza<br>600 Atlantic Avenue<br>Boston, MA 02210-2261<br><br>Timothy J. Lowe<br>**MCDONALD HOPKINS LLC**<br>39533 Woodward Avenue, Suite 318<br>Bloomfield Hills, MI 48304 |

## What Is the Difference Between Objecting and Asking to be Excluded?

Objecting means telling the Court that you do not like something about the Settlement. You can object to the Settlement only if you stay in the Settlement Class. Excluding yourself is telling the Court that you do not want to be part of the Settlement. If you exclude yourself, you have no basis to object to the Settlement because it no longer affects you.

## What Am I Agreeing to by Remaining in the Settlement Class?

Unless you exclude yourself, you will be part of the Settlement Class and you will be bound by the release of claims in the Settlement. This means that if the Settlement is approved, you cannot sue, continue to sue, or be part of any lawsuit against Cohen Cleary or the other "Released Parties" asserting a "Released Claim," as defined below. It also means that the Court's Order approving the settlement and the judgment in this case will apply to you and legally bind you.

"**Released Claims**" means any and all actual, potential, filed, unfiled, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees and/or obligations, whether in law or in equity, accrued or unaccrued, direct, individual or representative, of every nature and description whatsoever, whether based on federal, state, local, statutory or common law or any other law, against the Released Parties, or any of them, arising out of, or relating to, actual or alleged facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act in connection with the data security incident, and including all claims that were brought or could have been brought in the Action, belonging to any and all Settlement Class members, including but not limited to any state law or common law claims that they may have or had.

"**Released Parties**" means Cohen Cleary and its past, present, and future, direct and indirect heirs,

assigns, associates, corporations, investors, owners, parents, subsidiaries, affiliates, divisions, officers, directors, shareholders, agents, employees, attorneys, insurers, reinsurers, benefit plans, predecessors, successors, managers, administrators, executors and trustees.

### When Will the Court Decide Whether to Approve the Settlement?

The Court will hold a Final Approval Hearing on **[Day/Month, 2025] at XX:XX A.M./P.M.** at ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛. At that hearing, the Court will determine the overall fairness of the settlement, hear objections, and decide whether to approve the requested attorneys' fees and expenses, Service Payment for the Class Representatives, and settlement administration costs. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.XXXXXXXXX.com and the Court's docket for updates.

### How Do I Get More Information?

For more information, go to www.XXXXXXXXXX.com, or call the Settlement Administrator at 1-XXX-XXX-XXXX. You may also write to the Settlement Administrator via mail to [address] or via email [email address].

EXHIBIT 3

*WEEKES v. COHEN CLEARY, P.C.*, Case No. 1:23-cv-10817-NMG
Cohen Cleary, P.C. Settlement

"OUT-OF-POCKET LOSSES" AND IDENTITY THEFT
PROTECTION AND RESTORATION SERVICES CLAIM FORM

IN ORDER TO BE VALID, THIS CLAIM FORM MUST BE RECEIVED ONLINE AT [INSERT WEBSITE] OR POSTMARKED NO LATER THAN [INSERT DATE].

*ATTENTION: This Claim Form is to be used to apply for relief related to the Data Incident that occurred on or before September 30, 2022 and potentially affected patients, employees, and guarantors of Cohen Cleary, P.C. ("Cohen Cleary"). Individuals may be eligible: 1) for all Settlement Class Members, reimbursement of actual losses that are reasonably traceable to the Data Incident, including attested time.*

*To submit a Claim, you must have been identified as a potential Settlement Class Member, either from Cohen Cleary's Notice of this Settlement with a **unique Claim Number** or through the nationwide press release.*

*You may apply to be reimbursed for your actual out-of-pocket losses, up to $5,000.00.*

*PLEASE BE ADVISED that any documentation you provide must be submitted WITH this Claim Form.*

*Note that you MUST separately apply for out-of-pocket losses, including attested time, using this claim form.*

*CLAIM VERIFICATION: All Claims are subject to verification. You will be notified if additional information is needed to verify your Claim.*

*ASSISTANCE: If you have questions about this Claim Form, please visit the Settlement website at [INSERT] for additional information or call [INSERT PHONE NUMBER].*

PLEASE KEEP A COPY OF YOUR CLAIM FORM AND PROOF OF MAILING FOR YOUR RECORDS.

Failure to submit required documentation, or to complete all parts of the Claim Form, may result in denial of the claim, delay its processing, or otherwise adversely affect the claim.

REGISTRATION

First Name:
MI:
Last Name:

Mailing Address:

City:
State:
ZIP Code:

Telephone Number:

☐ ☐ ☐ – ☐ ☐ ☐ ☐ – ☐ ☐ ☐ ☐

Email Address:

☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐

**Please provide the Claim Number identified in the notice that was mailed to you. If you do not have your Claim Number you can contact the Settlement Administrator.**

☐ ☐ ☐ ☐ ☐ ☐ ☐

*Instructions. Please follow the instructions below and answer the questions as instructed.*

## CLAIM INFORMATION

### *Section A. Confirm Your Eligibility*

**Did you receive a unique Claim Number indicating that you may be a member of the Settlement Class?**

□ Yes □ No

> *If yes, continue to the next question. If no, you are not a member of the Settlement Class and do not qualify to file a Claim.*

**Did you suffer any financial expenses or other financial losses that you believe was as a result of the Data Incident or did you spend time remedying the issues related to the Data Incident? For example, did you sign up and pay for a credit monitoring service, hire and pay for a professional service to remedy identity theft, etc., or spend time monitoring credit, resolving disputes for unauthorized transactions, freezing or unfreezing your credit, remedying a falsified tax return, etc. as a direct result of or attributed to the Data Incident?**

□ Yes □ No

> *If yes, you may be eligible to fill out **Section B** of this form and provide corroborating documentation.*

### Section B. Reimbursement for Losses and Attested Lost Time

*If you suffered verifiable financial losses that are reasonably traceable to the Data Incident or spent time remedying the issues related to the Data Incident, you may be eligible to receive a payment to compensate you for the losses and inconveniences suffered and lost time spent that are fairly traceable to the Data Incident.*

*If it is verified that you meet all the criteria described in the Settlement Agreement, and you **submit** proof of your losses and the dollar amount of those losses, you will be eligible to receive a payment compensating you for your documented losses of up to **$5,000.00**. Examples of what can be used to prove your losses include: receipts, account statements, etc. You may also prove losses by submitting information in the claim form that describes time spent remedying suspected identity theft, fraud, or misuse of personal information and/or other issues reasonably traceable to the Data Incident. You will be required to provide an attestation as to the time you spent remedying issues related to the Data Incident. Examples of what can be used to account for your losses related to time spent remedying issues related to the Data Incident include: time spent monitoring credit, resolving disputes for unauthorized transactions, freezing or unfreezing your credit, remedying a falsified tax return, etc.*

*Providing adequate proof of your losses does not guaranty that you will be entitled to receive the full amount claimed. All Claims will also be subject to an aggregate maximum payment amount, as explained in the Settlement Agreement. If the amount of losses claimed exceeds the maximum amount of money available under the Settlement Agreement, then the payment for your Claim will be reduced on a pro rata basis. If you would like to learn more, please review the Settlement Agreement for further details.*

*Payment for your losses will be paid directly to you electronically, unless you request to be paid by check as indicated below.*

For each loss that you believe can be traced to the Data Incident, please provide a description of the loss, the date of the loss, the dollar amount of the loss, and the type of documentation you will be submitting to support the loss. **You must provide ALL this information for this Claim to be processed.** Supporting documents must be submitted electronically. Please do so as part of this Claim Form at [Insert Website] or along with your postmarked claim form and provide the additional information required below. **If you fail to provide sufficient supporting documents, the Settlement Administrator will deny Your Claim.** Please provide only copies of your supporting documents and keep all originals for your personal files. The Settlement Administrator will have no obligation to return any supporting documentation to you. A copy of the Settlement Administrator's privacy policy is available at [Insert Website]. With the exception of your [DEFENDANT] name, mailing address, email address, and phone number, supporting documentation will not be provided to Defendant in this action. Please do not directly communicate with [DEFENDANT] regarding this matter. All inquiries are to be sent to the Claims Administrator.

*Examples of such losses include payments for identity theft protection or credit monitoring you made which are reasonably traceable to the Data Incident, financial losses due to stolen identity traceable to the Data Incident, etc. These are only examples and do not represent a complete list of losses eligible for compensation. Please provide a description of any loss that you claim was the result of the Data Incident.*

*Examples of documentation include receipts for identity theft protection services, etc.*

| Description of the Loss | Date of Loss | Amount | Type of Supporting Documentation |
|---|---|---|---|
| Example:<br>Identity Theft Protection Service | 0 7 – 1 7 – 2 0<br>MM  DD  YY | $50.00 | Copy of identity theft protection service bill |
| Example:<br>Fees paid to a professional to remedy a falsified tax return | 0 2 – 3 0 – 2 1<br>MM  DD  YY | $25.00 | Copy of the professional services bill |
| | MM – DD – YY | $ . | |
| | MM – DD – YY | $ . | |
| | MM – DD – YY | $ . | |
| | MM – DD – YY | $ . | |
| | MM – DD – YY | $ . | |
| | MM – DD – YY | $ . | |
| | MM – DD – YY | $ . | |
| | MM – DD – YY | $ . | |
| | MM – DD – YY | $ . | |
| | MM – DD – YY | $ . | |

35572677.1

**Reimbursement for Attested Time**:

Settlement Class Members may submit a claim for time spent remedying identity theft, fraud, misuse of personal information, credit monitoring or freezing credit reports, and/or other issues reasonably traceable to the Data Incident at $25.00 per hour for up to 4 hours.

If you spent time remedying issues related to the Data Incident, including at least one (1) full hour, please list the number of hours you spent here:_____.

<u>By checking the below box, I hereby declare under penalty of perjury that the information provided in this Claim Form to support my seeking relief for Attested Time is true and correct.</u>

☐     **Yes, I understand that I am submitting this Claim Form and the affirmations it makes as to my seeking relief for Attested Time under penalty of perjury. I further understand that my failure to check this box may render my Claim for Attested Time null and void.**

**Section C. Payment**

You will receive payment for your losses under this Settlement electronically. If you do not wish to receive an electronic payment, payment for your losses will be paid in the form of a check sent to the mailing address you provided above.

Please check the box if you **do not** want to receive your payment electronically: ☐

If you wish to receive an electronic payment, you may receive it in the following manners:

[Settlement Administrator to provide for electronic payment manners and instructions]

**Section D. Settlement Class Member Affirmation**

By submitting this Claim Form and checking the box below, I declare that I received notification from Cohen Cleary that I have been identified as a potential Settlement Class Member. As I have submitted claims of losses due to the Data Incident, I declare that I suffered these losses.

I understand that my Claim and the information provided above will be subject to verification.

I also understand that I may not be entitled to recover under this Settlement if I am employed by and/or affiliated with the Judge or Magistrate presiding over this action, and/or am employed by the Defendants or anyone acting on their behalf.

<u>By submitting this Claim Form, I certify that any documentation that I have submitted in support of my Claim consists of unaltered documents in my possession.</u>

☐ **Yes, I understand that my failure to check this box may render my Claim null and void.**

Please include your name in both the Signature and Printed Name fields below.

