# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JEWELL WEEKES, individually, and on behalf of all others similarly situated, | ) | **Case No. 1:23-cv-10817-NMG** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COHEN CLEARY, P.C., | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARD FOR ATTORNEYS FEES, LITIGATION COSTS AND SERVICE AWARD

# TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................................... 1

II.  INCORPORATION BY REFERENCE ................................................................. 2

III.  SUMMARY OF THE SETTLEMENT AND BENEFITS ...................................... 2

   A.  Settlement Consideration ................................................................................... 2

IV.  NOTICE PROGRAM, CLAIMS PROCESS, OPT-OUTS AND OBJECTIONS ......... 3

   A.  Notice Program ................................................................................................... 3

   B.  Claims Process .................................................................................................... 5

   C.  Opt-Outs and Objections ................................................................................... 5

   D.  Attorneys' Fees, Costs, and Service Awards ................................................... 5

V.  THE COURT SHOULD FINALLY APPROVE THE SETTLEMENT ....................... 6

   A.  The Settlement is Fair, Reasonable and Adequate .......................................... 6

      1.  Standard for Final Approval .................................................................... 6

      2.  The Presumption in Favor of Reasonableness Applies Here ............... 7

      3.  The Relief Obtained is More than Fair, Reasonable and Adequate ........ 8

VI.  THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS ......... 11

VII.  NOTICE TO THE CLASS COMPLIED WITH DUE PROCESS AND RULE 23 ...... 12

VIII.  APPLICATION FOR ATTORNEY'S FEES, COSTS AND SERVICE AWARD ..... 12

   A.  The Requested Attorney's Fees Award is Fair and Reasonable ................... 12

   B.  Relevant Factors in this District Support the Requested Fee Award ........... 14

      1.  Size of the Fund and the Number of Class Members Benefited ........... 15

      2.  Class Counsel's Skill, Expertise and Efficiency ................................... 16

      3.  Complexity and Duration of the Litigation ........................................... 16

      4.  Contingency and the Risky Nature of Litigation ................................. 17

      5.  Class Counsel's Time and Lodestar are Reasonable ............................ 18

      6.  Awards in Similar Cases .......................................................................... 19

      7.  Public Policy Consideration .................................................................... 19

   C.  Class Counsel's Costs are Reasonable and Should be Reimbursed .............. 20

   D.  The Requested Service Award Should be Approved ..................................... 20

   E.  The Request for Reimbursement of Administrative Fees Should be Granted ......... 21

IX.  CONCLUSION ..................................................................................................... 22

# TABLE OF AUTHORITIES

## CASES

*Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415- CMA-SKC, 2019 WL 6972701, (D. Colo. Dec. 16, 2019) ................................................................................................. 9

*In re Blackbaud, Inc., Customer Data Breach Litigation*, No. 3:20-mn-02972-JFA, 2024 WL 21555221 (D.S.C. May 14, 2024) ......................................................................................... 9

*Abubaker v. Dominion Dental USA, Inc.*, 2021 U.S. Dist. LEXIS 252202 (E.D. Va.) ............... 11

*Bacchi v. Mass. Mut. Life Ins. Co.*, 2017 U.S. Dist. LEXIS 184926 (D. Mass. Nov. 8, 2017).... 14

*Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324 (D.Mass. 2015).......................................... 13, 16

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980)................... 13

*Brulee v. Dal Global Servs., LLC*, 2018 U.S. Dist. LEXIS 211269 (C.D. Cal. Dec. 13, 2018)... 18

*Bussie v. Allmerica Fin. Corp.*, 1999 U.S. Dist. LEXIS 7793 (D. Mass. May 19, 1999) ........... 21

*Carlson v. Target Enter.*, 447 F. Supp. 3d 1 (D. Mass Mar. 23, 2020) ....................................... 13

*Carter v. Vivendi Ticketing United States LLC*, 2023 U.S. Dist. LEXIS 210744
(C.D. Cal. Oct. 30, 2023) ...................................................................................... 7, 8, 11

*Fiorentino v. Flosports, Inc.*, Case No. 1:22-cv-11502 (D. Mass. Mar. 5, 2024) ...................... 13

*Ford v. Takeda Pharms. U.S.A., Inc.*, 2023 U.S. Dist. LEXIS 93286 (D. Mass. Mar. 31, 2023) 20

*George v. Acad. Mortg. Corp.*, 369 F. Supp. 3d 1356 (N.D. Ga. Mar. 20, 2019 ....................... 18

*Gordan v. Mass. Mut. Life Ins. Co.*, 2016 U.S. Dist. LEXIS 195935 (D. Mass. Nov. 3, 2016)... 18

*Hill v. State St. Corp.*, U.S. Dist. LEXIS 2166 (D. Mass. Jan. 8, 2015)................................... 6, 20

*Huang v. Spector*, 142 S. Ct. 431 (2021) ................................................................................... 11

*Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 2019 U.S. Dist. LEXIS ......................... 11

*In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018); .................................. 11

*In re Asacol Antitrust Litig.*, 2017 U.S. Dist. LEXIS 221904 (D. Mass. Dec. 7, 2017)............... 14

*In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 17-MD-2800, 2020 WL 256132
(N.D. Ga. Mar. 17, 2020)................................................................................................ 9, 11

*In re Lupron Mktg. & Sales Practices Litig.*, 2005 U.S. Dist. LEXIS 17456
(D. Mass. Aug. 17, 2005)................................................................................................ 17, 19

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128 (D. Md. 2022)..... 11

*In re Neurontin Mktg. & Sales Pracs. Litig.*, 58 F. Supp. 3d 167, (D. Mass. 2014)......... 13, 14, 19

*In re Prograf Antitrust Litig.*, 2015 U.S. Dist. LEXIS 199792, 2015 WL 13908415,
(D. Mass. May 20, 2015); ................................................................................................ 14

*In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*, 2014 U.S. Dist. LEXIS 170100
(D. Mass. Dec. 9, 2024) ................................................................................................ 8

*In re Puerto Rico Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448 (D.P.R. 2011)...................... 15

*In re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass 2005) ............................................... 13, 21

*In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72 (D.N.J. Sept. 27, 2001). ............. 20