Signature: _____    Date: [ ][ ] – [ ][ ] – [ ][ ]
                                                MM      DD      YY

Printed Name: _____

**IN ORDER TO BE VALID, THIS CLAIM FORM MUST BE RECEIVED ONLINE AT [INSERT WEBSITE] OR POSTMARKED NO LATER THAN [120 days after the Notice Deadline].**

EXHIBIT B

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JEWELL WEEKES, individually, and on behalf of all others similarly situated, | ) | **Case No. 1:23-cv-10817-NMG** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COHEN CLEARY, P.C., | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF JULIE N. GREEN CLAIMS' ADMINISTRATOR REGARDING THE NOTICE PLAN AND ADMINISTRATION

I, Julie N. Green, declare and state as follows:

1.      I am the Senior Vice President of Operations, Class Action Services of CPT Group, Inc. ("Settlement Administrator" or "CPT"). The following statements are based on my personal knowledge, the information provided to me by Counsel for the parties and other CPT employees working on this matter, and records of CPT generated and maintained in the usual course of its business. If called on to do so, I could and would testify competently thereto.

2.      For this matter, CPT is able and willing to provide Notice and Claims Administration services as provided in the Class Action Settlement Agreement ("Settlement Agreement"), if the parties' motion is approved by the court.

3.      CPT Group, Inc. is located at 50 Corporate Park, Irvine, CA 92606.

4.      I have been employed by CPT for 19 years, managing the operations department and supervising multiple notice and claims administration programs. As Senior Vice President of Operations, I am responsible for the oversight, supervision, and evaluation of all departments and positions related to the administration of class action matters to ensure superior quality and successful execution of each component required to complete the settlement process. In my career at CPT, I have been responsible for the design and/or implementation of hundreds of class action

administration plans. I submit this declaration at the request of Counsel in support of the Motion for Preliminarily Approval of Class Action Settlement

## CPT'S EXPERIENCE RELEVANT TO THIS CASE

5.     CPT is a leader in the settlement administration industry and has extensive experience in providing court approved notice of class actions and administering various types of notice programs and settlements, including specifically those of the type provided for and made in data breach litigation. In the past 30-plus years, we have provided notification and/or claims administration services in thousands of class action cases. Some recent multi-state representative matters include *Hinds v. Community Medical Centers, Inc.,* Case No. STK-CV-UNPI-2021-0010404 (Sup. Ct. Cal. Cnty of San Joaquin); *Young v. Good Samaritan Hospital*, Case No. 20STCV30421 (Sup. Ct. Cal. Cnty of Los Angeles); *Heath et al. v. Steel River Systems, LLC.*, Case No. 2023-LA-000006 (IL, 14th Jud. Cir. for Whiteside Cnty., Chanc. Div); *Hashemi, et. al. v. Bosley, Inc.*, Case No. 21-cv-00946-PSG (RAOx) (C.D. Cal); *In Re Southern Ohio Health Systems Data Breach Litigation*, Case No. A2101886 (CT. Com. Pl. Hamilton Cnty., OH); *Bokelman v. FCH Enterprises, Inc.,* Case No. 18-cv-00209-RJB-RLP (D. Haw); *Christofferson v Creation Entertainment, Inc.* Case No. 19STCV11000 (Sup. Ct. Cal. Cnty of Los Angeles); *Hartranft, et al. v. TVI, Inc. d/b/a/ Savers, Inc., Apogee Retail, LLC*, Case No. 8:15-cv-01081 CJC-DFM (C.D. Cal.); *Lim, et al. v. Vendini, Inc.,* Case No. 1-14-CV-259897 (Sup. Ct. Cal. Cnty of Santa Clara); *Thompson v. 1-800 Contacts, Inc., Vision Direct, Inc., Walgreens Boots Alliance, Inc., Walgreen Co., Arlington Contact Lens Service, Inc., National Vision, Inc., Luxottica of America, Inc. (f/k/a Luxottica Retail North America, Inc.)*, Case No. 2:16-cv-01183 (D. Utah); *Broomfield v. Craft Brew Alliance, Inc.*, Case No. 5:17-cv-01027-BLF (N.D. Cal); *Jacobo, et al., v. Ross Stores, Inc.*, Case No. 2:15-cv-04701-MWF-AGRx (C.D. Cal); *Livingston v. MiTAC Digital Corporation*, Case No. 3:18-cv-05993-JST (N.D. Cal); and *Gold, et al. v. Lumber Liquidators, Inc.,* Case No. 3:14-cv-05373-RS (N.D. Cal.). Some of our single-state representative matters include *V.C. et al. v. Salinas Valley Memorial Healthcare System*, Case No. 20-cv-001923 (Sup. Ct. Cal. Cnty of Monterey); *Krinsk, et al. v Monster Beverage Corporation, et al*, Case No. 37-2014-

00020192-CU-BT-CTL (Sup. Ct. Cal. Cnty of San Diego); *Kerr v. The New York Times Co.*, et al., Case No. 37-2016-000010125-CU-MC-CTL (Sup. Ct. Cal. Cnty of San Diego); and *Mount v. Wells Fargo Bank*, Case No. BC395959 (Sup. Ct. Cal. Cnty of Los Angeles).

6.      CPT offers a wide range of class action administrative services for developing, managing, and executing all stages of integrated settlement plans. A true and correct copy of CPT's company resume ("CPT CV") is attached as **Exhibit A**, which provides detailed information concerning our class action claims administration qualifications, experience, as well as our Information Security Statement that details CPT's procedures for the protection of confidential class member information.

7.      Due to the sensitive nature of settlement administration, CPT follows a series of strict protocols to protect the integrity of our work that include, but are not limited to, the following: employing security controls and procedures throughout our business that comply with AICPA SOC 2 Type II; requiring of secure file transfer of all Class Member data, account and wire information; multifactor authentication to secure all email accounts; monitoring each endpoint with modern Data Loss Prevention ("DLP") software; implementation of strict policy regarding the transmittal and storage of SI; requiring staff to complete regular cyber security training; monthly external and internal vulnerability scans to ensure the integrity of our security measures. To protect against potential losses, CPT holds $5,000,000 in Errors and Omissions insurance, $1,000,000 in Crime/Fidelity insurance, and $5,000,000 in cyber insurance.

## NOTICE AND ADMINISTRATION OVERVIEW

8.      CPT was selected by the parties in the above captioned matter to provide administration services for this settlement. In this capacity, CPT will complete the tasks as detailed in the Settlement Agreement, including but not limited to the following: (a) prepare, print and otherwise disseminate notification of the pending settlement to the settlement class members; (b) establish a dedicated toll-free 24-hour support line with Interactive Voice Response ("IVR") capabilities; (c) establish a dedicated settlement website that that will, among many things, inform Class Members of the terms of the Settlement and allow them to file a claim form electronically;

(d) receive objections submitted by class members; (e) receive and validate claims and requests for exclusion submitted by class members; (f) notify the parties of class members who file timely requests for exclusion and timely claim forms; (g) receive other communications about the settlement; (h) provide secure data management and reporting; (i) file any required reports with the court; (j) establish a Qualified Settlement Fund for payment of authorized claims; (k) calculate the amounts due to each class member pursuant to the settlement; (l) make payments to class members through the established fund and file all applicable tax returns; and (l) handle any uncashed checks as directed by the court.

## **CLASS NOTICE**

9.     CPT understands that in this settlement a Class Member means:

> All persons in the United States whose Private Information was potentially compromised as a result of the Data Security Incident. Excluded from the Settlement Class are (a) all persons who are governing board members of Defendant; (b) governmental entities; (c) the Court, the Court's immediate family, and Court staff; and (d) any individual who timely and validly opts-out of the Settlement.

10.    It is also CPT's understanding that the parties expect that the majority of Class Members can be identified and located from Defendant's records. Upon receipt of the Class Member information CPT will assign a unique identifier to each person in the list that will be used throughout the duration of the administration process. The proposed notification program will include the components as described below.

11.    **Direct Notice:** CPT will send a Postcard Notice via U.S. mail to all Class Members for whom a valid mailing address is provided. Prior to mailing, to increase the success rate of deliverability, CPT will scrub the records to reduce anomalies and duplicates and update the mailing addresses using National Change of Address (NCOA). Any mailed notices that are returned as undeliverable from the post office will be promptly re-mailed if returned with a forwarding address or skip traced in attempt to find the current addresses and promptly re-mailed if ascertained.

12.    **Informational Press Release:** To notify unknown Class Members, CPT will disseminate a press release on US1 National Newsline. While the exact number of impressions cannot be predetermined, as they depend on how many media outlets pick up and share the press release, distributing it through US1 National Newsline will significantly increase the campaign's overall reach. This additional exposure will help ensure that more potential class members are informed of the settlement and their rights. The press release will contain sufficient information for any interested news organization or authors to write a news story. A press release helps bring awareness to the settlement and generates additional media coverage for a low cost. The release will highlight the toll-free number and settlement website.

13.    **Website**: CPT will set up and administer a dedicated settlement website that will be informative and easy for potential members of the Settlement Classes to navigate. The Settlement Website will include links to the Settlement Agreement, Preliminary Approval Order, Long Form Notice, a downloadable version of the Claim Form, Frequently Asked Questions, and other relevant filings as instructed by the parties or the Court. In addition, the website will provide the information necessary to file a claim online and will provide for secure online submission of Claim Forms and supporting documents. The website address or a hyperlink will also be displayed on all summary notifications described above.

14.    **Toll-Free Number/IVR**: CPT will establish a dedicated 24-hour, toll-free support line with Interactive Voice Response ("IVR") capabilities to provide potential members of the Settlement Class with: (a) general and detailed information about the Action; (b) answers to frequently asked questions; and (c) information relating to filing a claim form or opt out.

15.    In addition, CPT will maintain a dedicated email inbox for handling inquiries from potential Settlement Class Members and claimants.

## PROCESSING OF RESPONSES FROM CLASS

16.    CPT understands that Class Members can make a claim by completing the claim form and submitting it by mail to CPT at the address shown in the Notice or by submitting it online via the settlement website. In accordance with the terms of the parties' Settlement Agreement, CPT will review all claim forms and supporting documents submitted and confirm that they are

valid, submitted by a qualifying class member, and that all necessary information has been provided to support the claim.

17.     CPT also understands that Objections and Opt-Outs must be served in writing as instructed in the Notice. CPT will maintain a record of and inform the parties of all Opt-Out requests submitted by Settlement Class Members, as well as any Objections CPT may receive.

## ADMINISTRATION FEES

18.     CPT estimates its costs for the notice and administration of this Settlement will not exceed $31,625 based on 12,478 class members and a claim filing rate of 3%. CPT understand that the costs related to claims administration will be paid from the Settlement Fund.

## CONCLUSION

19.     The proposed Notice Plan includes individual direct notice to all members of the Settlement Class who can be identified through reasonable efforts as well as a Settlement Website and toll-free hotline. Based on our experience with similar cases, the notice program described herein is consistent with other court-approved notice programs and will provide Class Members with notice of their legal rights and comports with due process requirements.