*In re Solodyn Antitrust Litig.*, 2018 U.S. Dist. LEXIS 244677 (D. Mass. July 18, 2018)........... 14

*In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295
(1st Cir. 1995) ................................................................................................ 13

*In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389 (D. Mass. 2007) ................................. 9

*In re Wawa, Inc. Data Sec. Litig.*, No. 19-6019, 2024 U.S. Dist. LEXIS 65200
(E.D. Pa. Apr. 9, 2024) ................................................................................................ 10

*Jean-Pierre v. J&L Cable TV Services, Inc.,* 538 F. Supp. 3d 208 (D. Mass. 2021) ................ 6, 7

*Klein, et al. v. Bain Capital Partners, LLC, et al.*, No. 07-cv-12388-WGY
(D. Mass. Feb. 2, 2015)............................................................................................................ 13
*Kondo v. Creative Services, Inc.*, No. 1:22-cv-10438-DJC, (D. Mass. Sept. 7, 2023)................ 19
*Koszyk v. Country Fin.*, 2016 U.S. Dist. LEXIS 126893 (N.D. Ill. Sept. 16, 2016)..................... 19
*Lutz v. Electromed Inc.*, No. 0:21-cv-02198-KMM-DTS (D. Minn. filed Oct. 1, 2021) .............. 8
*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................. 15
*Marriott Int'l Inc. Customer Data Sec. Breach Litig.*, 78 F.4th 677 (4th Cir. Aug. 18, 2023) ...... 9
*Marshall v. Lamoille Health Partners, Inc.*, No. 2:22-cv-00166-wks (D. Vt.) .............................. 8
*Meaden et al. v. Harborone Bank*, Case No. 1:23-cv-10467-AK (D. Mass. Nov. 14, 2023)........ 13
*Mongue v. Wheatleigh Corp.*, 2024 U.S. Dist. LEXIS 69928 (D. Mass. Apr. 16, 2024)............. 14
*Mooney v. Domino's Pizza, Inc.*, 2018 U.S. Dist. LEXIS 232959 (D. Mass. Jan. 23, 2018)........ 18
*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008); ................................................... 19
*New England Carpenters Health Ben. Fund v. First Databank, Inc.*, 2009 U.S. Dist. LEXIS
68419 (D. Mass. Aug. 3, 2009)................................................................................................. 18
*Pfeiffer v. Radnet, Inc.*, 2022 U.S. Dist. LEXIS 125933 (C.D. Cal. Feb. 15, 2022) .................... 17
*Robinson v. National Student Clearinghouse*, 14 F.4th 56 (1st Cir. 2021) .................................... 6
*Rodriguez v. County of L.A.*, 96 F. Supp. 3d 1012 (C.D. Cal. 2014)............................................ 19
*Rossi, et al. v. Claire's Stores, Inc., et al.*, No. 1:20-cv-05090 (N.D. Ill.) .................................... 8
*Southern Independent Bank v. Fred's, Inc.*, No. 2:15-CV-799-WKW, 2019 WL 1179396
(M.D. Ala. Mar. 13, 2019)........................................................................................................ 9
*Takeda Pharms. U.S.A., Inc.*, 2023 U.S. Dist. LEXIS 93286 (D. Mass. Mar. 31, 2023) ............ 19
*Watkins v. Spector*, 142 S. Ct. 765 (2022) ................................................................................... 11

**Statutes**

Fed. R. Civ. P. 23 ....................................................................................................................... 6
Fed. R. Civ. P. 23(e)(2)). ............................................................................................................ 7

**Other Authorities**

*Manual for Complex Litigation* (Fourth) § 21.632 (2015). ........................................................... 6

Pursuant to Fed. R. Civ. P. 23, Plaintiff[1] Jewell Weekes ("Plaintiff") respectfully submits this Motion for Final Approval of Class Action Settlement and Application for Attorneys' Fees, Costs and Services Awards, supported by the Declaration of Laura Van Note ("Van Note Decl."), the Declaration of the Claims Administrator ("Admin. Decl.") attached to the Van Note Decl. as **Exhibit B**, and the Declaration of Plaintiff Jewell Weekes ("Plaintiff Decl.") attached to the Van Note Decl. as **Exhibit D**.

## I.    INTRODUCTION

On February 12, 2025, this Court granted Preliminary Approval of the proposed class action Settlement (ECF No. 55), which provides meaningful relief for individuals impacted by the data security incident at Cohen Cleary, P.C. The Settlement establishes a non-reversionary $150,000 Settlement Fund to provide cash payments to the of 9,545 Settlement Class Members who submit valid claims. The Settlement Fund will also be used to pay for notice and administration costs, any Court-approved attorneys' fees and litigation costs, and any Court-approved Service Award to the Class Representative. In addition to monetary relief, Defendant has confirmed that it has implemented or will implement reasonable measures to enhance data security going forward.

Plaintiff now respectfully requests that the Court grant final approval of the Settlement and approve Class Counsel's Motion for Attorneys' Fees, Costs and a Service Award to Representative Plaintiff. To date, there have been no objections to the Settlement and no requests for exclusion. The absence of opposition from the Class further supports the Court's prior determination that the Settlement is fair, reasonable, and adequate. Accordingly, final approval is appropriate and

---

[1] All capitalized terms used herein shall have the same meanings as those defined in the Settlement Agreement ("Agreement"), attached as **Exhibit A** to the Van Note Decl.

1

warranted.

## II.    INCORPORATION BY REFERENCE

In the interest of judicial efficiency, Plaintiff respectfully incorporates by reference the factual background, procedural history, and legal standards set forth in Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 52), including all exhibits submitted therewith. See also the Court's Order Granting Preliminary Approval dated February 12, 2025 (ECF No. 55), which preliminarily approved the Settlement and conditionally certified the Settlement Class under Rule 23.

The Settlement was the product of informed, arm's-length negotiations conducted after a thorough pre-suit investigation and meaningful litigation. As detailed in the preliminary approval filings, the Parties engaged in extensive discussions, which ultimately resulted in a comprehensive Settlement Agreement executed on January 30, 2025. The Agreement provides substantial monetary and non-monetary relief to the Settlement Class and reflects a fair, adequate, and reasonable resolution of this litigation.