I declare under penalty of perjury under the laws of the United States and state of California that the foregoing is true and correct.


Executed on January 29, 2025, at Irvine, California.


JULIE N. GREEN

# EXHIBIT A

# CURRICULUM VITAE



 50 Corporate Park
Irvine, CA 92606     www.CPTGROUP.com     1 (800) 542-0900

## COMPANY PROFILE

CPT Group, Inc. ("CPT"), founded in 1984, is a leading provider of notice and settlement class action administration services and has been appointed as the third-party administrator by all major courts. Throughout our history, CPT has disbursed billions of dollars in settlement funds, serviced over 250,000,000 class members, and administrated over 7,000 cases. CPT offers a wide range of class action administrative services for developing, managing, and executing all stages of integrated notice plans and settlements. This includes pre-certification and discovery mailings, class-certification mailings, claims processing and administration, data management, data reporting, settlement fund administration, legal noticing campaigns, website design, and web hosting. The project management team, call center, data entry center, IT, and production facilities are all located at the corporate headquarters in Irvine, CA.

## QUALITY ASSURANCE & SECURITY

The integrity of CPT's work and our stringent quality assurance protocols are strengthened by the staff's ability to operate in close proximity keeping the work managed in-house. With a commitment to rigorous security protocols and controls, CPT upholds an obligation to its clients to maintain data and cyber security practices that comply with AICPA SOC 2 - Type II.

## DIVERSITY & INCLUSION

CPT believes that promoting diversity starts with a commitment to building understanding and awareness. Diversity is not just cultural or ethnic, it includes people of all ages and backgrounds. We are guided by a commitment to removing barriers to the recruitment, retention, and advancement of talented individuals from historically excluded populations. CPT recruits and rewards team members based on capability and performance, regardless of race, gender, sexual orientation, gender identity or expression, lifestyle, age, educational background, national origin, religion, or physical ability.

## AREAS OF EXPERTISE

- **PROJECT MANAGEMENT -** At the heart of our administrative capabilities is the ability to manage and process our cases as a neutral TPA with efficiency, accuracy, and in compliance with the terms of the parties' agreement. Our skilled approach in the use of technology, effective management, and quality assurance is the core of our operation.
- **Claims Administration** – CPT conducts extensive Quality Assurance processes throughout the duration of the claims period. Any responses received from Class Members are processed according to our strict internal procedures and in accordance with the Settlement Agreement. Counsel is provided with all required reporting, including, where applicable, a list of approved claimants and the settlement calculations for each.
- **Call Center** – CPT's case support representatives stand ready to service all case inquiries offering live, multi-lingual, 1-1 response, 5 days a week during business hours (extended hours available). Interactive Voice Response (IVR) assures that class members receive the assistance and support they require 24 hours a day. A proprietary call tracking system combined with highly trained representatives ensures an accurate class member history for each and every call.
- **Data Management/Reporting** – Through programmatic analysis, CPT will standardize the class data to compile a master mailing list. CPT prepares weekly status reports for each case that summarize the status of returns and responses such as mail pieces and claim form submissions. CPT is SOC 2 Type II certified, which ensures necessary measures are taken to safeguard all class member data.
- **Noticing Expertise** – CPT's legal notice experts have a combined experience of over 25 years in the industry and come together to plan a successful notice campaign based on the requirements of the Settlement. After strategizing and consulting with Counsel, our team will determine the best method of notification to reach your intended target audience. Whether notification will be through means of a known or unknown data set, CPT will execute the campaign with precision and accountability.
- **Settlement Fund Administration** – CPT's team of tax and accounting professionals manages all fund distributions through a rigorous and supervised process. Stringently following the terms of the Court Order, CPT maintains its Qualified Settlement Fund (QSF) accounts through federally insured banks with access restricted to authorized personnel only. On behalf of the QSF, CPT will handle all remittances and reporting to local, state, and federal tax authorities.



## EXPERIENCE

CPT has extensive experience providing court-approved notice and administration services in complex, large fund, and top-tier class action settlements across a broad spectrum of unique subject matters. Below are highlights from a few relevant cases we handled:

- *Helmick v. Air Methods Corp., Alameda County Superior Court, Case No. RG13665373*: *(Top Settlements, 2020)* Administration of this $78,000,000 employment settlement included direct mailed notice to class members, production and maintenance of a settlement website, and distribution of over $48,000,000 to eligible claimants.

- *Wackenhut Wage and Hour Cases, Los Angeles County Superior Court, Case No. JCCP Np. 4545*: *(Top Settlements, 2019)* To notify potential class members in this $130,000,000 wage and hour settlement, CPT' provided email and text notice in both English and Spanish, maintained a dedicated settlement website with an online claims portal, and a toll-free support hotline. CPT's outreach efforts resulted in a 57.14% filing rate.

- *Sanchez v McDonald's Restaurants of California, Los Angeles County Superior Court, Case No. BC499888:* *(Top Settlements, 2019)* Notice methods in this $26,000,000 wage and hour settlement included both mailed notice in both English and Spanish and email notification, as well as a settlement website and toll-free case support hotline.

- *Augustus et al. v. American Commercial Security Services, Inc., Los Angeles County Superior Court, Case No. BC336416*: *(Top Settlements, 2018)* Administration duties in this $110,000,000 employment settlement included direct mailed notice to class members in both English and Spanish and distributing over $72,000,000 in settlement funds to valid claimants.

- *Abdullah v U.S. Security Associates, Inc., Case No. 2:15-cv-09-00984 PSG-E (C.D. Cal.):* *(Top Settlements, 2018)* Administration of this $21,000,000 wage and hour settlement included direct mailed notice to class members, class member support hotline and distribution of over $13,000,000 to eligible claimants.

- *Thompson v. 1-800 Contacts, Inc., Vision Direct, Inc., Walgreens Boots Alliance, Inc., Walgreen Co., Arlington Contact Lens Service, Inc., National Vision, Inc., Luxottica of America, Inc. (f/k/a Luxottica Retail North America, Inc.), Case No. 2:16-cv-01183 (D. Utah)*: This $40 million-dollar anti-trust settlement comprised of four settlement classes required design and implementation of a robust, multi-faceted two-part notice program with a multi-layered media campaign combining the use of various digital advertisement platforms, a press release, a dedicated settlement website with an online claims portal, and a toll-free support hotline. The notice program also included an e-mail notice campaign to approximately 10,000,000 potential class members. Combined notice efforts resulted in over 140,000 claimants.

- *Broomfield v. Craft Brew Alliance, Inc., Case No. 5:17-cv-01027-BLF (N.D. Cal.)*: CPT's outreach efforts in this $20 million consumer settlement included a multi-media channel approach to notice which employed direct mailed notice and a digital, social, and mobile media campaign which reached an impressive 91.43% of the targeted 8,000,000 class members. CPT processed both electronic and hard copy claim forms and valid claimants were paid via paper checks, e-Check, and ACH.

- *Livingston v. MiTAC Digital Corporation, Case No. 4:18-cv-05993-JST (N.D. Cal.):* In this matter, CPT was charged with distributing direct notice via email and mail as well as the design and execution of a multi-media channel supplemental notice campaign that combined the use of various digital advertisement platforms, a nationwide press release, print publication, a dedicated settlement website, and a toll-free support hotline. Combined, these efforts reached 82% of the targeted audience. Claims processing included claim forms submitted both digitally and hard copy and valid claimants received paper checks.

- *Lim, et al. v. In re Vendi, Inc., Superior Court of the State of California, County of Santa Clara, Case No. 1-14-CV-259897:* In this $3 million data breach settlement, CPT notified approximately 9,000,000 potential class members through a combination of email, postcard, and publication notice. Claims processing included claim forms submitted both digitally and hard copy, and valid claimants received paper checks.



## EXPERIENCE

- *Mael v. Evanger's Dog and Cat Food Co., Inc., et al. Case No. NO. 3:17-cv-05469-RBL (W.D. Wash):* Notice efforts included a multi-media program designed to reach settlement class members through a combination of direct and supplemental notification methods. Email, internet banner and social media advertisements, a dedicated settlement website, and a toll-free support hotline were used to effectively reach 87% of the target audience nationwide. CPT processed both electronic and hard copy claim forms and valid claimants were paid cash awards or product certificates.

- *Jacobo, et al. v. Ross Stores, Inc., Case No. 2:15-cv-04701-MWF-AGRx (C.D. Cal.):* In this $4.85 million consumer settlement, CPT notified approximately 9,000,000 potential class members via direct email notice and a media campaign that combined the use of various digital advertisement platforms, a nationwide press release, print publication in People magazine, a dedicated settlement website, and a toll-free support hotline. Ultimately, CPT processed 285,000 claims and disbursed $3,000,000 in merchandise certificates.

- *Gold, et al. v. Lumber Liquidators, Inc., Case No. NO. 3:14-cv-05373-RS (N.D. Cal.):* The Notice Plan for this matter relied heavily on direct notice, but to ensure effective reach also encompassed supplemental notice efforts including digital advertisements, a nationwide press release, a dedicated settlement website, and a toll-free support hotline. CPT processed claims submitted electronically, and hard copy and valid claimants were paid via a combination of paper checks and vouchers.

- *Bokelman, et al. v. Zippy's/FCH Enterprises, Inc., United States District Court for the District of Hawaii, Case No. 18-00209-RJB-RLP:* Notice efforts for this data breach settlement included a multi-media program designed to reach settlement class members through a combination of direct mail, email, in-store notice, and supplemental media. The digital notice campaign served impressions for 8-weeks across Google Display Network (GDN), programmatic display, press releases, Facebook, Instagram, Twitter, print publication, and Google Ads. Overall, the supplemental notice campaign alone reached 72% of the target audience nationwide.

- *Coleman, et al. v. Boys Town National Research Hospital, District Court of Douglas County, Nebraska, Case No. D01CI18008162:* Notice to 98,957 class members in this data breach settlement was mailed in April 2020 when CA businesses were under stay-at-home orders. CPT was able to execute and carry out all administrative duties outlined in the settlement agreement without any disruption due to our robust Pandemic Policy that was immediately put into practice once the Governor gave executive orders.

- *Christofferson, et al., v. Creation Entertainment, Inc., Superior Court of the State of California, County of Los Angeles, Case No. 19STCV11000:* Notice efforts for this data breach settlement included a multi-media program designed to reach settlement class members through direct mail, email, and supplemental media. The digital notice campaign served impressions across Google Display Network (GDN), programmatic display, PR Newswire national Newsline, Facebook, Instagram, Twitter, print publication, Google Ads and Bing Ads. CPT's supplemental notice program reached 75% of the target audience nationwide. In addition, CPT served notice to 94.6% of the class members for whom the defendant provided an email address and 99.5% by mail. CPT reported a 3.79% filing rate.