## III.    SUMMARY OF THE SETTLEMENT AND BENEFITS

The Settlement Class is defined as:

"All persons in the United States whose Private Information was potentially compromised as a result of the Data Security Incident."

Excluded from the Settlement Class are: (a) all persons who are governing board members of Defendant; (b) governmental entities; (c) the Court, the Court's immediate family, and Court staff; and (d) any individual who timely and validly opts out of the Settlement. See SA § II ¶ 52.

### A.    <u>Settlement Consideration</u>

**Monetary Relief** – The Settlement establishes a non-reversionary $150,000 Settlement Fund, which will be used to cover: (1) Cash Payments to eligible Settlement Class Members who

submit valid claims; (2) Settlement Administration Costs; (3) Court-approved Attorneys' Fees and Costs, and (4) a Service Award to the Class Representative, if approved. See SA §§ III, VIII.

**Cash Payment Options**:

**Documented Losses** – Settlement Class Members may submit a claim for reimbursement of up to $5,000 in documented out-of-pocket expenses that are fairly traceable to the Data Security Incident. Claims must include supporting documentation and a short-written explanation. See SA § V ¶ 63(a). Additionally, Settlement Class Members can make an attested claim for documented loss, including lost time at $25 per hour for up to four hours (maximum of $100). *Id.*

**Non-Documented Pour-Over Fund** – Following the distribution of administrative expenses, service award, documented loss claim, attorney's fees and class counsel's litigation expenses, the Settlement Administrator will make a pro rata cash payment of up to $300 from the remaining Settlement Fund to each Class Member who submits a valid claim. SA § V ¶ 63(b).

**Non-Monetary Relief** – Defendant has confirmed that it has implemented, or will implement, reasonable data security measures intended to prevent a recurrence of similar incidents. These measures will remain in place for at least one year following the Effective Date. See SA § V ¶ 65.

There will be no reversion of any kind to Defendant, and any left-over money in the Settlement Fund, if there is any, will be sent to a *cy pres* beneficiary that will be agreed to by the Parties and approved by the Court. SA § XII, ¶ 106.

## IV.     NOTICE PROGRAM, CLAIMS PROCESS, OPT-OUTS AND OBJECTIONS

### A.     <u>Notice Program</u>

After the Court entered the Preliminary Approval Order, the Settlement Administrator, CPT Group, Inc. ("CPT"), with assistance from the Parties, successfully implemented the Notice

Plan. As of June 27, 2025, CPT mailed Postcard Notice to 8,873 unique, identified Settlement Class Members out of a class of 9,545, achieving a direct notice reach rate of approximately 92.95%. See Admin. Decl., ¶¶ 6-8. Prior to mailing, CPT conducted address scrubbing and performed a National Change of Address (NCOA) search to update mailing addresses. *Id.* ¶ 7. A total of 292 Postcard Notices were returned as undeliverable, of which 9 were forwarded by the U.S. Postal Service, and 144 were remailed following a LexisNexis skip trace. *Id.* ¶ 15. As of the date of the declaration, 148 notices remain undeliverable. *Id.*

In addition to sending Postcard Notice, CPT disseminated a press release on PR Newswire US1 National Newsline on March 14, 2025, reaching an estimated potential audience of 156.2 million through 900 press outlets and influencers. The release resulted in 3,400 views and 88 click-throughs to the Settlement Website. *Id.* ¶ 16. The press release included sufficient information for interested media to write news stories and directed readers to the toll-free number and Settlement Website. CPT posted key settlement documents—including the Settlement Agreement, Preliminary Approval Order, Long Form Notice, and Claim Form—to the Settlement Website at www.CohenSettlement.com, which launched on March 14, 2025. *Id.* ¶ 10. As of the date of the declaration, the website had received approximately 936 unique visitor sessions and 4,205 page views. *Id.* ¶ 12.

CPT also established a 24/7 automated toll-free telephone number on March 14, 2025, offering recorded answers to frequently asked questions and allowing callers to request that Claim Packages be mailed to them. As of the date of the declaration, the case support line had received 47 calls. *Id.* ¶ 9. This robust Notice Program—which included direct mail, a settlement website, a toll-free phone line, media outreach, and address tracing efforts—provided Settlement Class Members with meaningful notice and fully comports with due process.

### B.    <u>Claims Process</u>

The timing of the Claims Process was structured to ensure that all Settlement Class Members had adequate time to review the terms of the Settlement, compile documents supporting their Claim and decide whether to submit a Claim, opt out of, or object to the Settlement. The Claims Process was straightforward, and Settlement Class Members could submit Claims either through the Settlement Website or by hard copy mailed to the Settlement Administrator. *Id.* ¶¶ 11.

As of the claims deadline on June 20, 2025, the Settlement Administrator received a total of 222 Claim Forms. Of those, 152 have been determined to be valid, including 152 for Lost Time (totaling 427 hours) and 1 for Documented Losses. *Id.* ¶¶ 17, 18. An additional 13 claims were found to be deficient and are currently being cured through CPT's deficiency process, and 57 claims were deemed invalid. *Id.* ¶¶ 20–22. This represents a valid claims rate of approximately 2.3%. Class Counsel will update the Court at the Final Approval Hearing once CPT has completed review of the remaining deficient claims and determined whether any may be cured.

### C.    <u>Opt-Outs and Objections</u>

The deadlines to request exclusion from the Settlement Class or to object to the Settlement expired on May 15, 2025. As of that date, the Settlement Administrator had received no Requests for Exclusion and is aware of no Objections to the Settlement. *Id.* ¶ 32.

### D.    <u>Attorneys' Fees, Costs, and Service Awards</u>

Plaintiffs request an attorneys' fee award of $49,500.00 (i.e., 33.33% of the total Settlement Fund) and reimbursement of costs in the amount of $8,740.11. SA § XI ¶¶ 96-99. Plaintiff also requests a Service Award in the amount of $5,000.00 for the Class Representative. *Id.* § XI ¶ 98.