# QUALIFICATIONS & EXPERIENCE OF KEY PERSONNEL

## JULIE N. GREEN,
### Senior Vice President of Operations
### Notice Expert

With 19 years at CPT, Julie Green is a driving force behind the company's ongoing success. Through oversight responsibilities for the entire operation, she has an expert hand in all aspects of notice administration and demands quality and success for each step of the process. Making informed recommendations to meet the goals of complex and unique settlements, Julie has been responsible for the design and or implementation of thousands of class action notice programs. She understands the necessary mechanics to ensure that effective notice is executed while making certain neutrality and client confidentiality is continually maintained. In her position, Julie leverages the Operations Team's abilities to meet the goals and objectives of the Business Development Team, while ensuring that CPT's clients are met with exceptional service and a successful notice program. Julie holds a BA in Drama and Psychology & Social Behavior from the University of California, Irvine.

## RANDI J. MARTZ,
### Director of Marketing & Business Development
### Notice Expert

Ms. Martz serves as Director of Marketing and Business Development and has been with CPT Group for more than 15 years. Randi is responsible for critically analyzing the requirements of a settlement for legal notification through secondary market research, data analysis, planning, and execution. Upon consulting with clients to determine the needs of the Settlement parties, Randi finds ways to increase efficiencies to implement cost savings for the RFPs. She is also tasked with researching and analyzing target markets to develop strategic and tactical plans to grow the business. As the liaison between the Business Development and Operations Teams, Randi collaborates on identifying critical business development and marketing opportunities to strengthen the Settlement and Client's core objectives. Randi received her B.A. in Business Administration, a Professional Concentration, from California State University of Fullerton.

## JACQUELINE N,K. HITOMI,
### Director of Settlement & Treasury Services

Jackie Hitomi is the Director of Settlement & Treasury Services at CPT Group. With 15 years of experience in the class action industry, Jackie oversees the distribution process and is responsible for ensuring the accuracy of settlement calculations and compliance with court-approved agreements. Jackie manages a team of disbursement and tax administrators and provides guidance to the case management team for complex settlements. As a Director, Jackie serves as a trusted contact for clients and assists with the effectuation of multifaceted projects. She is also a key contributor to the development and execution of the settlement administration process. Jackie began her legal career as a Paralegal at the Orange County District Attorney's Office and has also held Senior Paralegal positions in several law firms in Orange County and Los Angeles. She received her B.A. in International Relations and Law & Public Policy, from the University of Southern California, and completed the ABA Paralegal Studies from the University of California, Los Angeles.

## ABEL E. MORALES,
### Director of Operations

Abel Morales is the Director of Operations at CPT Group. Since joining CPT in 2010, Abel has handled hundreds of class action cases from inception through distribution and has become an expert in complex settlements. He is the primary client contact and is well trusted for his expertise in the class action industry. Abel oversees the Claims Processing Department, Production Department, and Class Member Support Services. His wide range of expertise provides valuable insight into all facets of the Administration process. Prior to CPT Group, Abel was a Senior Analyst for 9 years at a prominent Fortune 500 mutual insurance holding company. Abel also holds a B.A. in International Finance from the California State University of Fullerton. He is bilingual in Spanish.

## J. LES GAINOUS,
### Software Development Manager

J. Les Gainous has over 30 years of experience in developing and architecting enterprise-level software applications, with 10 of those years as a solutions architect with the Microsoft Corporation. At Microsoft, Les was involved with major software application projects at many Fortune 50 companies, including corporations such as Motorola, Toyota America, Merck Pharmaceuticals, Chevron, VISA America, and Charles Schwab. At CPT his team is primarily responsible for architecting and engineering CPT's Line of Business software application. The application allows cross-case functionality via a centralized system-of-record data store. Having this cross-case functionality, the application allows for automating sets of processes around the administration of class action cases. Along with automation, his team minimizes data redundancies. Les is a graduate of Florida State University with a BS in Business Administration and a minor degree in Computer Science.

# QUALIFICATIONS & EXPERIENCE OF KEY PERSONNEL

### ALEJANDRA ZARATE,
**Supervising Case Manager**

Alejandra Zárate de Landa is CPT Group's Case Quality Assurance Manager. In her role, she is responsible for analyzing the Stipulations of Settlement as well as the Court Orders to ensure compliance in all aspects of case administration as well as the allocation of settlement funds to class members. Alejandra started with CPT Group over 15 years ago in the claims department and became a Case Manager in 2009. She was promoted into her current role in 2016. Alejandra received her degree in Computer Engineering from Autonomous University of Baja California in Ensenada, B.C. Mexico. While earning her degree, she worked as a web development assistant and helped develop a web page for students interested in taking off-campus classes.

### TARUS DANCY
**Supervising Case Manager**

As a Supervising Case Manager at CPT Group, Tarus leads a team of Case Managers that oversee a breadth of cases, including Wage & Hour, pre-settlement Belaire, and Class Certification matters. With over a decade of experience in project management, Tarus brings a track record of guaranteeing projects are completed on schedule and in accordance with case specifications. In addition, his exceptional communication and leadership abilities support the continuity of the various projects he oversees. Tarus holds an M.B.A. in Project Management from the Florida Institute of Technology and a B.A. in Communications from the University of Memphis.

### JULIAN HUYNH
**Supervising Disbursement Administrator**

Julian Huynh is the Supervising Disbursement Administrator at CPT and oversees the disbursement team in implementing the settlement distribution process. In his role, Julian ensures the quality of the settlement calculations and payments made through the Qualified Settlement Fund to class members, counsel, and state and federal government agencies are timely and accurate for every case. In addition, Julian maintains the bank ledger reconciliations, confirming that the cleared payments are authentic and free from fraudulent activity.
Prior to joining the CPT team, Julian worked at the Orange County Registrar of Voters to conduct fair and accurate elections. He also was a prior member of the Army National Guard stationed out of Bell, CA. Julian holds a B.A. in Political Science and History from the University of California, Santa Barbara.

### TIM CUNNINGHAM,
**Supervising Case Manager**

Tim Cunningham has successfully managed over 400 cases in his 11 years at CPT Group. As Supervising Case Manager, under his direction, a team of Case Managers and Assistants are trained and guided to oversee all case activity—from administrative conception to disbursement. Tim and his team are also the primary contact between the firm and Counsel while also working closely throughout administration with the IT, Mailing, Claims, and Call Center departments. Prior to CPT Group, Tim was a Lead Relationship Manager for 10 years at a prominent Fortune 500 mutual insurance holding company. Tim earned his B.A. in Public Administration with a minor in English from California State University San Diego.

### CAROLE THOMPSON,
**Supervising Case Manager**

Carole Thompson is a Supervising Case Manager at CPT Group. In this role, she leads a team of Case Managers and Assistants and ensures the proper guidance and supervision is upheld for high accuracy levels and prompt adherence to court-ordered deadlines. She is also responsible for overseeing all case activities and having a comprehensive understanding of each case her team handles. Carole initially joined CPT in 2010 as a Case Manager. In her career prior, she spent 12 years in the Financial Industry at a prominent Fortune 500 annuities company. Then, when an opportunity took her family to Minot, North Dakota, she had to leave CPT, but gained 5 years of Human Resources expertise, first as Benefits Specialist at Trinity Health and then as a Benefits Coordinator at Food Management Investors, Inc. Upon returning to California in 2016, Carole rejoined CPT, providing a strong professional background to the team.

---

## EXHIBITS

EXHIBIT 1. CPT'S INFORMATION SECURITY STATEMENT
EXHIBIT 2. CPT'S DATA AND SETTLEMENT FUND TRANSMISSION METHODS

# EXHIBIT 1

## INFORMATION SECURITY STATEMENT
**Confidential**

CPT Group, Inc. ("Company" or "CPT") maintains a comprehensive, written Information Security Program that complies with all applicable laws and regulations and is designed to (a) ensure the security, privacy and confidentiality of Class Member Information, (b) protect against any reasonably anticipated threats or hazards to the security or integrity of the Class Member Information, and (c) deny unauthorized access to, use, deletion, or modification of Class Member Information. As part of an ongoing effort, throughout its business CPT has implemented the following security controls and procedures:

1)  Company uses Class Member Information only for the purposes for which Client provided it, as described in any Agreements and/or Court Order's governing the provisions of the Company's services on any particular engagement.

2)  Company has designated one or more specifically named employees to be responsible for the administration of its Information Security Program.

3)  Company has and maintains processes for identifying, assessing, and mitigating the risks to Class Member Information in each relevant area of the Company's operations and evaluating the effectiveness of the safeguards for controlling these risks.

4)  Company utilizes an EDR that runs and analyzes daily Risk Assessment and Threat Intelligence scans on all company computer stations, servers and protected network subnets. These scans search for any software vulnerabilities along with data containing sensitive information ("SI").

5)  All computers are provisioned with an advanced security stack. Company's Endpoint Protection centrally reports activity, handles patch management and security policies. Company's security stack is based on DNS and content filtering, deep packet inspection at the firewall level, antivirus/antimalware, email filtering and user behavior analysis. Each endpoint is monitored with modern Data Loss Prevention ("DLP") software. Company's DLP system prevents connection to unauthorized external storage, or cloud systems. It actively blocks screen prints and will not allow confidential user information to be sent out of our trusted network.

6)  Login access to Company email or systems requires two factor authentication, which requires not only a password and username but also something physical, like user location, secure ID token or biometrics.

7)  Company regularly monitors, tests and updates its Information Security Program.

8)  Company restricts access to Class Member Information only to those employees, agents, or subcontractors who need to know the information to perform their jobs.

9)  Company performs an annual audit of its Information Security Program and maintains compliance with **AICPA SOC 2 Type II.**  This includes a review of the controls: vulnerability scans, secure software development life cycle, patch management, intrusion detection and prevention, encryption of storage media and devices. Company makes reasonable changes to its Information Security Program to ensure it can maintain safeguards that are appropriate for the Class Member Information at issue.

10)  At Client's request, but only when and in a manner consistent with applicable Agreements and/or Court Orders, Company will securely destroy or return all Class Member Information in its possession and certify to Client in writing that Company has done so. If Company destroys Class Member Information rather than return it, Company will use destruction methods in compliance with all applicable state and federal laws and regulations, including NIST Special Publication 800-88, Revision 1 (2015). This obligation to return or destroy information shall not apply to Class Member Information that is stored in backup or other disaster recovery systems, archives or other storage systems that make it impractical to destroy the information, but if Company retains Class Member Information for these reasons, its obligation under the Settlement Agreement will continue to apply for so long as it retains the information. Additionally, the Company will retain all hard copy documents (i.e. Claim Forms, etc.) for a period of 6 months, at which time they are scanned and shredded on Company premises in compliance with NIST and SOC Cybersecurity Framework.

11)  Company performs extensive background checks (County Criminal, County Civil and National Criminal Database Search) of all its employees, including a review of their references, employment edibility, and education verification to ensure they do not pose a risk to the security of Class Member Information or Clients employees. Company will provide, upon request, a copy of its background check requirements for Clients review and approval. Nothing in this document shall compel Company to disclose the results of such background information of its employees.

# INFORMATION SECURITY STATEMENT
## Confidential

12)  Company conducts a monthly third-party credentialed vulnerability assessment with Trustwave. Vulnerabilities rated as high are patched/resolved within 48 hours, medium within 1 week, and low within 2 weeks. If a vulnerability cannot be resolved within our standard timeframe, a compensating control will be introduced to protect the vulnerable systems. To ensure Company receives timely information regarding new threats and vulnerabilities, Company subscribes to US-CERT notices as well as notices are received from Sonicwall and Crowdstrike. New threats are communicated to our executive and leadership team to disseminate to all employees within the company.