## V.    THE COURT SHOULD FINALLY APPROVE THE SETTLEMENT

### A.    <u>The Settlement is Fair, Reasonable and Adequate</u>

This Court previously determined it was likely to find the Settlement negotiated by the Parties is fair, reasonable, and adequate under Fed. R. Civ. P. 23. ECF No. 52. In making this determination, the Court considered the fact that the Settlement is the product of arm's-length negotiations conducted by experienced and knowledgeable counsel, the current posture of the Action, the benefits of the Settlement to the Settlement Class, and the risk and benefits of continuing litigation to the Settling Parties and the Settlement Class. *Id.* The Court should now finally determine the Settlement is fair, reasonable, and adequate and enter Final Approval.

### 1.    *Standard for Final Approval*

Across many courts, but particularly in the First Circuit, approval of a class action settlement is a staged process. *See Manual for Complex Litigation* (Fourth) § 21.632 (2015). First, the court determines whether the proposed settlement should be preliminarily approved and notice of the settlement distributed to the proposed settlement class, which this Court has already done in this Action. ECF No. 52. Then, after considering any objections received from settlement class members, the court determines whether to grant final approval of the proposed settlement.

The established standard for final approval is whether a proposed settlement is "fair, reasonable, and adequate." *Jean-Pierre v. J&L Cable TV Servs., Inc.*, 538 F. Supp. 3d 208, 212 13 (D. Mass. 2021). The court should conduct such a determination "within the context of the public policy favoring settlement." *Hill v. State St. Corp.*, U.S. Dist. LEXIS 2166 (D. Mass. Jan. 8, 2015). As such, "[w]here the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable." *Robinson v. National Student Clearinghouse*, 14 F.4th 56, 59 (1st Cir. 2021) (internal quotations omitted). Further, "the district

court enjoys considerable range in approving or disapproving a class action settlement, given the generality of the standard and the need to balance [the settlement's] benefits and costs." *Id.* (internal quotations omitted). The factors the court must ultimately consider in determining if the class action settlement is fair, reasonable, and adequate include:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

*See Jean-Pierre*, 538 F. Supp. 3d at 212–13 (citing Fed. R. Civ. P. 23(e)(2)). Considering these factors, the Settlement warrant Final Approval.

### 2. *The Presumption in Favor of Reasonableness Applies Here*

The Settlement was the product of multiple rounds of arm's-length negotiations over several months. *See* Van Note Decl. ¶ 7. The Parties agreed to participate in an Alternative Dispute Resolution session before Magistrate Judge Jennifer C. Boal, which was held on December 6, 2024. Following the session, the Parties reached an agreement in principle, which was finalized in January 2025. See *Id.* ¶ 5. Settlement discussions were informed by Defendant's production of informal discovery, including information regarding the size and scope of the Data Incident and Defendant's response to it. *Id.* ¶ 4. These disclosures enabled Class Counsel to assess the merits of the claims and evaluate potential exposure. As such, the Settlement is the product of serious, informed, non-collusive negotiations between the Parties. See also *Robinson*, 14 F.4th at 59 (affirming settlement approval where parties engaged in pre-mediation discovery and negotiated settlement shortly after filing the action); see also *Carter v. Vivendi Ticketing United States LLC*, 2023 U.S. Dist. LEXIS 210744, at *15 (C.D. Cal. Oct. 30, 2023) (approving early settlement in

data breach case reached after informal discovery and collection of publicly available information).

In reaching this resolution, Class Counsel also relied on their significant experience in class action litigation, having negotiated hundreds of class action settlements, including dozens involving complex data breaches. Van Note Decl. ¶¶ 22-26. Based on their investigation and experience, Class Counsel evaluated the likelihood of dismissal, the risks of trial, the novelty and complexity of the legal issues and the potential for reversal on appeal. These factors guided counsel's informed decision to recommend settlement. See *In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*, 2014 U.S. Dist. LEXIS 170100, at *11 (D. Mass. Dec. 9, 2024); *Carter*, 2023 U.S. Dist. LEXIS 210744 at *15 ("With all that information, the parties were able to realistically value the scope of Defendant's potential liability and assess the costs, risks, and delay of continuing to litigate.").

### 3.    The Relief Obtained is More than Fair, Reasonable and Adequate

Plaintiffs and Class Counsel obtained a strong result for the Settlement Class. Van Note Decl. ¶ 7. In addition to obtaining injunctive relief for Settlement Class Members, the $150,000.00 Settlement for 9,545 Settlement Class members (i.e., approximately $15.72 per person[2]), is in line with or exceeds other settlements in cases involving data breaches. The instant Settlement compares very favorably to other similar common fund data breach settlements from around the country. *See e.g. Rossi, et al. v. Claire's Stores, Inc., et al.,* No. 1:20-cv-05090 (N.D. Ill.) (approving a settlement fund of $5.75 per person); *Marshall v. Lamoille Health Partners, Inc.*, No. 2:22-cv-00166-wks (D. Vt.) (approving a settlement fund of $9.09 per person); *Lutz et al. v. Electromed Inc.*, No. 0:21-cv-02198-KMMDTS (D. Minn.) (approving a settlement fund of $17.39

---

[2] Given the average claims rates in data breach cases (1-3%), the actual amounts claimants receive greatly exceed the per person calculation, providing a useful benchmark when comparing cases.

per person); and *May et al. v. Five Guys Enterprises LLC*, No. 1:23-cv-00029-CMH-JFA (E.D. Va.) (approving a settlement fund of $18.46 per person).

As outlined in the Motion for Preliminary Approval, Plaintiff faced significant risks and costs should she had continued to litigate the Action. First, the Court might not certify a class. "Data breach cases . . . are particularly risky, expensive and complex" due at least in part to the cutting-edge, innovative nature of data breach litigation and the rapidly evolving law. *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415- CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019); *see also In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 17-MD-2800, 2020 WL 256132, *15 (N.D. Ga. Mar. 17, 2020) (in data breach cases"[t]he law . . . remains uncertain and the applicable legal principles have continued to evolve"). Thus, data breach cases generally face substantial class certification hurdles. *See, e.g., In re Blackbaud, Inc., Customer Data Breach Litigation*, No. 3:20-mn-02972-JFA, 2024 WL 21555221 (D.S.C. May 14, 2024) (denying class certification in a data breach action after concluding proposed classes were not ascertainable); *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389 (D. Mass. 2007) (denying class certification in cybersecurity incident class action litigation). Maintaining class certification is often an equally challenging hurdle. *See e.g., Marriott Int'l Inc. Customer Data Sec. Breach Litig.*, 78 F.4th 677 (4th Cir. Aug. 18, 2023) (decertifying classes).