13)  Company has implemented the following safeguards for systems that process, store or transmit Class Member Information:

- Identify and Access Management.
- Windows password complexity with a specific length, history, upper and lower characters, numbers, expiration every 45 days.
- Two-Factor authentication for remote access.
- Removable media devices, personal web-based email, instant message, or online storage (i.e. Dropbox, Google Drive, iCloud, etc.) are blocked and restricted.
- Company uses the Microsoft Office 365 to host corporate email.
- Company uses the HTTPS or SFTP standard for all data transmissions and ensures that all Client Data is encrypted while in transmission between Company's data center and the Company's computer system or other devices (as applicable) and at rest, consistent with SOC 2 Type II standard, but no less than a 128-bit key for symmetric encryption and a 1024-bit key for asymmetric encryption.
- Company requires its clients and self to transfer files with sensitive Class Member Information via a secure transmission protocol through Citrix Sharefile FTP which secures file during transfer with SSL/TFL encryption protocols and in storage using AES 256-bit encryption. Links to files expire after 7 days. Company requires all files transferred in this method to be password protected during transmission and password to be provided telephonically. Files are retrieved by Company, and then deleted manually upon successful download (or auto deleted after 7 days from upload by system).
- Upon hire and annually thereafter, security training of all employees using the online security training platform Knowbe4. Users are required to complete one hour of security training per year. Users are required to take tests online to ensure they've retained the knowledge. Topics covered are spear phishing emails, compromised website, social engineering, strong passwords, ransomware, handling sensitive information, mobile device security.
- Company actively tests security defenses. Staff participate in simulated phishing exercises to reinforce previous training. Company also conducts monthly external penetration tests and daily internal vulnerability scans to ensure the integrity of our security measures.
- Terminated employees are immediately prevented from accessing Class Member Information.
- Appropriately configured and updated firewall, antivirus, and spyware software;
- Separation of Duties.
- Business Continuity Planning.
- Disaster Recovery Planning.
- Pandemic Recovery Planning

14)  Company's physical security requires that employees use an encoded card-key to gain access to the facility as all doors are mechanically locked at all times. Employees can only enter or exit through a front door or back door, both of which are protected by security cameras. Inside the facility, secure areas in the office that contain checks or sensitive material are also protected by electronic card-key badge access and limited to select employees. Security cameras monitor the areas that contain the sensitive material and audits are conducted periodically on the area. Access to the server room is strictly limited to only five individuals and protected by the encoded card-key badge access. Security cameras monitor the inside and outside of the secured area with audits being conducted periodically.

## INFORMATION SECURITY STATEMENT
**Confidential**

15)  Company staff are required to maintain in compliance with the Information Security Policies, Compliance Manual, and Non-Disclosure Agreement. The matters covered in the Code of Business Conduct and Ethics are of the utmost importance to the Company and are essential to the Company's ability to conduct its business in accordance with its stated values. We expect all officers, directors, employees, agents, contractors and consultants to adhere to these rules in carrying out their duties for the Company. The Company will take appropriate action against any officer, director, employee, agents, contractor or consultant whose actions are found to violate these policies or any other policies of the Company. Disciplinary actions may include immediate termination of employment or business relationship at the Company's sole discretion.If the Company has suffered a loss, then it may pursue its remedies against the individuals or entities responsible. If laws have been violated, then the Company will fully cooperate with the appropriate authorities.

**Definitions**

1)  **"Class Member Information"** means Class Member name, address, or other contact information and class member claim filing information necessary for Company to perform services required by applicable Agreements or Court Orders in context to the Administration of a Settlement or other Class Action litigation.

2)  **"Client"** means collectively Plaintiff Counsel and Defense Counsel, Plaintiff and Defendant.

3)  **"Client Data"** means proprietary or personal data regarding Client or any of its Class Members under the Settlement Agreement, as provided by Client.

4)  **"Company"** means CPT Group, Inc. a reputable third-party Claims Administrator selected by all the Parties (Plaintiff and Defense Counsel) to administer the Settlement or Notification Mailing.

5)  **"Sensitive Personal Information"** means any non-public information of CPT or Client disclosed by either party to the other party, either directly or indirectly, in writing, orally or by inspection of tangible objects, or to which the other party may have access, which a reasonable person would consider confidential and/or which is marked "confidential" or "proprietary" or some similar designation by the disclosing party. Confidential Information shall not include any information which the recipient can establish: (i) was or has become generally known or available or is part of the public domain without direct or indirect fault, action, or omission of the recipient; (ii) was known by the recipient prior to the time of disclosure, according to the recipient's prior written documentation; (iii) was received by the recipient from a source other than the discloser, rightfully having possession of and the right to disclose such information; or (iv) was independently developed by the recipient, where such independent development has been documented by the recipient.



# EXHIBIT 2

## TRANSMISSION METHODS FOR SENSITIVE INFORMATION

CPT Group, Inc. ("CPT") maintains strict guidelines for the submission, transfer, and protection of Client Data and Wire Information.

**A.      CLIENT DATA TRANSMISSION METHODS**

Counsel shall submit all Client Data to CPT as follows:

1. Link provided by CPT to secure FTP (sharefile) for transfer of data files.
2. All files uploaded should be password protected.
3. Password provided to CPT personnel telephonically.
4. Once files are uploaded to and retrieved, files are deleted (files set on autodelete after 7 days of upload).

Counsel agrees and acknowledges that the above method is the only method authorized by CPT to receive Client Data. Attempts to transmit Client Data by other means are customarily not accepted. In the event Counsel utilizes other means to transmit or attempt to transmit Client Data, CPT disclaims all responsibility for such transmissions or attempted transmissions.

**B.      BANK WIRE INFORMATION**

*Incoming from Defense Counsel to QSF.*

CPT provides Qualified Settlement Fund bank account wire instructions to Defense Counsel as follows:

1. Wire instructions are printed in PDF format, are uploaded with password protection, and are made available to Defense Counsel via secure Sharefile.
2. CPT will call Defense Counsel directly and provide the password telephonically.
3. Defense Counsel is requested to then call CPT prior to wiring funds to confirm receipt of all applicable information.

Defense Counsel agrees and acknowledges that the above method is the only method authorized by CPT to communicate QSF wire instructions. CPT will decline attempts by Defense Counsel to receive such instructions by other means. In the event Defense Counsel utilizes other means to transmit or attempt to transmit wire instructions, CPT disclaims all responsibility and liability for such transmissions or attempted transmissions including without limitation for any unauthorized access, acquisition, destruction, or loss of such wire instructions.

***Outgoing from QSF to Plaintiff Counsel.***

1. CPT does not send passwords via email either internally or externally.
2. For wire instructions for Plaintiff Counsel, such instructions should be communicated to CPT either by phone or by secure Sharefile.
3. CPT will confirm wire information on file with the bank name and last four digits of the account number only.

Plaintiff Counsel agrees and acknowledges that the above method is the only method authorized by CPT to communicate wire instructions. CPT will decline attempts by Plaintiff Counsel to receive such instructions by other means. In the event Plaintiff Counsel utilizes other means to transmit or attempt to transmit wire instructions, CPT disclaims all responsibility and liability for such transmissions or attempted transmissions including without limitation for any unauthorized access, acquisition, destruction, or loss of such wire instructions.

# EXHIBIT 3



The Industry's Premier
Class Action Administrator



**CPT Group is the Nation's premier Class Action Claims Administrator handling a broad spectrum of cases with value-added, single-source expertise, and premier service.**

Putting CPT Group in place as your Administrator influences every element of the process thereafter. Rely on us to analyze, plan, and administrate with integrity, drawing from a broad base of administration experience with class action settlement and beyond.

**Value Added Philosophy**

CPT Group's cadre of experts understands how each piece of the administrative puzzle fits seamlessly into the big picture. Dynamic, capable, and service-centric our elite staff delivers peak productivity and value. The longevity of our Administrators, stringently tested Case Managers, and trusted Consultants merge to assure neutrality, attention to detail and quality for "true-number" proposals and no costly surprises.

**Best In Class Service**

From informed Case Managers who are your single point of contact, to secure in-house resources, we work as one to bring you superior service you can rely on. Count on us to be fully up to date, aware of all contingencies, and espond with speed and accuracy.

## Capabilities

Selecting CPT Group is the first step in determining the outcome of your settlement. Multifaceted capabilities, the distinct advantage of experience, particularly in cross category settlements, require that all pieces are organized, positioned correctly and put into place.

### One team. One purpose. We put you first.

**Proprietary Technology and Superior Workflow**
Without doubt, the security of settlement information is of the utmost importance.

## AdminLink: Internal Case Information Access Management

Exclusive proprietary technology offers access to real time reports, response rates and more, 24/7. With AdminLink, our operations staff can access current case information in one single location, ensuring every CPT staff member involved in your case is up to date and has all the information they need at their fingertips.

## Comprehensive Marketing

Our onsite print/mail house and web development team not only affords you greater value and tighter security, we assure full legal compliance in all materials and up to date information for all class members, thereby reducing demands on client time and resources.

# Comprehensive Service

## Pre-Settlement Consulting

Entrusting class action administration to CPT Group is the first step in the confident achievement of the goals of the goals of the lawsuit. Our full spectrum consultation services address every critical area of need, providing clear and actionable planning combined with cost-effective administration.

• Preliminary Approval Declarations
• Settlement Agreement Consultation
• Timelines
• Scheduling
• Statistical Reporting
• Notice Campaign Planning
• Neutral Third Party Administrator

## Legal Notification

CPT Group is adept at third-party data hosting and communication services using proprietary technology across multiple platforms, including print, media and online. Clear-language

documents, translated according to class member needs, support and guide members through a seamless case rollout, regardless of scope or complexity.

• Pre-Certification/Belaire West/Privacy Mailing
• Class Certification Noticing
• Settlement Notification
• Formatting Legal Notices
• Electronic Notification email/website
• Translation Services
• In-House Production
• Expert Legal Noticing Campaigns
• In-House Translation Services

## Data Management

Quality, accuracy, speed and security are the cornerstones of CPT's proprietary technology and data management systems. We developed our specialized data management, analysis and reporting tools to move the skillset up, innovate new and better solutions and create a superior workflow with complete and timely accountability and efficiency.

• Data Analysis
• Data Entry
• Data Management
• Secure Data Transfer
• Data Reporting

## Class Member Assistance

Customer response and targeted outreach receive multilevel attention. We have a massive capacity to handle this all-important aspect of settlement administration. Our multilingual call center offers class members 1:1 responsiveness. Interactive Voice Response assures that class members receive the assistance and support they require. Our proprietary, case-specific call tracking system uses dedicated toll-free numbers, and highly trained



representatives to document and maintain an accurate class member history of interaction.

• Live Call Center Support (multilingual)
• Interactive Voice Response (IVR) capabilities
• Proprietary Call Tracking System

## Claims Administration

At the heart of CPT's administrative capabilities is our ability to process claims accurately, efficiently and in full compliance. Our skilled approach to using technology and controlling management costs is the bedrock of our effectiveness. Regardless of class size or case intricacy, we address all aspects of administration to provide comprehensive and complete solutions.