Second, Plaintiff's claims might not have survived, or survived in full, on a class-wide basis after a motion to dismiss, motion for summary judgment, and/or motions on damages methodologies, among other motions. To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unpaved, particularly concerning damages. *See, e.g., Southern Independent Bank v. Fred's, Inc.*, No. 2:15-CV-799-WKW, 2019 WL 1179396, at *8 (M.D. Ala. Mar. 13, 2019) (causation not satisfied for

certification purposes in data breach class action). Indeed, the damages methodologies, while theoretically sound in Plaintiff's view, remain untested in a disputed class certification setting and unproven in front of a jury.

Third, time was not on the Settlement Class Members' side. While the Parties would be litigating complex and unsettled legal issues—such as causation, standing, and damages—for years to come, Settlement Class Members would remain exposed to the ongoing risk of identity theft without the protection offered by the Credit Monitoring Services included in the Settlement. Van Note Decl. ¶ 11. In contrast to the risks, cost, and delay posed by further litigation, the Settlement offers certain, immediate, and meaningful relief. *Id.* ¶ 40. It ensures that Settlement Class Members can access guaranteed compensation now—benefits that may not have been available at trial. The Settlement also requires Defendant to implement enhanced data security measures to better safeguard Settlement Class Members' information. *Id.* ¶ 6. Based on the foregoing, it is Class Counsel's well-informed opinion that, given the uncertainty and further substantial risk and expense of pursuing the Action through contested class certification, summary judgment, trial, and appeal, the proposed Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class. *Id.* Plaintiffs likewise support the Settlement and believe it represents a favorable outcome for the Class. Accordingly, the substantial cost, risk, and delay of continued litigation support a finding that the proposed Settlement is adequate. *Id.*

Finally, the Settlement has been met with a positive reaction from the Class. As of the filing date, 222 Claim Forms were submitted, with 152 already deemed valid. This reflects a claims rate of approximately 2.3%, which is consistent with the average participation rate in similar data breach settlements. See, e.g., *In re Wawa, Inc. Data Sec. Litig.*, No. 19-6019, 2024 U.S. Dist. LEXIS 65200 (E.D. Pa. Apr. 9, 2024) (2.56% claims rate "actually compares favorably to the

claims rates in other data breach class actions"); *Carter*, 2023 U.S. Dist. LEXIS 210744 at \*15 (1.6% claims rate "is in line with claims rates in other data breach class action settlements" and collecting cases with claims rates between 0.83% and "about two percent"). As such, the claims rate should be seen as a favorable sign that the Settlement Class supports this Settlement. Moreover, out of 9,545 Settlement Class Members, not a single Class Member has opted out or filed an objection. Admin. Decl. ¶ 32. This unanimous response demonstrates that the Settlement has been very positively received by the Class. The absence of objections or exclusions reaffirms the Court's preliminary conclusion that the Settlement is fair, reasonable, and adequate.

## VI.     THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS

Settlement classes are routinely certified in data breach cases.[3] There is nothing unique about this Action that would counsel otherwise. This Court has already conditionally certified the Settlement Class. Nothing has changed relative to the Rule 23 factors since Preliminary Approval. For purposes of Settlement, the Settlement Class still satisfies numerosity and commonality, and Plaintiff meets the requirements for typicality and adequacy. *See* ECF No. 52 (providing a detailed analysis of how the Settlement Class satisfies the requirements of Rule 23(a)). In addition, common issues predominate, and a class action settlement remains the superior means to resolve Settlement Class Member claims. *Id.* Moreover, Class Counsel has experience litigating complex class actions—including numerous data breach settlements—and is well suited to advocate on

---

[3] *See, e.g., Abubaker v. Dominion Dental USA, Inc.*, 2021 U.S. Dist. LEXIS 252202 (E.D. Va. Nov. 19, 2021); *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 2019 U.S. Dist. LEXIS 120558 (D. Md. July 15, 2019); *In re Equifax Inc. Customer Data Security Breach Litig.*, l:17-md-2800-TWT, 2020 WL 256132 (N.D. Ga. March 17, 2020), *aff'd in relevant part* 999 F.3d 1247 (11th Cir. 2021), *cert. denied sub nom*. *Huang v. Spector*, 142 S. Ct. 431 (2021), and *cert denied sub nom*. *Watkins v. Spector*, 142 S. Ct. 765 (2022); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 172-74 (D. Md. 2022) (certifying certain statewide classes; Rule 23(f) appeal granted).

behalf of the Settlement Class. As the foregoing sections demonstrate, the Settlement provides substantial, certain relief and represents an excellent result for the Settlement Class. See Van Note Decl., ¶ 28. For these reasons, the Court should finally certify the Settlement Class for settlement purposes, finally appoint Plaintiff as Class Representative, and finally approve Class Counsel's appointment.

## VII.    NOTICE TO THE SETTLEMENT CLASS COMPLIED WITH DUE PROCESS AND RULE 23

The Court previously approved the Notice Program and found that it satisfied all requirements of due process and Rule 23. *See, e.g.*, Federal Judicial Center, "Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide" (2010) (recognizing the effectiveness of notice that reaches between 70 and 95 percent of the class). The Notice Program, which provided the best notice practicable under the circumstances, has now been successfully implemented. CPT mailed Postcard Notice to 8,873 Settlement Class Members out of a total of 9,545, resulting in a direct notice reach rate of approximately 92.95%. Admin. Decl. ¶¶ 15, 25. CPT also re-mailed 144 notices following skip tracing efforts. *Id.* ¶ 25. The Settlement Website allowed visitors to download the Long Form Notice, Claim Form, Complaint, and Settlement Agreement; submit claims and address updates online; view FAQs and important dates; and contact the Settlement Administrator. *Id.* ¶ 30. The submission of 222 Claim Forms—including at least some online—demonstrates the effectiveness of the Notice Program.