• In-House Secure Data Processing
• Track & Process Undeliverable Mail
• Claims Processing (mail/online)
• Host & Maintain Case Websites
• Secure Claims Validation

## Settlement Fund Administration

CPT's centralized fund distribution process manages fully audited and securely supervised accounts, handling all aspects of Federal and State tax filings and forms printing and distribution to all recipients.

• Secure Disbursement Processing

• Qualified Settlement Fund (QSF) Management (establish/maintain)
• Federal and Multi-State Tax Reporting (W2/1099)
• Physical Checks, ACH, eCheck, Merchant eGift Cards, Merchant Physical Gift Cards, and Prepaid Debit Cards Options
• Escheatment of Unclaimed Settlement Funds Cy Pres Distribution

## Widespread Experience

• FLSA
• Wage & Hour
• Labor & Employment
• PAGA
• Consumer
• Product Liability
• Data Breach Notification

• Government Services
• Insurance
• Securities
• Finance
• Antitrust
• ERISA

## Contact Us 800.542.0900

CPT Group, Inc. is not just part of the solution. It is the solution. Please allow us to answer your questions and discuss your immediate and future needs.

# EXHIBIT C



# COLE & VAN NOTE

## ATTORNEYS AT LAW

*"A single voice has the power to push Big Business toward big change."*

# FIRM RESUME

## OVERVIEW OF OUR PRACTICE

Cole & Van Note ("CVN") is a boutique class action firm known for aggressive representation and impressive results in the areas of consumer fraud, data breach, environmental and employment litigation. Founded in 1992, CVN has been devoted primarily to such matters, having litigated hundreds of class actions against businesses of all types and in nearly every industry imaginable. The members of CVN have vast experience prosecuting class/complex actions, both in a sole counsel capacity and in leadership positions, oftentimes among many firms, in California and nationwide litigation. They have published numerous scholarly articles dealing with various substantive issues as well as class action



litigation/procedure, speak regularly to legal audiences, and have served as consulting experts in class action litigation. CVN's team of skilled advocates has recovered billions of dollars for tens of millions of workers and consumers, been involved in record-setting settlements and judgments and compelled the correction of innumerable unlawful practices.

## SHAREHOLDERS & ASSOCIATE ATTORNEYS



**Scott Edward Cole**, founder and shareholder of Cole & Van Note, has extensive leadership experience prosecuting class action cases in federal and state courts nationwide. Mr. Cole has authored numerous scholarly publications and serves as highly regarded guest lecturer on issues surrounding class action procedures and negotiation theory. Mr. Cole has been responsible for shaping the law in trial and appellate courts for decades, authored the book "Fallout" and is available to serve as a mediator of class action disputes.

Credentials: Admitted, State Bar of California, 1992; University of San Francisco School of Law, J.D., 1992; President, University of San Francisco Labor & Employment Law Society; San Francisco State University, B.A., Speech Communications (Individual Major in Rhetoric), 1989, Minor Study in Business Administration, 1989; Admitted, United States District Court for all California Districts, the District of Colorado and the Western District of Michigan; Admitted, United States Court of Appeals (6th, 9th and 10th Circuits). Additionally, Mr. Cole is a former National Association of Securities Dealers Registered Representative (Series 7) and is/has been a

member of the Association of Trial Lawyers of America, California Employment Lawyers Association, American Bar Association, Alameda County Bar Association (e.g., Vice Chair of ACBA's Labor & Employment Law Section Executive Committee), National Employment Lawyers Association and a U.S. Delegate to the InterAmerican Meeting of Labor and Trade Union Lawyers, Havana, Cuba (March 2012). Mr. Cole is also the author of "Fallout," a story based upon his experiences litigating after the 1994 airborne release of toxic chemicals by the Unocal Corporation (also used by various law schools in the curriculum for first year law students).



**Laura Van Note**, shareholder, is an aggressive and skilled advocate and leads the firm's hiring and career outreach efforts. A 2013 graduate of the University of Missouri, Kansas City School of Law, her practice has focused primarily on class action representation of data breach victims and underpaid workers in employment/civil rights litigation. With a near-perfect track record for results, Ms. Van Note appears in courts across the nation, is licensed in Kansas and Missouri and in numerous federal districts.

Credentials: Admitted, State Bar of California, 2016; Admitted, State Bar of Missouri, 2013; Admitted, State Bar of Kansas, 2015; Admitted, United States District Court for all California Districts, the Eastern District of Wisconsin, District of Kansas, Eastern and Western Districts of Missouri, District of New Mexico, District of Nebraska, District of Colorado and the Northern District of Illinois; University of Missouri, Kansas City School of Law, J.D., 2013 (Order of the Barrister, Dean's List, Captain of the National Trial Advocacy Team, President of the American Constitutional Society for Law and Policy, Teaching Assistant to the Directory of Advocacy); University of Missouri, Kansas City, B.A., History, Minor in French, 2010.



**Alicyn Whitley**, associate attorney, graduated from Golden Gate University's School of Law near the top of her of her class in 2018, receiving the Dean's Award for Scholarship and Leadership. While in school, Ms. Whitley worked at numerous Bay Area law firms as well as the U.S. Department of Labor on various civil litigation matters and contract disputes. With her substantial background as an insurance defense attorney handling numerous personal injury, construction defect and employment disputes, Ms. Whitley brings a unique perspective and set of skills to the firm's high profile consumer and employment class action practice.

Credentials: Admitted, State Bar of California, 2019; Admitted, United States District Courts for Northern and Central California; Golden Gate University School of Law, J.D., 2018; University of Nevada, Las Vegas, B.A., Broadcast Journalism, 2013.

 **Mark T. Freeman**, associate attorney, graduated from Pacific McGeorge School of Law in 2013 near the top of his class. During law school, Mr. Freeman engaged in the McGeorge Trial Advocacy Program (which he completed with Honors) and served as Chief Comment Editor for the McGeorge Law Review. A published author ("BarCram: How To Survive the Last Two Weeks Before You Take (And Pass) the California Bar"), Martindale-Hubbell "AV Preeminent" rated attorney and Certified Mediator, Mr. Freeman is also member of the Consumer Attorneys of California, the Congress of Neutrals and the Contra Costa County Bar Association. At CVN, Mr. Freeman utilizes his vast litigation experience in the areas of class action consumer, employment and data breach law.

Credentials: Admitted, State Bar of California, 2013; Admitted, United States District Courts for the Northern, Central and Eastern Districts of California; Admitted, 9th Circuit Court of Appeals; Pacific McGeorge School of Law, J.D., 2013 (Order of the Coif; McGeorge Law Review); Saint Mary's College of California, B.A. in Economics; Minor in English & Creative Writing (Honors: Br. U. Jerome Griffin Award at Graduation (highest award in School of Econ. and Business)), 2010.

## SCHOLARLY PUBLICATIONS

The following represent examples of how CVN has elected to give back and help shape the law though our own articles, opinion pieces and the like – some examples of this including:

*The Quest for Class Certification*, Employment Law Strategist (Sept. & Oct. 2003).

*To Be or Not to Be a Penalty: Defining the Recovery Under California's Meal and Rest Period Provisions*, Golden Gate U. L. Rev. (Spring 2005).

*To Certify or Not to Certify: A Circuit-By-Circuit Primer of the Varying Standards for Class Certification in Actions under the Federal Labors Standards Act*, B.U. Pub. Int. L.J. (Spring 2004).

*Kullar v. Footlocker Retail, Inc.: A New Standard for Class Action Settlement Approval*, CELA Bulletin (April 2009).

*Ninth Circuit Provides Much Needed Guidance on Evidentiary Burdens in Overtime Misclassification Litigation,* CELA Bulletin (May 2009).

*Putting the "Rest" Back in Rest Break,* Alameda County Bar Association - Labor & Employment Section News (Autumn 2009).

*Barristers to Blogs: Softening Ethical Restrictions in the Digital Age,* Los Angeles Daily Journal (June 14, 2010).

## LEADERSHIP ROLES

CVN has held numerous court-appointed sole- and co-leadership positions in state and federal courts across the country. Recent lead counsel appointments include:

- <u>In Re: Rackspace Data Security Litigation</u>, No. SA-22-cv-01296-XR (W.D. Tex.) (court appointed lead counsel)

- <u>Henderson v. Reventics, LLC</u>, Case No. 1:23-cv-00586-MEH (D. Colo.) (court appointed co-lead counsel)

- <u>Hinds v. Community Medical Centers, Inc.</u>, Case No. STK-CV-UNPI-2021-10404 (Super. Ct. Cal. San Joaquin Cnty.) (court appointed co-lead counsel)

- <u>Tsvetanova v. UCSD Health</u>, Case No. 37-2021-00039888-CU-PO-CTL (Super. Ct. Cal. San Diego Cnty.) (court appointed co-lead counsel)

- <u>Fedorys v. Ethos Group Inc.</u>, Case No. 3:22-cv-2573-M (N.D. Tex.) (court appointed co-lead counsel)

- <u>Moreland v. 1st Franklin Financial Corporation</u>, Case No. 2:23-cv-00038-SCJ (N.D. Ga.) (court appointed co-lead counsel)

- <u>Domitrovich v. MC Dean, Inc.</u>, Case No. 1:23-cv-00210-CMH-JFA (E.D. Va.) (court appointed co-lead counsel)

- <u>Deevers v. Wing Financial Services, LLC</u>, Case No. 4:22-cv-00550-CVE-MTS (N.D. Okla.) (court appointed co-lead counsel)

- <u>Darrin v. Huntington Ingalls Industries, Inc.</u>, Case No. 4:23-cv-00053-JKW-DEM (E.D. Va.) (court appointed co-lead counsel)

- <u>Guerrero v. Merritt Healthcare Holdings, LLC</u>, Case No. 3:23-cv-00389-MPS (D. Conn.) (court appointed co-lead counsel)

- <u>Prutsman v. Nonstop Administration and Insurance Services, Inc.</u>, Case No. 3:23-Cv-01131-VC (N.D. Cal.) (court appointed co-lead counsel)

- <u>In re DISH Network Data Security Incident Litigation</u>, Case No. 1:23-cv-01168-RMR-SBP (D. Colo.) (court appointed co-lead counsel)

- <u>Byers v. OrthoAlaska, LLC</u>, Case No. 3:23-cv-00243-SLG (D. Alaska) (court appointed co-lead counsel)

- <u>Tambroni v. WellNow Urgent Care, P.C.</u>, Case No. 1:24-cv-01595 (N.D. Ill.) (court appointed co-lead counsel)

- <u>Dryden v. Tri Counties Bank</u>, Case No. 23CV03115 (Super. Ct. Cal. Butte Cnty.) (court appointed co-lead counsel)

- <u>Brett v. Valley Mountain Regional Center</u>, Case No. STK-CV-UPl-2024-0005025 (Super. Ct. Cal. San Joaquin Cnty.) (court appointed co-lead counsel)

- <u>Cordell v. Patelco Credit Union</u>, Case No. 24CV082095 (Super. Ct. Cal. Alameda Cnty.) (court appointed co-lead counsel)