## VIII.    APPLICATION FOR ATTORNEY'S FEES, COSTS AND SERVICE AWARD

### A.    <u>The Requested Attorney's Fees Award is Fair and Reasonable</u>

When awarding attorneys' fees, the First Circuit follows the common fund doctrine. Under that doctrine, "attorneys whose efforts lead to the creation of a fund for the benefit of the class are 'entitled to a reasonable attorney's fee from the fund as a whole.'" *In re Neurontin Mktg. & Sales*

*Pracs. Litig.*, 58 F. Supp. 3d 167, 170 (D. Mass. 2014) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980)); *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 349 (D.Mass. 2015) ("Attorneys in a certified class action may be awarded reasonable fees and costs.").

In contingent fee cases such as this, the "percentage of the fund" approach is appropriate because it is easy to administer, reduces the possibilities of collateral disputes, enhances judicial efficiency, is less taxing on judicial resources, and "better approximates the workings of the marketplace." *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995) (approving the percentage of fund approach as an acceptable method and recognizing "that use of the [percentage of fund] method in common fund cases is the prevailing praxis [with] . . . distinct advantages"); *see also Carlson v. Target Enter.*, 447 F. Supp. 3d 1, 3 (D. Mass Mar. 23, 2020) ("In the First Circuit, the percentage of fund methodology, . . . is favored and appropriate in common fund cases.").

Here, Plaintiff seeks Court approval of Class Counsel's attorneys' fees of 33.33% of the $150,000 non-reversionary Settlement Fund, which equals $49,500.00. Plaintiff also seeks reimbursement of litigation costs totaling $8,740.11. SA § XI ¶¶ 96–99; JD ¶ 39. This request is within the range of attorneys' fee awards routinely approved in this District. *See Meaden et al. v. Harborone Bank*, Case No. 1:23-cv-10467-AK (D. Mass. Nov. 14, 2023) ("33.33% of the Settlement Fund is fair and reasonable in light of the nature of this case"); *Fiorentino v. Flosports, Inc.*, Case No. 1:22-cv-11502 (D. Mass. Mar. 5, 2024) (awarding one-third of the settlement fund); *Klein, et al. v. Bain Capital Partners, LLC, et al.*, No. 07-cv-12388-WGY (D. Mass. Feb. 2, 2015) (awarding 33.33% of the settlement fund); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 77–82 (D. Mass. 2005); *In re Solodyn Antitrust Litig.*, 2018 U.S. Dist. LEXIS 244677, at *11 (D. Mass. July

13

18, 2018); *In re Asacol Antitrust Litig.*, 2017 U.S. Dist. LEXIS 221904, at *18 (D. Mass. Dec. 7, 2017); *In re Prograf Antitrust Litig.*, 2015 U.S. Dist. LEXIS 199792, 2015 WL 13908415, at *13–14 (D. Mass. May 20, 2015); see also *Bacchi v. Mass. Mut. Life Ins. Co.*, 2017 U.S. Dist. LEXIS 184926, at *10 (D. Mass. Nov. 8, 2017) ("Although the First Circuit has not set a presumptive benchmark for percentage of fund awards, other courts in the Circuit have noted that such benchmark has been between twenty to thirty-five percent."); *In re Neurontin Mktg. & Sales Practices Litig.*, 58 F. Supp. 3d 167, 172 (D. Mass. Nov. 10, 2014) ("[N]early two-thirds of class action fee awards based on the percentage method were between 25% and 35% of the common fund.").

In the Preliminary Approval Order, the Court already found Plaintiffs' intention to seek no more than 33.33% of the Settlement Fund in attorneys' fees to be reasonable. The Court's determination that "the Settlement is fair, reasonable, and adequate" encompasses Plaintiffs' stated intention to seek attorneys' fees of one-third of the common fund. *Id.* As demonstrated below, Class Counsel's request is reasonable and fully supported by the record.

**B.    Relevant Factors in this District Support the Requested Fee Award**

When determining the reasonableness of attorneys' fees, courts in this District generally consider "the size of the fund and number of persons benefitting from it; the skill, experience, and efficiency of class counsel; the complexity of the litigation and its duration; the risks involved with the litigation; the amount of time spent on the case by class counsel; awards in comparable cases; and public policy considerations." *Mongue v. Wheatleigh Corp.*, 2024 U.S. Dist. LEXIS 69928, at *13 (D. Mass. Apr. 16, 2024). Class Counsel applies those factors here, and as demonstrated below, each supports the requested 33.33% fee as fair and reasonable. The Settlement Fund totals $150,000, is non-reversionary, and has already produced valid claims from 152 Settlement Class

Members, with no objections to the Settlement or to the requested fee. See Admin. Decl. ¶¶ 22, 32. The recovery is meaningful given the size of the class, the legal uncertainty surrounding data breach claims, and the early and efficient resolution obtained through experienced counsel following mediation and substantial investigation. See Van Note Decl. ¶ 11. Accordingly, each relevant factor weighs in favor of granting the requested fee award.

### 1. Size of the Fund and the Number of Class Members Benefited

Class Counsel secured a favorable $150,000.00 non-reversionary, all-cash common Settlement Fund. This amount equates to approximately $15.71 per Settlement Class Member, a result that, as shown above, compares favorably to recoveries in other recent data breach class actions, particularly in light of the risks and early resolution.

In addition to the fund size, courts assessing the quality of Class Counsel's representation often consider the reaction of the Settlement Class to the attorneys' fee request. A lack of objections or opt-outs is routinely cited as supporting the reasonableness of a fee award. See *Bezdek*, 79 F. Supp. 3d at 347 (finding the "overwhelmingly positive" class reaction—only 23 opt-outs and 3 objections—supported approval); *In re Puerto Rico Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 473 (D.P.R. 2011) ("Three objections … out of a potential Class of 61,854, certainly weighs in favor of approval."); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002) ("The reaction by members of the Class is entitled to great weight by the Court.").

Here, no Settlement Class Member has objected to Class Counsel's requested fee or opted out of the Settlement. Admin. Decl. ¶ 32. While the deadlines to object or opt out have now passed, the unanimous support from the Class strongly reinforces the fairness of the Settlement and the reasonableness of Class Counsel's request for 33.33% of the Settlement Fund.