- <u>Skillings v. Access Sports Medicine and Orthopedics</u>, Case No. 218-2024-CV-01086 (Super. Ct. New Hampshire Rockingham Cnty.) (court appointed co-lead counsel)

- <u>Woodard v. Atlanta Women's Health Group, P.C.</u>, Case No 24EV001838H (State Ct. Georgia Fulton Cnty.) (court appointed co-lead counsel)

- <u>In Re: Cleveland Brothers Data Incident Litigation</u>, Case No. 1:23-cv-00501-JPW (M.D. Penn.) (court appointed co-lead counsel)

- <u>Hahn v. Phoenician Medical Center, Inc.</u>, Case No. CV2023-010982 (Super. Ct. Az. Maricopa Cnty.) (court appointed executive committee chair)

- <u>Daley v. Risas Holdings LLC</u>, Case No. CV-24-00789-PHX-SMM (D. Az.) (court appointed lead counsel)

- <u>Shweiki v. Donor Network West</u>, Case No. C20-00073, (Super. Ct. Cal. Contra Costa Cnty.) (court appointed lead counsel)

- <u>Lowrey v. Community Psychiatry Mgt., LLC</u>, Case No. 2:23-cv-00185-TLN-DB, (E.D. Cal.) (court appointed co-lead counsel)

- <u>In Re: Blackhawk Network Data Breach Litig.</u>, Case No. 3:22-cv-07084-CRB, (N.D. Cal.) (court appointed co-lead counsel)

- <u>In re Dropbox Sign Data Breach Litigation</u>, Case No. 4:24-cv-02637-JSW (N.D. Cal.) (court appointed co-lead counsel)

- <u>Bujok v. MC2 Data, LLC</u>, Case No. 0:24-cv-61864-LEIBOWITZ (S.D. Fla.) (court appointed co-lead counsel)

- <u>Francisco v. Diligent Acquisitions LLC</u>, Case No. 4:24-cv-04468 (S.D. Tex.) (court appointed co-lead counsel)

- <u>Oliver v. Jewish Home Lifecare</u>, Index No. 157811/2024 (N.Y. Sup. Ct., N.Y. County, Index No. 157811/2024) (court appointed co-lead counsel)

⬡ **EXEMPLAR COMPLEX & CLASS ACTION CASES** ⬡

CVN's attorneys have represented tens of millions of individuals in legal disputes across hundreds of class action/complex litigation cases around the nation. For well over three decades, CVN's legal team has amassed extensive experience litigating data breach, wage and hour, environmental, and other personal injury and commercial cases. Today, the firm almost exclusively prosecutes multi-state data breach and other consumer-oriented class actions. Drawing from various areas of law, and by nowhere close to an exhaustive list, examples of the range of CVN's practice include matters such as:

Augustus/Davis v. ABM Security Services, Inc. (American Commercial Security Service, Inc.)
Superior Court of California, County of Los Angeles, Case No. BC336416; 2 Cal.5th 257 (2016)
Our firm filed this action for violations of California law for denial of meal and rest periods toward security guards. The action achieved class certification status in 2009. Following summary judgment proceedings, a judgment of over $89 million was entered against the defendant(s). The judgment hinged on the issue of whether "on-duty" rest breaks were legally sufficient. After the Court of Appeal ruled against Plaintiffs on the issue, the case went to the California Supreme Court where Plaintiffs prevailed and, in so doing, created a new legal standard clarifying that "on-duty" rest breaks are invalid. After 12 years of litigation, successful summary judgment and substantial appellate work, this matter resolved for $110 million.

Bower v. Steel River Systems LLC
Illinois Fourteenth Judicial Circuit Court (Whiteside County), Case No. 2023-LA-000006
This action arose out of Steel River Systems' 2022 data breach which affected numerous consumers and/or employees. This action settled for an undisclosed amount.

Brett v. Valley Mountain Regional Center
Superior Court of California, County of San Joaquin, Case No. STK-CV-UPl-2024-0005025
This action arose out of Valley Mountain's 2023 data breach which affected 17,000 patients of Defendant's facilities. Cole & Van Note was appointed co-lead class counsel.

Bulow v. Wells Fargo Investments, LLC
United States District Court (N.D. Cal.), Case No. 3:06-CV-7924
This matter was filed as a nation-wide class action against Wells Fargo Investments, on behalf of its Financial Consultants to recover overtime pay, compensation for denied meal and rest periods (California only) and reimbursement for business related service and supply expenses (California only). This matter settled for $6.9 million.

Byers v. OrthoAlaska, LLC
United States District Court (D. Alaska), Case No. 3:23-cv-00243-SLG
This action arose out of OrthoAlaska's massive data breach which affected countless patients, consumers and/or employees. Cole & Van Note was court-appointed as co-lead class counsel.

Cano v. United Parcel Service, Inc.
Superior Court of California, County of Alameda, Case No. RG03089266
This wage and hour complex litigation matter involved the alleged misclassification of overtime non-exempt Operations Management Specialists, Operational Excellence Specialists and Industrial Engineering Specialist at this company's California facilities. This action settled for $4.5 million.

Chaidez v. Odwalla, Inc.
Superior Court of California, County of San Mateo, Case No. CIV430598
This wage and hour complex litigation matter involved the alleged misclassification of overtime non-exempt California Route Sales Representatives. CVN served as primary counsel for this proposed class of employees. This action settled for $2.2 million.

CKE Overtime Cases
Superior Court of California, County of Los Angeles, Case No. BC283274 (JCCP No. 4274)
This class action was brought against fast food chain Carl's Jr. for violations of California's overtime laws on behalf of the company's California restaurant chain Managers. The coordinated litigation provided a settlement fund of $9.0 million.

Cordell v. Patelco Credit Union
Superior Court of California, County of Alameda, Case No. 24CV082095
This action arose out of the well-publicized 2024 data breach and denial of service impacting well over 1,000,000 Patelco customers. As a result of the event, Patelco customers were blocked access to their funds and other services for weeks, resulting in myriad damages including rejection of loan applications, damage to their credit and the inability to pay everyday life expenses. Cole & Van Note was appointed co-lead class counsel.

Darrin v. Huntington Ingalls Industries, Inc.
United States District Court (E.D. Va.), Case No. 4:23-cv-00053-JKW-DEM
This action arose out of Huntington Ingalls' massive data breach. Cole & Van Note was appointed by the court to a co-lead counsel position.

Davis v. Universal Protection Security Systems, Inc.
Superior Court of California, County of San Francisco, Case No. CGC-09-495528
Our firm filed a claim in 2009 against Universal Protection Security Systems, Inc. for violations of California law for denial of meal and rest periods toward security guards. This case settled under Cole & Van Note's sole leadership for $4 million.

Deevers v. Wing Financial Services, LLC
United States District Court (N.D. Okla.), Case No. 4:22-cv-00550-CVE-MTS
This action arose out of Wing Financial's 2022 data breach which affected numerous loan consumers. Cole & Van Note was appointed co-lead class counsel.

Despres (Cornn) v. United Parcel Service, Inc.
United States District Court (N.D. Cal.), Case No. 3:03-CV-02001
This wage and hour class action litigation was brought to remedy violations of meal and rest period regulations on behalf of the company's California ground delivery drivers. CVN served as co-counsel for the certified class of drivers. This action settled for $87 million, an unprecedented settlement amount at the time for such claims.

Domitrovich v. MC Dean, Inc.
United States District Court (E.D. Va.), Case No. 1:23-cv-00210-CMH-JFA
This action arose out of MC Dean's 2021 data breach which affected 45,000 employees. Cole & Van Note was appointed co-lead class counsel.

Dryden v. Tri Counties Bank
Superior Court of California, County of Butte, Case No. 23CV03115
This action arose out of Tri Counties' 2023 data breach which affected nearly 75,000 consumers. Cole & Van Note was appointed co-lead class counsel.

Escow-Fulton v. Sports and Fitness Clubs of America dba 24 Hour Fitness USA, Inc.
Superior Court of California, County of San Diego County, Case Nos. GIC881669/GIC873193)
Our firm filed this class action on behalf of the company's California "Group X" Instructors to recover regular and overtime pay, related penalties and un-reimbursed expenses. The action achieved class certification status in 2009. In 2011, the parties agreed to a partial settlement (of the expense reimbursement claims) for $10 million. The parties then filed cross-motions for summary adjudication and, on August 2, 2011, the court issued an Order finding 24 Hour Fitness' session rate compensation scheme to be an invalid piece rate. The parties then agreed to settle the unpaid wage claims for another $9 million, for a total judgment of $19 million. This was an industry changing case that helped define "piece rate" standard under California law.

Fedorys v. Ethos Group, Inc.
United States District Court (N.D. Tex.), Case No. 3:22-cv-02573-M
This action arose out of Ethos Group's 2022 data breach which affected at least 267,000 consumers. Cole & Van Note was appointed co-lead class counsel.

Guerrero v. Merritt Healthcare Holdings, LLC
United States District Court (D. Conn.), Case No. 3:23-cv-00389-MPS
This action arose out of Merritt Healthcare's 2022 data breach which affected over 77,000 patients. Cole & Van Note was appointed co-lead class counsel.

Hakeem v. Universal Protection Service, LP
Superior Court of California, County of Sacramento, Case Nos. 34-2020-00286228-CU-OE-GDS; 34-201900270901-CU-OE-GDS
After an exhaustive multi-year process including venue transfer, consolidation, migration of litigants from one case to the other, multiple appeals and, generally, extremely hard-fought litigation, these two security guard class actions achieved a consolidated judgment under Cole & Van Note's sole leadership for $10 million.

Henderson v. Reventics, LLC
United States District Court (D. Colo.), Case No. 1:23-cv-00586-MEH
This action arose out of Reventics' massive 2022 data breach which affected over four million patients, consumers and employees. Cole & Van Note was appointed co-lead class counsel.

Hinds v. Community Medical Centers
Superior Court of California, County of San Joaquin, Case No. STK-CV-UNPI-2021-0010404
This action arose out of Community Medical Centers' massive 2021 data breach which affected countless patients, consumers and/or employees. After reviewing competing requests for leadership over these consolidated actions, Cole & Van Note was appointed by the court to a co-lead counsel position. This action resulted in a multi-million-dollar judgment.

In re Apple Inc. Device Performance Litigation
United States District Court (N.D. Cal.), Case No. 5:18-md-02827-EJD
Following Apple's December 2017 admission that it throttled back performance of its iPhones (versions 6, 6 Plus, 6s, 6s Plus, SE, 7 and 7 Plus) to mask the problem of defective batteries and unexpected iPhone shut-downs, Cole & Van Note filed a class action to recover damages for consumers nationwide. Cole & Van Note served on the Plaintiffs' Steering Committee. This action settled for $500 million.

In re DISH Network Data Security Incident Litigation
United States District Court (D. Colo.), Case No. 1:23-cv-01168-RMR-SBP
This action arose out of DISH Network's massive data breach which affected over 300,000 workers. Cole & Van Note was appointed by the court to a co-lead counsel position.

In re Dropbox Sign Data Breach Litigation
United States District Court (N.D. Cal.), Case No. 4:24-cv-02637-JSW
This action arose out of Dropbox's massive data breach. Cole & Van Note was appointed by the court to a co-lead counsel position.