### 2.    *Class Counsel's Skill, Expertise and Efficiency*

In evaluating the skill and efficiency of class counsel, courts assess whether counsel "had a sufficient understanding of the merits of the case in order to engage in informed negotiations, particularly where plaintiffs' counsel are skilled and experienced in consumer class action litigation[.]" *Bezdek*, 79 F. Supp. 3d at 348, *aff'd*, 809 F.3d 78 (1st Cir. 2015). Here, Class Counsel's extensive skill and experience in complex class action litigation—particularly in data breach and privacy cases—strongly supports the reasonableness of the requested attorneys' fee award. The background of Class Counsel, including Laura Van Note of Cole & Van Note, and the supporting attorneys from Srourian Law Firm, P.C. and Joel D. Schwartz, P.C., demonstrates deep familiarity with data breach litigation, consumer privacy rights, and class procedure. See Van Note Decl. ¶ 11.

That experience was leveraged here to engage in meaningful, informed negotiations and reach a favorable early resolution after a full-day mediation with Magistrate Judge Jennifer C. Boal. Van Note Decl. ¶ 5. Class Counsel's familiarity with the complex legal and factual issues—such as Article III standing, causation, and class certification—was instrumental in securing a meaningful recovery without the delay and uncertainty of protracted litigation. The attorneys' fee request is commensurate with that expertise and the efficiency with which this result was achieved.

### 3.    *Complexity and Duration of the Litigation*

Even though Class Counsel is confident that Plaintiff's claims would have prevailed at trial, they anticipated facing several challenges in prosecuting this Action—challenges that ultimately informed the Parties' decision to resolve the case through settlement. See Van Note Decl. ¶ 35. "Historically, data breach cases have had great difficulty in moving past the pleadings stage and receiving class certification." *Pfeiffer v. Radnet, Inc.*, 2022 U.S. Dist. LEXIS 125933, at

*6–7 (C.D. Cal. Feb. 15, 2022). While Plaintiff survived a motion to dismiss on her negligence claim, continuing litigation would have required extensive fact and expert discovery, class certification proceedings, summary judgment briefing, and likely appeals—all with no guarantee of relief for the Class.

Moreover, Settlement Class Members would have remained exposed to the risk of identity theft throughout the duration of the case without the benefit of credit monitoring or compensation. Absent this Settlement, it is uncertain whether they would have secured any financial or injunctive relief. The requested fee appropriately reflects the novel and complex nature of data breach class actions and compensates Class Counsel for efficiently resolving the Action and recovering the maximum available monetary relief on a class-wide basis without delay.

### 4.    *Contingency and the Risky Nature of Litigation*

The uncertain nature of contingency fees requires counsel to assume greater risk than in cases where compensation is based on billable hours. The risk involved in prosecuting a class action is a critical consideration in determining an appropriate attorneys' fee award and reflects the reality that contingency work entails the possibility of total non-payment. Courts recognize that this risk justifies enhanced compensation. *In re Lupron Mktg. & Sales Practices Litig.*, 2005 U.S. Dist. LEXIS 17456, at *15 (D. Mass. Aug. 17, 2005) ("[m]any cases recognize that the risk assumed by an attorney is perhaps the foremost factor in determining an appropriate fee award").

Here, Class Counsel undertook this Action on a fully contingent basis, advancing all litigation costs and risking complete nonpayment. Van Note Decl. ¶¶ 27-28. Class Counsel also forewent other matters in order to devote time and resources to this case, knowing that success was uncertain given the developing and unsettled nature of data breach law. Despite these risks, Class Counsel elected to represent Plaintiff and the proposed Class without any upfront compensation.

See *Pfeiffer*, 2022 U.S. Dist. LEXIS 125933, at *7 ("Because Class Counsel took this case on a contingency basis in a risky and still-developing area of law, this factor weighs in favor of the proposed attorneys' fee award."); see also *Brulee v. Dal Global Servs., LLC*, 2018 U.S. Dist. LEXIS 211269, at *28 (C.D. Cal. Dec. 13, 2018) ("Attorneys are entitled to a larger fee award when their compensation is contingent in nature."). Given the real possibility that this litigation could have resulted in little or no recovery—despite substantial time, effort, and out-of-pocket investment—the risk undertaken by Class Counsel supports the requested fee. *See George v. Acad. Mortg. Corp.*, 369 F. Supp. 3d 1356, 1380 (N.D. Ga. Mar. 20, 2019) ("A contingency fee arrangement often justifies an increase in the award of attorney's fees.").

### 5.    *Class Counsel's Time and Lodestar are Reasonable*

Class Counsel has devoted substantial time to efficiently prosecuting Plaintiff's claims and achieving a favorable early resolution. To date, they have invested approximately 172 hours in the litigation, resulting in a current lodestar of $79,014.50. This yields a lodestar multiplier of approximately .63 in relation to the requested $49,500 fee award, which is well within—and in fact below—the range of multipliers routinely approved in this District. See, e.g., *Mooney v. Domino's Pizza, Inc.*, 2018 U.S. Dist. LEXIS 232959 (D. Mass. Jan. 23, 2018) (approving 4.77 multiplier); *Gordan v. Mass. Mut. Life Ins. Co.*, 2016 U.S. Dist. LEXIS 195935 (D. Mass. Nov. 3, 2016) (approving 3.66 multiplier); *New England Carpenters Health Ben. Fund v. First Databank, Inc.*, 2009 U.S. Dist. LEXIS 68419 (D. Mass. Aug. 3, 2009) (approving 8.3 multiplier).

Class Counsel anticipates devoting an additional 20 hours to final approval briefing, the Final Approval Hearing, settlement implementation, and post-distribution correspondence. Van Note Decl. ¶ 35. Courts routinely defer to counsel's professional judgment as to the reasonableness of the time required to complete settlement administration. See *Moreno v. City of Sacramento*, 534

F.3d 1106, 1112 (9th Cir. 2008); see also *Rodriguez v. County of L.A.*, 96 F. Supp. 3d 1012, 1024 (C.D. Cal. 2014) ("Courts generally accept the reasonableness of hours supported by declarations of counsel."). The requested fee is thus fully supported under both the percentage-of-the-fund method and the lodestar cross-check.