In re Rackspace Security Litigation
United States District Court (W.D. Tex.), Case No. SA-22-cv-01296
This action arises out of Rackspace Technology's 2022 massive ransomware event which shut down functionality for tens of thousands of individuals and businesses across the Unites States

and overseas. Cole & Van Note served as court-appointed sole lead counsel for the nationwide class and representative plaintiffs from over 30 states.

In re Tosco SFR Litigation
Superior Court of California, County of Contra Costa, Case No. C97-01637
During incidents in April 1997 and January 1998, the Tosco Refinery in Rodeo, California released tons of airborne toxic chemicals. These harmful substances traveled into neighboring communities, seriously affecting the health of citizens and local workers. CVN served as Lead Counsel in this complex litigation and represented thousands of members of the community in that role. The multi-million-dollar fund created through this litigation under Cole & Van Note's sole leadership was disbursed among thousands of claimants and significantly change practices at this refinery ever since.

In re Unocal Refinery Litigation
Superior Court of California, County of Contra Costa, Case No. C94-04141
In response to Unocal's 16-day airborne release of chemicals over the County of Contra Costa in 1994, CVN filed a class action against the corporation on behalf of thousands of victims and thereafter served as one of a handful of firms (among dozens of law firms of record) on the Plaintiffs' Steering Committee. After hard-fought litigation, the matter eventually settled for $80 million. This litigation, Mr. Cole's efforts to commence it and his grassroots work and exposure of the toxic event to the media provide the backdrop for Mr. Cole's book, "Fallout," published in 2018 (2605 Media LLC). In the end, the impact of this litigation was sweeping, substantially changing practices at this refinery and industry regulations, helping to establish a toxic release community monitoring system that spawned similar systems across the nation, establishing parks, improved roadways and an unprecedented community-industry Good Neighbor agreement.

In re Walgreen Co. Wage and Hour Litigation
United States District Court (C.D. Cal.), Case No. 2:11-CV-07664
Our firm served as court-appointed Lead Counsel after an adversarial hearing process in this consolidated action of nine lawsuits bringing a variety of wage and hour claims on behalf of California workers. The case settled under Cole & Van Note's sole leadership for $23 million.

In re Westley Tire Fire Litigation
Superior Court of California, County of Santa Clara, Case No. CV 801282
On September 22, 1999, lightning struck and ignited a pile of approximately 7 million illegally stored waste tires in Westley, California, a town about 70 miles east of San Francisco. Over the subsequent five weeks, the fire spewed smoke and carcinogens over a large portion of the State of California. CVN served as the (sole) Lead and (shared) Liaison Counsel over a Plaintiffs' Steering/Management Committee in the consolidated actions against the owners and operators of this tire pile and related entities. These cases sought compensation for those individuals and businesses suffering personal and/or property damages as a result of these toxic substances and the fire's fall-out. In 2001, CVN reached a settlement with one defendant (CMS Generation Co.)

for $9 million. In 2003, the Court granted final approval of the settlement. In 2005, two of the remaining defendants settled for roughly $1.4 million (over $10 million aggregate).

Kullar v. Foot Locker, Inc.

Superior Court of California, County of San Francisco, Case No. CGC-05-447044; 168 Cal.App.4th 116 (2008)

This class action was brought on behalf of California employees allegedly forced to purchase shoes of a distinctive color or design as a term and condition of their employment and in violation of state law. After the Court approved a multi-million settlement, two separate appeals challenged the settlement, but the Court of Appeal affirmed the trial court's judgment. This oft-cited case established in California what's now known as the "*Kullar standard*" for court approval of class action settlements.

Kurihara v. Best Buy Co., Inc.

United States District Court (N.D. Cal.), Case No. C 06-01884 MHP (EMC)

This class action was brought on behalf of Best Buy's California employees against this chain retailer for violations of California law (for denial of meal and rest periods). This case was granted class certification and Cole & Van Note then settled it for $5 million following an oft-cited ruling which clarified the distinction between class composition and entitlement to a recovery.

Lett v. TTEC

United States District Court (N.D. Cal.), Case No. 3:22-cv-00018

This action arose out of TTEC Service Corporation's massive data breach in 2021 which affected countless patients, consumers and employees. CVN helped negotiate a $2.5 million settlement for the class of victims.

Mambuki v. Securitas Security Services USA, Inc.

Superior Court of California, County of Santa Clara, Case No. 1-05-CV-047499 (JCCP No. 4460)

Our firm filed a claim against this defendant for violations of California law (for denial of meal and rest periods) on behalf of the company's California-based security guards. This coordinated proceeding settled in 2008 for $15 million.

Mendoza v. CaptureRx

United States District Court (W.D. Texas), Case No. 5:21-CV-00523-OLG

This class action against NEC Networks, LLC, d/b/a CaptureRx ("CaptureRx"), as well as Rite Aid and Community Health Centers of the Central Coast arising out of the massive data breach in 2021 which affected a minimum of 1.6 million people. The hacked information included sensitive personally identifiable information and personal health information. These consolidated cases settled in 2022 for a total value of $4.75 million.

<u>Moreland, et al. v. 1st Franklin Financial Corporation</u>
United States District Court (N.D. Ga.), Case No. 2:23-cv-00038-SCJ
This action arose out of 1st Franklin Financial's 2022 data breach affecting this company's loan consumers. Cole & Van Note was appointed co-lead class counsel.

<u>O'Brien v. Edward D. Jones & Co., LP</u>
United States District Court (N.D. Ohio), Case No. 1:08-CV-00529
We filed a nation-wide (and New York State) class action against this financial securities company on behalf of the company's financial services representatives to recover overtime pay and related penalties. CVN served on a Lead Counsel Committee in this action, which settled in 2007 for $19 million.

<u>Onyeige v. Union Telecard Alliance, LLC</u>
United States District Court (N.D. Cal.), Case No. 3:05-CV-03971; MDL No. 1550
Our firm filed an action against Union Telecard Alliance, LLC alleging negligent misrepresentation and deceptive advertising practices related to its marketing of pre-paid telephone calling cards. This action settled for $22 million.

<u>Prutsman v. Nonstop Administration and Insurance Services, Inc.</u>
United States District Court (N.D. Cal.), Case No. 3:23-cv-01131-VC
This action arose out of Nonstop's massive 2022 data breach which affecting consumers, employees and health care affiliates. Cole & Van Note was appointed co-lead class counsel.

<u>Ramirez v. The Coca Cola Company</u>
Superior Court of California, County of San Bernardino, Case No. RCV 056388 (JCCP No. 4280)
This was one of two companion actions CVN prosecuted against this soft drink giant for violations of California's overtime laws. This action was brought on behalf of over 4,000 hourly workers at the company's bottling, distribution and sales centers who were allegedly forced to work "off-the-clock" for Coca Cola and/or whose time records were ordered modified by the company. This well-publicized action resolved under Cole & Van Note's leadership for $12 million.

<u>Riordan v. Western Digital Corp.</u>
United States District Court (N.D. Cal.), Case No. 5:21-CV-06074
This action arose out of the well-publicized widespread criminal data deletion of consumer hard drives in 2021. According to the lawsuit, the company knew of vulnerabilities in, at least, six of its products for years which, ultimately, led to the erasure of data for countless purchasers of these products. CVN served as sole counsel for the victims.

<u>Roman/Toussaint v. HanesBrands, Inc.</u>
United States District Court (M.D. N.C.), Case No. 1:22-cv-00879-LCB-LPA
This case involved a data breach of HanesBrands' network system in which worker information was accessed and/or reviewed by cybercriminals.

Tambroni v. WellNow Urgent Care, P.C.
United States District Court (N.D. Ill.), Case No. 1:24-cv-01595
This action arose out of WellNow's 2023 data breach affecting over 400,000 patients. Cole & Van Note was appointed co-lead class counsel.

Thomas v. Cal. State Auto. Assoc.
Superior Court of California, County of Alameda, Case No. CH217752
Our firm filed this class action litigation on behalf of all California claims adjusters working for CSAA after mid-January 1997. This lawsuit alleged that, during those years, CSAA mis- classified these workers as exempt "administrators" and refused to pay them for overtime hours worked. This lawsuit settled for $8 million for nearly 1,200 workers.

Tierno v. Rite Aid Corporation
United States District Court (N.D. Cal.), Case No. 3:05-CV-02520
Our firm filed this action against Rite Aid Corporation on behalf of its salaried California Store Managers. It was alleged that defendant, purportedly the nation's third largest drug store chain, failed to pay overtime to those workers and denied them their meal and rest periods. In 2006, the federal court certified the class in this action, and approved a hard-fought settlement, achieved under Cole & Van Note's sole leadership, of $6.9 million.

Tsvetanova v. Regents of the University of California, dba U.C. San Diego Health
Superior Court of California, County of San Diego, Case No. 37-2021-00039888-CU-PO-CTL
This action arose out of U.C. San Diego Health's massive data breach between December 2020 and April 2021 which affected countless patients, consumers and employees. After reviewing numerous requests for leadership over these consolidated actions, Cole & Van Note was appointed by the court to a co-lead class counsel position.

Witriol v. LexisNexis
United States District Court (S.D. Cal.), Case No. 3:06-CV-02360
Our firm filed an action against this company for its unlawful disclosure of private credit, financial and/or other personal information. This litigation, resolved by Cole & Van Note, provided a settlement fund of $2.8 million.

CVN also serves in more informal (e.g., Executive Committee or Plaintiffs' Steering Committee) leadership positions in numerous other data breach cases and in sole counsel roles in many dozens more—actions currently pending across the majority of U.S. states.

**APPELLATE EXPERIENCE**

CVN has substantial appellate experience, merely highlighted by some examples below. For other appellate and/or unreported opinions and/or a list of matters currently on appeal, please contact our firm.

Augustus v. ABM Security Services, Inc. (2016) 2 Cal.5th 257 (Case No. S224853).

Baddie v. Berkeley Farms, Inc. (9th Cir. 1995) 64 F.3d 487 (Case No. 93-17187).

Dunbar v. Albertson's, Inc. (2006) 141 Cal.App.4th 1422 (First Dist., Division 1, Case No. A111153).

In re Certified Tire and Service Centers Wage and Hour Cases (2018) 28 Cal.App.5th 1 (Cal. Ct. of Appeals, Fourth Dist., Division 1, Case No. A086407).

Kullar v. Foot Locker Retail, Inc. (2008) 168 Cal.App.4th 116 (Case No. A119697).

Montano v. The Wet Seal Retail, Inc. (2015) 232 Cal.App.4th 1214 (Cal. Ct. App. 2015)

O'Hara v. Factory 2-U Stores, Inc., 2003 WL 22451991 (Cal. Ct. of Appeals, First District, Division 4, Case No. A101452)

Taylor v. Park Place Asset Management (1999) (Cal. Ct. of Appeals, First Dist., Division 5, Case No. A086407).

Whiteway v. Fedex Kinko's Office and Print Services (9th Cir. 2009) 319 Fed.Appx. 688 (Case No. 07-16696).

*Current appeals not listed.*



555 12th Street, Suite 2100
Oakland, CA 94607
Tel: 510-891-9800

*www.colevannote.com*