### 6.    *Awards in Similar Cases*

Courts across the country routinely award similar attorneys' fees in data breach class actions involving non-reversionary all cash settlement funds. *See, e.g., Kondo v. Creative Services, Inc.*, No. 1:22-cv-10438-DJC, (D. Mass. Sept. 7, 2023) (approving one-third of the fund); *Ford v. Takeda Pharms. U.S.A., Inc.*, 2023 U.S. Dist. LEXIS 93286, at *8 (D. Mass. Mar. 31, 2023) (same).4 "Courts routinely hold that one-third of a common fund is an appropriate attorneys' fees award in [a] class action settlement[.]" *Koszyk v. Country Fin.*, 2016 U.S. Dist. LEXIS 126893, at *10 (N.D. Ill. Sept. 16, 2016). The 33.33% fee requested here is consistent with other awards in this District and across the country.

### 7.    *Public Policy Consideration*

There is a "significant societal interest in obtaining redress" and in holding defendants accountable through class action litigation. *In re Lupron*, 2005 U.S. Dist. LEXIS 17456, at *23. Indeed, lawsuits that curtail violative conduct on a widespread basis provide a valuable service in safeguarding "the welfare of the general public." *In re Neurontin Mktg.*, 58 F. Supp. 3d at 171. Here, the Settlement promotes important public policy by protecting consumers' interest in the privacy and confidentiality of their personal information. As part of the Settlement, Defendant has agreed to implement and/or confirm data security enhancements to better safeguard Class Members' information going forward. See SA § V ¶ 65. These commitments, secured through private enforcement of privacy rights, provide meaningful deterrence and reinforce the importance

of robust data protection practices.

Accordingly, compensating Class Counsel fairly for their efforts in litigating and resolving this Action on a contingent basis serves not only the interests of justice in this case, but also the broader public policy goals of consumer protection and corporate accountability in the context of data privacy.

### C.    Class Counsel's Costs are Reasonable and Should be Reimbursed

"Lawyers who recover a common fund for a class are entitled to reimbursement of litigation expenses that were reasonably and necessarily incurred in connection with the litigation." *Ford v. Takeda Pharms. U.S.A., Inc.*, 2023 U.S. Dist. LEXIS 93286, at *7–8 (D. Mass. Mar. 31, 2023) (quotation omitted). To be recoverable, the costs must be "adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. Sept. 27, 2001).

Here, Class Counsel incurred $8,740.11 in litigation costs that were necessary and incidental to the representation of the Settlement Class. Van Note Decl. ¶ 34. These costs were well-documented and included court filing fees, service of process, legal research, postage, and administrative expenses—all of which were modest, reasonable, and necessary to effectively prosecute the case and secure a favorable outcome for the Class. *Id.*; *see also Hill*, 2014 U.S. Dist. LEXIS 179702, at *53–54 (reimbursing litigation costs for court fees, legal research, and experts). Reimbursement of these expenses is appropriate and supported by both the record and applicable precedent.

### D.    The Requested Service Award Should be Approved

Plaintiff respectfully requests approval of a Service Award in the amount of $5,000.00 in recognition of the burdens she assumed in initiating this action, maintaining communication with

Class Counsel, fulfilling litigation responsibilities, and taking on the risks associated with publicly attaching herself to a data breach lawsuit. See SA § XI ¶ 98. Service Awards are routinely approved in similar cases. *See, e.g., In re Relafen*, 231 F.R.D. at 82 ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit.") (citation omitted). "In granting incentive awards to named plaintiffs in class actions, courts consider not only the efforts of the plaintiffs in pursuing the claims, but also . . . rewarding representative plaintiffs for being instrumental in obtaining recoveries for persons other than themselves." *Bussie v. Allmerica Fin. Corp.*, 1999 U.S. Dist. LEXIS 7793, at *11–12 (D. Mass. May 19, 1999) (approving $5,000 each for four representative plaintiffs).

Here, Plaintiff actively participated in the litigation by conferring with counsel, reviewing documents, and providing the factual support necessary to move the case forward. Van Note Decl. ¶ 42. Her dedication helped achieve a successful class-wide result. Accordingly, the requested Service Award is reasonable and should be approved in light of her time, effort, and the personal burdens incurred in representing the Settlement Class.

### E.    <u>The Request for Reimbursement of Administrative Fees Should be Granted</u>

CPT Group, Inc. has efficiently and effectively carried out all settlement administration duties to date in accordance with the Court's Preliminary Approval Order. These services have included processing a Class List of 9,545 individuals, disseminating direct mail Notices, managing claim submissions, maintaining a case-specific website, and handling Class Member inquiries. Given the scope of work performed and the competitive nature of the administration bid, the requested amount of $28,750 is fair, reasonable, and well within the range approved in similar class action settlements. Van Note Decl. ¶ 41.

## IX.    CONCLUSION

For all the foregoing reasons, the Court should grant Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Application for Attorneys' Fees, Costs, and Service Award. A proposed Final Approval Order filed contemporaneously herewith.

Date: July 15, 2025

By: */s/ Laura Grace Van Note*
Laura Van Note, Esq. (CA S.B. # 310160)*
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, CA 94607
Telephone: (510) 891-9800
Email: lvn@colevannote.com

Steven A. Schwartz, Esq. (BBO #560066)
**JOEL D. SCHWARTZ, P.C.**
1 Washington Mall, 16
Boston, MA 02108
Phone: 617-600-0439
Email: sas@joelhschwartz.com

Daniel Srourian, Esq. (C.A. S.B. #285678)*
**SROURIAN LAW FIRM, P.C.**
3435 Wilshire Boulevard, Suite 1710
Los Angeles, CA 90010
Telephone: (213) 474-3800
Email: daniel@slfla.com

*Attorneys for Representative Plaintiff
and the Plaintiff Class*

*\*Admitted Pro Hac Vice*

## **LOCAL RULE 7.1(A)(2) CERTIFICATION**

I, Laura Van Note, counsel for Plaintiff, certifies that Plaintiff's conferred with counsel for Defendants Cohen Cleary P.C., and they have no objection to this motion being filed and the relief requested herein.

_/s/ Laura Grace Van Note_
Laura Van Note, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on this 15 day of July, 2025, this document was electronically filed with the Clerk of the Court using the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), pursuant to Local Rule 5.4(C).

*/s/ Laura Grace Van Note*
Laura Van Note, Esq.